## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**MAXIM LEVIN**
441 N. Rockingham Way
Amherst, New York 14228

**VODKA PROPERTIES LLC**
441 N. Rockingham Way
Amherst, New York 14228,

       Plaintiffs,

v.

**CITY OF BUFFALO**
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York 14202

**BYRON W. BROWN**, individually and in his
capacity as the Mayor of the City of Buffalo
14 Blaine Avenue
Buffalo, New York 14208-1057

**JAMES COMERFORD, JR.**, individually
and in his capacity as the commissioner of the
Department of Permit & Inspection Services
435 Eden St.
Buffalo, NY 14220-2739

**LOU PETRUCCI**, individually and in his
capacity as the Deputy Commissioner of the
Department of Permit & Inspection Services,
89 Red Jacket Parkway
Buffalo, New York 14220-2010

**TRACY KRUG**, individually and in his
capacity as an inspector for the City of Buffalo,
320 Potters Road
Buffalo, New York 14220-2526

**KEVIN COYNE**, individually and in his
capacity as an inspector for the City of Buffalo,
33 Arbour Lane
Buffalo, New York 14220-2319

**VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No.   20-cv-1511

**EMPIRE DISMANTLEMENT CO.**
2680 Grand Island Blvd.
Grand Island, New York 14072,

      Defendants.

Plaintiffs Maxim Levin ("Mr. Levin") and Vodka Properties LLC ("Vodka Properties") (collectively referred to as "Plaintiffs"), by their attorneys, Rupp Baase Pfalzgraf Cunningham LLC, for their verified complaint against Defendants City of Buffalo, Byron W. Brown, James Comerford, Jr., Lou Petrucci, Tracy Krug, Kevin Coyne, and Empire Dismantlement Co., allege:

## JURISDICTION

1.    This action is brought under 42 U.S.C. §§ 1983 and 1988 and under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

2.    This Court has subject-matter jurisdiction over all claims under 28 U.S.C. §§ 1331, 1343, and 1983.

3.    Plaintiffs further invoke this Court's pendent jurisdiction under 28 U.S.C. § 1367(a) over any and all state-law claims and as against parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

4.      In accordance with 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of plaintiffs' verified complaint occurred in this District.

**PARTIES**

5.      Mr. Levin was and is a citizen of New York State and Erie County, residing at 441 N. Rockingham Way, Amherst, New York 14228.

6.      Plaintiff Vodka Properties LLC is a domestic limited liability company with its principal place of business in New York State and Erie County.

7.      Upon information and belief, Defendant Empire Dismantlement Co. was and is a domestic corporation with a place of business in New York State and Erie County.

8.      Upon information and belief, defendant City of Buffalo was and is a municipal corporation duly organized and existing under the laws of the State of New York, with a business address at 65 Niagara Street, 1100 City Hall, Buffalo, New York 14202.

9.      Defendant City of Buffalo, through its officers, agents, employees, departments, or specialized units, create, promulgate, implement, review, and enforce, as policymakers, certain policies regarding the conduct and actions of its individual employees, including Byron W. Brown and the Department of Permit & Inspection Services and its commissioner, James Comerford, Jr., its deputy commissioner, Lou Petrucci, and inspectors Tracy Krug and Kevin Coyne.

10.      Upon information and belief, defendant Byron W. Brown, was and is a resident of Erie County and the State of New York.  He was and is the Mayor of the City of

Buffalo, and at all times, he was acting within the scope of his employment and in his official capacity as the Mayor.  In addition, Byron W. Brown is being sued in his individual capacity for damages caused by his actions or omissions.

11.     As the City of Buffalo Mayor, Byron W. Brown was responsible for the hiring, training, supervision, discipline, and conduct of the defendants, and is further responsible for setting, reviewing, and enforcing the policies and regulations of the various departments of the City of Buffalo.

12.     Upon information and belief, defendant James Comerford, Jr. was and is a resident of Erie County and the State of New York.  He was and is the commissioner of the Department of Permit & Inspection Services, employed by the City of Buffalo.  At all times, defendant Comerford was acting within the scope of his employment and in his official capacity as the commissioner of the Department of Permit & Inspection Services.  In addition, James Comerford, Jr. is being sued in his individual capacity for damages caused by his actions and omissions.

13.     As the commissioner of the Department of Permit & Inspection Services, James Comerford, Jr. was responsible for the hiring, training, supervision, discipline, and conduct of the defendants, and he is further responsible for setting, reviewing, and enforcing the policies and regulations of the City of Buffalo.

14.     Upon information and belief, defendant Lou Petrucci was and is a resident of the Erie County and the State of New York.  He was and is the deputy commissioner of the Department of Permit & Inspection Services, employed by the City of Buffalo.  At all times, he was acting within the scope of his employment and in his official capacity as the deputy

commissioner of the Department of Permit & Inspection Services.  In addition, Lou Petrucci is

being sued in his individual capacity for damages caused by his actions or omissions.

15.    As the deputy commissioner of the Department of Permit & Inspection

Services, Lou Petrucci was responsible for the hiring, training, supervision, discipline, and

conduct of the defendants, and he is further responsible for setting, reviewing, and enforcing the

policies and regulations of the City of Buffalo.

16.    Upon information and belief, defendant Tracy Krug was and is a resident

of the County of Erie, and State of New York.  He was and is an inspector for the City of

Buffalo, employed by the City of Buffalo.  At all times mentioned, he was acting within the

scope of his employment and in his official capacity as a City of Buffalo inspector.  In addition,

Tracy Krug is being sued in his individual capacity for damages caused by his actions and

omissions.

17.    Upon information and belief, defendant Kevin Coyne was and is a resident

of the Erie County and the State of New York.  He was and is an inspector for the City of

Buffalo, employed by the City of Buffalo.  At all times mentioned, he was acting within the

scope of his employment and in his official capacity as City of Buffalo inspector.  In addition,

Kevin Coyne is being sued in his individual capacity for damages caused by his actions and

omissions.

18.    At all relevant times, defendants, either personally or through their

employees, were acting under the color of law or in compliance with the official rules,

regulations, laws, statutes, policies, customs, ordinances, usages or practices of the City of

Buffalo.  Defendants' actions and omissions show that they did not, nor could they have,

reasonably relied upon any existing law.

## **FACTUAL BACKGROUND**

19.     Mr. Levin, through his real estate holding company, Vodka Properties, is the sole owner of the real property at issue, 393 Hampshire Street, Buffalo, New York 14213 (the "Property").

20.     The Property is significant to the history of the City of Buffalo, and, in fact, was listed on the Preservation Ready – Buffalo website.[1]

21.     On August 17, 2018, the Plaintiffs purchased the Property.

22.     The Plaintiffs took out a mortgage totaling $40,000.00 to buy and rehabilitate the Property.

23.     Until September 25, 2019, the Property was improved with a 2,442 square foot, two-family residence with six bedrooms.

24.     Mr. Levin, through Vodka Properties, performs a needed service for the City of Buffalo, as he buys and rehabilitates dilapidated properties to make them habitable for City of Buffalo residents, some of whom have difficulty finding a place to live otherwise.

25.     Mr. Levin and Vodka Properties have an established history of successfully renovating City of Buffalo homes for multiple residents.

26.     The Plaintiffs expended substantial funds to rehabilitate the Property, including hiring a company to perform an asbestos survey, hiring a property-management company to maintain and secure the Property, and buying and installing new windows.

27.     These purchases and work were in addition to other significant interior and exterior work performed on the Plaintiffs' behalf to rehabilitate the Property.

---

[1]     *See* https://www.preservationready.org/Buildings/393HampshireStreet (last visited October 7, 2020).

28.     Being familiar with and wanting to comply with proper procedures, the Plaintiffs first acquired the permits needed for the rehabilitation work of the Property in accordance with the City of Buffalo Charter.

29.     The August of 2018 asbestos survey indicated that there was no asbestos at the Property, erasing a major barrier to safe habitation.

30.     As part of an inspection for renovations that Plaintiffs sought for the interior of the Property, architect Mike Anderson inspected the house in August of 2018 and found that it was structurally sound.

31.     The Plaintiffs were working diligently to repair the Property so that it could be rented to families in need of affordable housing.

32.     The Plaintiffs' progress slowed in renovating the home in the late spring/early summer of 2019 as Mr. Levin was dealing with an unrelated personal matter.

33.     On or about June 28, 2019, City of Buffalo Inspector, Kevin Coyne, cited the Plaintiffs for certain violations at the Property.

34.     The alleged violations from Mr. Coyne related to the roof and drainage at the Property.

35.     Mr. Coyne did not cite Plaintiffs for any structural violations at the Property.

36.     The violations stated, in part, that "[t]he building has been vacant, a constant source of complaints and criminal activity, for an extended period of time."

37.     A FOIL request did reveal that the alleged violation relating to criminal activity at the Property was entirely untrue and unsupported.

38.     George Berbary, Esq., housing-court attorney for the Plaintiffs, became aware of the alleged violations at the Property.

39.     Mr. Berbary discussed the alleged violations with City of Buffalo inspector Tracy Krug on or about September 23, 2019.

40.     Mr. Levin was not involved in this September 2019 discussion between Mr. Berbary and Inspector Krug.

41.     During his conversation with Inspector Krug on or about September 23, 2019, Mr. Berbary learned for the first time that the defendants claimed the Property was structurally unsound.

42.     In response to this baseless claim, Mr. Berbary showed Inspector Krug pictures of the Property that conclusively demonstrated the absence of any structural issues.

43.     Given the Plaintiffs' past success with property rehabilitation and the absence of any structural problems, Mr. Berbary asked Inspector Krug for an opportunity to remedy the non-structural violations.

44.     Inspector Krug ignored Mr. Berbary's reasonable request.

45.     Upon information and belief, Inspector Krug took it upon himself to contact Commissioner James Comerford and to request an emergency demolition of the Property.

46.     Upon information and belief, Inspector Krug requested an emergency demolition in order to avoid judicial review of the alleged violations and for other improper purposes, including, but not limited to, his personal animus toward Mr. Levin.

47.     Inspector Krug specifically targeted the Plaintiffs based upon his apparent personal animus or otherwise, despite that Plaintiffs have been purchasing and successfully rehabilitating properties in the City of Buffalo for over ten years.

48.     For example, Inspector Krug has repeatedly worked outside of his assigned inspection area in the City of Buffalo to purposely inspect Plaintiffs' properties, to then cite the Plaintiffs for alleged building-code violations.

49.     Upon information and belief, Inspector Krug has been advised by both the deputy commissioner and the commissioner for the Department of Permit & Inspection Services to not work outside of his assigned area and to not inspect and cite Plaintiffs' properties outside of Inspector Krug's assigned inspection area.

50.     Upon information and belief, at the time of the demolition of the Property, Inspector Krug was working in the parks and sanitation department and was not a field building inspector for building-code or code-enforcement purposes.

51.     Upon information and belief, because Inspector Krug was not a field building inspector he lacked the authority to advise Mr. Comerford and Deputy Commissioner Lou Petrucci on whether an emergency demolition of the Property was necessary.[2]

52.     On September 23, 2019, Mr. Comerford and Mr. Petrucci signed a "Notice of Condemnation" to demolish the Property on an emergency basis.

53.     According to the "Notice of Condemnation," the defendants determined that the building was in violation of Chapter 113 — "Unsafe Buildings" — of the Code and Ordinance of the City of Buffalo.

---

[2]     Our investigation demonstrates that Inspector Krug is not currently a field building inspector, and upon information and belief, Inspector Krug was not a field building inspector when he advised Commissioner Comerford to demolish the Property. *See* https://data.ny.gov/Government-Finance/Active-Code-Official-Certifications/civu-giic (last visited October 7, 2020).

54.     According to the "Notice of Condemnation," the defendants determined that the "Building is structurally unsound and in imminent danger of collapse.  Holes in roof, floors and walls and foundation issues."

55.     The "Notice of Condemnation" did not cite the Plaintiffs for any alleged Building Code violations.

56.     The defendants' file for the Property consisted of eight photographs of the Property's exterior.

57.     There is no evidence in the defendants' file for the Property 1) supporting a conclusion that any structural issues existed at the Property, 2) that the defendants actually inspected the interior of the Property, and 3) supporting an emergency demolition.

58.     The absence of any documents or information within the defendants' file for the Property supporting their conclusions and Notice of Condemnation confirms that no structural inspection of any sort was done to the Property by the defendants to determine the structural integrity of the building.

59.     The Notice of Condemnation authorized the emergency demolition of the Property without giving the Plaintiffs notice or an opportunity to be heard.

60.     On September 25, 2019, the City of Buffalo contracted with Empire Dismantlement Corp. for the demolition of the Property.

61.     The contract price for the demolition was $42,900.00.

62.     Upon information and belief, the contract price for the demolition included the defendants' unsupported and incorrect assumption that there was asbestos at the Property.

10

63.     The defendants did not know if there was asbestos at the Property because they never properly inspected the Property before ordering the emergency demolition.

64.     The Property was demolished by Empire Dismantlement Co. on or about September 25, 2019, the same day the City contracted with it for this service.

65.     At no time before the demolition did the defendants notify the Plaintiffs of their plan to order an emergency demolition of the Property.

66.     At no point before the demolition ordered by the defendants did the home become structurally unstable, pose any risk of structural collapse, or pose any other emergent hazard.

67.     Upon information and belief, the defendants took it upon themselves to order an emergency demolition of the home before the pending housing court date in October of 2019 regarding the alleged violations at the Property.

68.     Upon information and belief, the defendants were aware of the pending housing court action and believed that they would not be able to obtain a demolition order from the housing court due to a lack of evidence supporting that the Property was structurally unsound.

69.     Plaintiffs were not made aware of the Notice of Condemnation until after the building on the Property was demolished.

70.     Mr. Berbary, the attorney representing the Plaintiffs for the alleged violations at the Property, was not made aware of the Notice of Condemnation until after the building situated on the Property was demolished.

71.     This lack of notice gave the Plaintiffs no opportunity to be heard prior to the demolition of the Property.

11

72.     The demolition of the Property was wrongful, unsupported, and unauthorized.

73.     The defendants failed to consider shoring, bracing, or other less-drastic measures before commencing the emergency demolition.

74.     The defendants failed to consider resolution through the ongoing housing-court process, including time to remedy the alleged violations.

75.     Following the demolition of the Property, the defendants have attempted to enforce a lien on the Property in the amount of the purported demolition costs.

76.     It was not until October 15, 2019—nearly a month after the demolition—that the City of Buffalo Common Council met and authorized Commissioner James Comerford to enter into a contract with Empire Dismantlement Corp. for the demolition of the Property.

77.     Although the City of Buffalo Common Council met and authorized Commissioner Comerford to enter into a contract with Empire Dismantlement Corp. for the demolition of the Property, the Agenda Item adopted by the City of Buffalo Common Council did not authorize the actual demolition of the Property.

78.     Upon information and belief, the City of Buffalo Common Council never authorized the defendants to demolish the Property.

79.     Upon information and belief, at the time Empire Dismantlement Co. razed the Property, the defendants knew they lacked proper authority to demolish it.

80.     Upon information and belief, Empire Dismantlement Co. wished to move forward with the demolition as soon as possible to enrich itself and to receive the fruits of an unjustified and unsupported demolition.

81.     Upon information and belief, defendants conspired to raze the Property as quickly as possible to avoid the possibility of the Plaintiffs asserting their legal rights to stop the demolition.

82.     Upon information and belief, the defendants knew they could not obtain a court order authorizing the demolition of the Property due to the absence of any alleged structural violations and the lack of an inspection by the defendants to confirm their flawed belief that the Property was structurally unsound.

83.     The first appearance in housing court for the alleged violations at the Property was scheduled on October 21, 2019.

84.     Mr. Berbary appeared on behalf of the Plaintiffs.

85.     During that appearance, the Honorable Patrick M. Carney was shocked to learn that the defendants had already demolished the Property.

86.     Judge Carney scheduled another hearing on March 12, 2020 regarding the alleged violations at the Property to allow Mr. Levin an opportunity to assess and to be heard on the wrongful demolition.

87.     During the March 12, 2020 hearing, the individual appearing on behalf of the City of Buffalo stated that the defendants were seeking a retainer agreement for the demolition, and that he thought "that may be a larger issue."

88.     Judge Carney recognized that "the nature and purpose of the demolition [at the Property] will be an issue," and he scheduled a third hearing on May 21, 2020 regarding the alleged violations at the Property.

89.     Judge Carney stated that he looked forward to the Plaintiffs' presentation of how the defendants negated his opportunity to remedy the alleged violations.

90.     Due to the COVID-19 pandemic, that third court hearing before Judge Carney has not yet taken place.

91.     The defendants continue to claim that the Plaintiffs are responsible for the costs of the demolition.

92.     The defendants have stated that the failure of the Plaintiffs to reimburse the City for the costs of the demolition will result in a tax lien on Plaintiffs' property.

## MAYOR BYRON BROWN'S AGGRESSIVE DEMOLITION PLAN

93.     Under the leadership of Mayor Byron Brown, the City of Buffalo has pursued an aggressive plan to demolish buildings that are determined by the City to be abandoned and unsafe.

94.     Soon after his election as the City of Buffalo Mayor in 2005, Mayor Bryon Brown developed his "5 in 5" Demolition Plan in August of 2007.

95.     The goal of "5 in 5" was to demolish 5,000 houses in the City of Buffalo in five years.

96.     Mayor Byron Brown has maintained his aggressive demolition plan well beyond five years, and, in fact, the City's aggressive demolition plan is still presently in place.[3]

97.     The individual defendants were resolved to carry out Mayor Brown's aggressive demolition plan either intentionally or with reckless indifference to the applicable laws.

---

[3]     *See* https://buffalonews.com/news/local/mayor-promises-a-tough-tough-plan-for-going-after-neglectful-building-owners/article_814863d5-39ea-5b75-abd1-f23900f9da8c.html (last visited October 7, 2020).

98.     Numerous properties have been demolished by the defendants in accordance with Mayor Brown's aggressive demolition plan in violation of each property owner's due process rights.

99.     One of those wrongful demolitions that took place was at 858 Jefferson Avenue (Index No. 816995/2019), which resulted in a lawsuit filed by the property owner, Timothy Jones.

100.    In that case, despite a signed Order to Show Cause from an Erie County Supreme Court Judge that stayed the demolition, the City of Buffalo and its law department advised its employees and agents to proceed with the demolition of 858 Jefferson Ave.

101.    The letter signed by Commissioner Comerford and Deputy Commissioner Petrucci which authorized the emergency demolition at 858 Jefferson Ave. is nearly identical to the letter authorizing the demolition at the Property.

102.    Another wrongful demolition that took place was at 988 Northland Avenue (Index No. 806511/2020), which resulted in a lawsuit filed by the property owner, Makka Furqan.

103.    In that case, the City of Buffalo demolished Makka Furqan's home of 32 years despite an order from Judge Carney that gave her an opportunity to make all repairs on her property.

104.    Makka Furqan's home was located in the Northland Corridor, which the City of Buffalo was trying to redevelop at the time of the demolition.[4]

---

[4]     *See* https://www.buffalourbandevelopment.com/northland-corridor-redevelopment-project (last visited October 7, 2020).

105.     Upon information and belief, the actions taken by the defendants at the Property, 858 Jefferson Ave., and 988 Northland Avenue were undertaken in furtherance of Mayor Brown's official demolition policy.

106.     The defendants chose to pursue their own personal demolition agenda rather than to afford property owners in the City of Buffalo, including the Plaintiffs, their due-process and other rights.

107.     The statutes at issue, Chapter 113-3—Repair required; emergencies—of the Code and Ordinance of the City of Buffalo and Section 17-2(j) of the Charter of the City of Buffalo—Duties and Powers—do not provide a City of Buffalo property owner with an opportunity to be heard before an emergency demolition is ordered.

108.     Due process of law requires an opportunity to be heard before the deprivation of a significant property interest.

109.     The defendants consistently and repeatedly refuse to comply with lawful court orders and lawful due process requirements that restrict the City of Buffalo's ability to demolish buildings that the defendants believe interfere with their rehabilitation plans for the City.

110.     No exigent or extraordinary circumstances existed to support the emergency demolition of the Property as the violations were identified on June 28, 2019, and the structure was not demolished until on or around September 25, 2019, approximately three months later.

111.     Further, the housing-court process had begun, yet the defendants refused to engage in it.

112.    The defendants invoked an emergency procedure in an abusive and arbitrary manner.

113.    The defendants acted with malice and reckless disregard for the actual structural integrity of the Property then and there existing at the time of the emergency demolition.

114.    An adequate post-deprivation remedy for emergency demolitions in the City of Buffalo does not exist.

115.    The defendants' actions caused the Plaintiffs to lose the benefit of the repairs they performed, the costs associated with the rehabilitation, and the value of both the building and the rent that the Plaintiffs have not been able to collect from two different tenants.

116.    Further, the Plaintiffs are making mortgage payments for a building that no longer exists.

117.    When fully rehabilitated, the demolished building on the Property was worth in excess of $250,000.00.

118.    As a direct and proximate result of the defendants' conduct, Plaintiffs have been compelled to retain the services of counsel to protect and enforce their rights, and therefore, Plaintiffs have incurred and continue to incur attorneys' fees, expert fees, and costs for which Plaintiffs are entitled to reimbursement in an amount to be established at the time of trial under 42 U.S.C. § 1988.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Violation of the Fourteenth Amendment**
**Procedural Due Process Violation under 42 U.S.C. § 1983**
**Against All Defendants**

119.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 118 of this verified complaint as if fully set forth here.

120.    Under the Fourteenth Amendment to the United States Constitution, no government official shall "deprive any person of life, liberty, or property, without due process of law."

121.    In addition to protecting certain unenumerated rights, the Due Process Clause of the Fourteenth Amendment also has a procedural aspect which guarantees an individual's right to fair procedures before depriving a person of "life, liberty, or property."

122.    Plaintiffs had a property right in the building that was situated on the Property.

123.    The defendants condemned the Property as structurally unsound, ordered an emergency demolition, and followed through with the emergency demolition of the building on the Property without providing the Plaintiffs with notice and without providing the Plaintiffs with an opportunity or forum in which to appeal the underlying violations or to object to the threatened demolition.

124.    In committing these acts, the defendants failed to provide reasonable notice of any kind to the Plaintiffs that the above-referenced determinations had been made and, thus, they prevented the Plaintiffs from attempting in any way to oppose or to prevent the eventual demolition of the Property.

125.     The defendants improperly declared an emergency where no circumstances justifying emergency measures existed, they provided no notice to Plaintiffs, and they consciously disregarded the rules and procedures of the City of Buffalo, the State of New York, and the Constitution of the United States, thereby intentionally depriving the Plaintiffs of an opportunity to be heard in violation of their due process rights.

126.     The building on the Property was not in a condition requiring an immediate emergency demolition.

127.     Since there was no emergency with respect to the condition of the building on the Property, the Plaintiffs were entitled to a pre-deprivation hearing, before the demolition, as required under the Due Process Clause of the Fourteenth Amendment.

128.     An adequate post-deprivation remedy for emergency demolitions in the City of Buffalo does not exist.

129.     As a result of their actions and inactions, defendants deprived Plaintiffs of their procedural due process rights.

130.     Defendants' conduct was committed under the color of state law.

131.     Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, it is liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

132.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

133.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## SECOND CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Substantive Due Process Violation under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

134.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 133 of this verified complaint as if fully set forth here.

135.    Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law."

136.    In addition to guaranteeing certain procedural protections, the Due Process Clause of the Fourteenth Amendment guarantees certain substantive protections, including the right to property.

137.    Defendants acted arbitrarily, oppressively, and in a conscience-shocking manner in authorizing the demolition of the Property.

138.    The defendants improperly declared an emergency where no circumstances justifying emergency measures existed, provided no notice to the Plaintiffs, and consciously disregarded the rules and procedures in place to protect the due process rights of the Plaintiffs, thereby intentionally depriving the Plaintiffs of their property rights without an opportunity to be heard.

139.    Plaintiffs' substantive due process rights under the Fourteenth Amendment of the Constitution of the United States were violated, as Plaintiffs have suffered a loss of

20

property and they have incurred liabilities in the form of a tax lien, attorneys' fees, and other costs, due to the illegal acts of the defendants.

140.    As a result of the foregoing, the Plaintiffs have been deprived of realty, rental income, business income, good will, and reputation.

141.    Defendants' deprivation of the Plaintiffs' property rights was an arbitrary and capricious violation of Plaintiffs' due process rights.

142.    Defendants were deliberately indifferent to the possibility that their actions and omissions would lead to a deprivation of constitutionally protected rights.

143.    Defendants' conduct involved reckless or deliberate and callous indifference to Plaintiffs' property rights.

144.    Defendants intentionally or recklessly failed to provide Plaintiffs with an opportunity to be heard before ordering an emergency demolition of the Property.

145.    Defendants' actions deprived Plaintiffs of their substantive due process rights guaranteed by the Fourteenth Amendment.

146.    Defendants' conduct was committed under the color of state law.

147.    Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, it is liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

148.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

149.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

### THIRD CAUSE OF ACTION

**Violation of the Fifth and Fourteenth Amendments**
**Unlawful Taking under 42 U.S.C. § 1983**
**<u>Against All Defendants</u>**

150.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 149 of this verified complaint as if fully set forth here.

151.    The demolition of the Property constituted a deprivation of Plaintiffs' property.

152.    Plaintiffs were deprived of their property without due process of law in that they were not given notice and an opportunity to be heard before being deprived of it.

153.    Providing notice and an opportunity to be heard was not impractical for the Defendants, nor was the situation underlying the demolition an emergency.

154.    Since there was no emergency with respect to the condition of the Property, the Plaintiffs were entitled to a pre-deprivation hearing before the demolition of the building situated on the Property.

155.    Defendants prevented the Plaintiffs from receiving a pre-deprivation hearing with respect to the demolition of the Property by failing to provide notice to them.

156.    Plaintiffs' property was taken without just compensation.

157.   The demolition of Plaintiffs' building was not justified under Chapter 113—"Unsafe Buildings"—of the Code and Ordinance of the City of Buffalo nor the Charter of the City of Buffalo, Section 17-2—"Duties and Powers".

158.   Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and therefore, it is liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

159.   As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

160.   The conduct by Defendants was willful, malicious, oppressive, and reckless, and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## FOURTH CAUSE OF ACTION

### Violation of Fifth and Fourteenth Amendments
### Unconstitutionality of the Code Provision—Facial Invalidity
### and Overbreadth under 42 U.S.C. §1983
### <u>Against All Defendants</u>

161.   Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 160 of this verified complaint as if fully set forth here.

162.   Chapter 113-3—Repair required; emergencies—of the Code and Ordinance of the City of Buffalo is unconstitutional on its face.

23

163.     Chapter 113-3—Repair required; emergencies—of the Code and

Ordinance of the City of Buffalo provides specifically:

> B.     The Commissioner shall determine the danger established
> by the existence of the building to the surrounding
> neighborhood and residents, including the likelihood of
> fire; the proximity of the building to occupied structures;
> the opportunity for criminal activity; the general character
> of the neighborhood, including the number of children
> living nearby; and the relative location of public facilities
> such as schools, churches, playgrounds, swimming pools
> and community centers; and such other factors as shall be
> reasonable under the circumstances.  The Commissioner's
> decision to raze a building shall be made in writing.

164.     Charter of the City of Buffalo, Section 17-2—Commissioner of Permit

and Inspection Services; Duties and Powers—expressly provides:

> (j)     Direct or cause to be torn down, blown up or otherwise
> destroyed on an emergency basis, any building or buildings
> which he or she deems to be an immediate threat to the
> health, welfare and safety to the public.

165.     These ordinances, statutes, rules, or provisions are unconstitutionally

overbroad in violation of the Fifth and Fourteenth Amendments because they necessarily bring

within their sweep a wide variety of conduct which could never satisfy constitutional standards

for demolishing a building on grounds of an emergency without notice or an opportunity to be

heard.

166.     This statutory scheme for emergency demolitions allows for the

destruction of property with little to no investigation or procedures for the preservation of

evidence before taking action that deprived the Plaintiffs of valuable property rights without an

opportunity to be heard.

167.     The City of Buffalo's statutory scheme for emergency demolitions

violates New York City Code §20(35)—Grant of Specific Powers—which allows a municipality

to promulgate statutes, laws, ordinances, etc. for the destruction and demolition of buildings only if the statute, law, ordinance, etc. expressly provides for, inter alia: (a) an inspection and report by the commissioner of the Department of Permit & Inspection Services; (b) the service of notice upon the owner of the demolition; (c) the time within which the owner of the property may commence the repair or removal of a building or structure; and (e) a hearing before the commissioner of the Department of Permit & Inspection Services prior to the demolition of the property.

168.    The statutory scheme for emergency demolitions does not require the creation of photographic and survey evidence for the purposes of post-deprivation review, nor does it require the use of qualified experts to determine the structural integrity of buildings or other alleged violations at the property.

169.    The defendants' statutory scheme for emergency demolitions distorts the truth-seeking process, and it fails to provide any procedural safeguards for the substantive and procedural due process rights of City of Buffalo property owners, including the Plaintiffs.

170.    The statutory procedure, itself, and as it is enforced, is incapable of affording due process rights to City of Buffalo property owners, including the Plaintiffs.

171.    The defendants demolished the Property under their purported authority based on unconstitutionally overbroad ordinances, statutes, rules, or provisions.

172.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

173.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## FIFTH CAUSE OF ACTION

### Violation of Fifth and Fourteenth Amendments
### Facial Invalidity under 42 U.S.C. §1983
### City of Buffalo Charter Violates State Law
### <u>Against All Defendants</u>

174.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 173 of this verified complaint as if fully set forth here.

175.    According to the defendants' September 23, 2019 letter, the defendants' purported authority to authorize an emergency demolition of buildings in the City of Buffalo derives from Chapter 113—"Unsafe Buildings"—of the Code and Ordinance of the City of Buffalo and Section 17-2—"Duties and Powers"—of the Charter of the City of Buffalo.

176.    The City of Buffalo's statutory scheme for emergency demolitions violates New York City Law § 20(35)—Grant of Specific Powers—which allows a municipality to promulgate statutes, laws, ordinances, etc. for the destruction and demolition of buildings only if the statute, law, ordinance, etc. expressly provides for, inter alia: (a) an inspection and report by the commissioner of the Department of Permit & Inspection Services; (b) the service of notice upon the owner of the demolition; (c) the time within which the owner of the property may commence the repair or removal of a building or structure; and (e) a hearing before the commissioner of the Department of Permit & Inspection Services prior to the demolition of the property.

177.    Neither the Code and Ordinance of the City of Buffalo nor the Charter of the City of Buffalo require an inspection and report by the commissioner of the Department of Permit & Inspection Services before authorizing an emergency demolition.

178.     Neither the Code and Ordinance of the City of Buffalo nor the Charter of the City of Buffalo require the service of notice upon the owner of the property before authorizing an emergency demolition.

179.     Neither the Code and Ordinance of the City of Buffalo nor the Charter of the City of Buffalo provide a timeframe for a property owner to commence the repair or removal of a building or structure before commencing an emergency demolition.

180.     Neither the Code and Ordinance of the City of Buffalo nor the Charter of the City of Buffalo require a hearing before the commissioner of Department of Permit & Inspection services before authorizing an emergency demolition.

181.     The failure of the Code and Ordinance of the City of Buffalo and Charter of the City of Buffalo to include the requirements of New York City Law § 20(35) in the statutory scheme for emergency demolitions renders the City of Buffalo's emergency demolition procedures facially invalid and unconstitutional.

182.     The defendants demolished the Property under their purported authority based on facially invalid ordinances, statutes, rules, or provisions.

183.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

184.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

27

## SIXTH CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Violation of the Equal Protection Clause under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

185.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 184 of this verified complaint as if fully set forth here.

186.    The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

187.    The allegations described above demonstrate that Plaintiffs appear to have been singled out and treated very differently from other property owners in the City of Buffalo.

188.    The defendants violated Plaintiffs' well-established rights under the Equal Protection Clause of the Fourteenth Amendment in that they deprived Plaintiffs, without due process of law, of their property, as well as denying them equal protection of the law in demolishing their property but not the property of other City of Buffalo property owners where defendants had alleged building code violations existed at the property.

189.    Upon information and belief, other properties owned by City of Buffalo property owners had similar alleged building-code violations as those alleged by the defendants at the Property.

190.    The defendants, however, did not demolish the properties owned by those City of Buffalo property owners.

191.    Upon information and belief, the Property was demolished because of Inspector Krug's personal animus toward the Plaintiffs.

192.    Inspector Krug assisted in the initiation and orchestration of the demolition of the Property.

28

193.    Inspector Krug selectively enforced the City of Buffalo's emergency demolition provisions due to his personal animus towards the Plaintiffs.

194.    Upon information and belief, Inspector Krug improperly had direct operational, hands-on control over the demolition of the Property.

195.    Upon information and belief, Inspector Krug was not authorized to recommend the demolition of City of Buffalo buildings at the time of the Property's demolition.

196.    Through these actions, as well as the acquiescence of the other Defendants, Defendants collectively deprived the Plaintiffs of the rights secured to them by the Fourteenth Amendment to the Constitution of the United States.

197.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

198.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## SEVENTH CAUSE OF ACTION

### Violation of the Fourth and Fourteenth Amendments
### Unreasonable Search and Seizure under 42 U.S.C. § 1983
### Against All Defendants

199.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 198 of this verified complaint as if fully set forth here.

200.    The defendants wrongfully ousted the Plaintiffs from lawful possession of the Property.

201.    The defendants' actions in entering upon the Property and demolishing the building situated there constituted wrongful and forcible entry and retainer.

202.    Defendants' demolition of the Property constitutes a seizure of the Plaintiffs' property within the meaning of the Fourth Amendment to the United States Constitution.

203.    Their seizure was unreasonable.

204.    Defendants deprived the Plaintiffs of the rights secured to them by the Fourth and Fourteenth Amendments to the Constitution of the United States.

205.    Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and, therefore, it is liable under 42 U.S.C. § 1983.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

206.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

207.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## EIGHTH CAUSE OF ACTION

### Violation of the Fourth, Fifth, and Fourteenth Amendments
### Abuse of Process under 42 U.S.C. § 1983
### <u>Against All Defendants</u>

208.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 207 of this verified complaint as if fully set forth here.

30

209. The defendants committed an abuse of process by attempting to utilize the emergency demolition process, and the process for demanding the Plaintiffs to pay for the costs of the emergency demolition, to accomplish an improper purpose.

210. The improper purposes included, *inter alia*, to cause financial harm to the Plaintiffs due to the defendants' personal animus towards the Plaintiffs; to increase the value and profitability of property owned by favorable property owners in the City of Buffalo; to harm the Plaintiffs' business reputation; to deprive the Plaintiffs of their property rights without affording the Plaintiffs an opportunity to be heard; and to violate the Plaintiffs' rights secured to him by the Constitution of the United States.

211. In accomplishing these improper purposes, the defendants fraudulently conveyed that they had deprived the Plaintiffs of their Constitutionally-protected rights by lawful process.

212. In this regard, the defendants employed legal process in an improper manner and with ulterior motives.

213. Defendants deprived the Plaintiffs of the rights secured to them by the Constitution of the United States.

214. Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and, therefore, it is liable under 42 U.S.C. § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

215. As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

216.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

## NINTH CAUSE OF ACTION

### Violation of the Fourth, Fifth, and Fourteenth Amendments
### Conspiracy to Violate Plaintiffs' Constitutional Rights under 42 U.S.C. § 1983
### Against All Defendants

217.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 216 of this verified complaint as if fully set forth here.

218.    Employees for the City of Buffalo, while acting under the color of state law, conspired with employees of Empire Dismantlement Co. to deprive the Plaintiffs of their rights guaranteed under the Fourth, Fifth, and Fourteenth Amendments.

219.    The deprivation of Plaintiffs' constitutionally protected rights was carried out by all defendants collectively as co-conspirators.

220.    Defendant Empire Dismantlement Co. entered into an agreement with the other defendants and acted in concert with them to inflict unconstitutional injury.

221.    Defendant Empire Dismantlement Co. had an agreement with the other defendants to tear down the Property and knew, or should have known, that an objection to the emergency demolition had been or would be lodged.

222.    Defendants acted as expeditiously as possible to demolish the Property so as to avoid a legal challenge by the Plaintiffs.

223.    Defendants are liable under 42 U.S.C. § 1983 for conspiring to deprive the Plaintiffs of their constitutionally protected rights.

224.     Although a private entity, Empire Dismantlement Co. acted in concert with the City of Buffalo defendants to violate Plaintiffs' rights and in furtherance of causing damages to the Plaintiffs, and, therefore, it is liable under 42 U.S.C. § 1983.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

225.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

226.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

### TENTH CAUSE OF ACTION

**Violation of the Fourteenth Amendment
Policy, Custom, and Practice of Defendants and
Failure to Supervise and Train under 42 U.S.C. § 1983
Against the City of Buffalo**

227.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 226 of this verified complaint as if fully set forth here.

228.     Defendant City of Buffalo developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, including Plaintiffs, which caused the violation of Plaintiffs' rights.

229.     At all relevant times, defendant City of Buffalo was aware that defendants James Comerford, Lou Petrucci, Tracy Krug, and Kevin Coyne were inadequately trained regarding to citizens' rights under the Fourth, Fifth, and Fourteenth Amendment, yet defendant City of Buffalo maintained a policy or custom of failing to provide defendants James Comerford,

Lou Petrucci, Tracy Krug, and Kevin Coyne training on the Fourth, Fifth, and Fourteenth

Amendment or adequate supervision over them.

230.    It was the policy or custom, or both, of defendant City of Buffalo to

inadequately supervise and train its inspectors and employees in the Department of Permit and

Inspection Services, including defendants James Comerford, Lou Petrucci, Tracy Krug, and

Kevin Coyne, so it thereby failed to prevent the constitutional violations against Plaintiffs.

231.    Upon information and belief, defendant City of Buffalo maintained a

policy, custom, or practice of demolishing properties in the City of Buffalo with reckless

disregard to the due process rights of City of Buffalo property owners, including the Plaintiffs.

232.    Upon information and belief, the Buffalo policy, custom, or practice was

implemented under the direction and supervision of Mayor Byron Brown, starting with the "5 in

5" policy and continuing thereafter to the present day.

233.    Defendants failed to properly screen its inspectors and Department of

Permit and Inspection Services employees, and they retained inspectors and Department of

Permit and Inspection Services employees who have a history of inappropriate and unlawful acts.

234.    Defendants have failed to properly train and supervise inspectors and

Department of Permit and Inspection Services employees, and they failed to provide training on

the proper procedures and policies, including, without limitation, (i) procedure to properly

inspect a City of Buffalo property for structural integrity; (ii) procedure for appointing qualified

individuals and inspectors; (iii) procedure for complying with rules and procedures when

ordering an emergency demolition; (iv) procedure for documenting evidence that purportedly

supports an emergency demolition; (v) procedure for verifying an inspector's recommendation to

demolish a City of Buffalo property; (vi) procedure for disciplining inspectors who have a

history of retaliating or acting against City of Buffalo property owners for personal reasons; and (vii) the procedure to afford City of Buffalo property owners an opportunity to be heard before demolishing a building.

235.     Defendant City of Buffalo's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo, including Plaintiffs, and it therefore caused the violation of Plaintiffs' rights.

236.     Defendant City of Buffalo ratified and acquiesced in the unlawful conduct of the other defendants, as is evidenced by the City of Buffalo's failure to discipline the other defendants.

237.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

238.     The conduct by defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that the Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

## ELEVENTH CAUSE OF ACTION

### Negligence
### Against Empire Dismantlement Co.

239.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 238 of this verified complaint as if fully set forth here.

240.     Defendant Empire Dismantlement Co. owed the Plaintiffs a duty to ensure that the demolition and related work performed by it and its employees was necessary and conducted in a proper manner.

241.    Defendant Empire Dismantlement Co. owed a duty to the Plaintiffs to protect their interests and to not damage the Property.

242.    The City of Buffalo defendants had no legitimate authority to order the destruction of the Property.

243.    Empire Dismantlement Corp. entered into a contract with the defendants for a demolition of the Property despite actual or constructive knowledge that the defendants lacked proper authority to enter into a contract for the demolition of the Property.

244.    Defendant Empire Dismantlement Co. breached its duties to Plaintiffs when it decided to go forward with the demolition of the Property despite actual or constructive knowledge that the City of Buffalo defendants lacked proper authority to authorize an emergency demolition of the Property.

245.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

246.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.


### TWELFTH CAUSE OF ACTION

**Trespass and Trespass to Chattels**
**Against Empire Dismantlement Co.**

247.    Plaintiffs repeats and realleges the allegations contained in paragraphs 1 through 246 of this verified complaint as if fully set forth here.

248.    On the date of the demolition, Plaintiffs owned and possessed the Property and the building situated on it.

36

249. Defendant Empire Dismantlement Co. and its employees and agents intentionally and illegally entered the Property.

250. In the course of and in furtherance of its trespass upon the Property, defendant Empire Dismantlement Co. committed a wrongful demolition of the building situated on the Property.

251. Defendant Empire Dismantlement Co. is liable to the Plaintiffs for all damage to the Property including its diminution in value or the cost to repair and restore the Property, as well as the loss of Plaintiffs' contents and the costs of the repair work and improvements made before the wrongful demolition.

252. As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

253. The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

## THIRTEENTH CAUSE OF ACTION

### Conversion
### Against Empire Dismantlement Co.

254. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 253 of this verified complaint as if fully set forth here.

255. Plaintiffs were the sole owner of the Property, and there were no other interests or claims against their ownership.

256. Nevertheless, defendant Empire Dismantlement Co. exercised dominion and control over the Property in derogation of Plaintiffs' rights as owner.

257.     Defendant Empire Dismantlement Co. allowed its agents and employees to trespass on the Property, to cause damage, and then to demolish the building situated there while having actual or constructive knowledge that they lacked the proper authority to demolish the Property.

258.     Upon information and belief, the City of Buffalo paid defendant Empire Dismantlement Co. $42,900 for the wrongful demolition of the Property.

259.     Upon information and belief, the City of Buffalo paid defendant Empire Dismantlement Co. for the wrongful demolition of the Property under the assumption that the City of Buffalo would be compensated by the Plaintiffs through tax liens and other collection methods to obtain the demolition costs.

260.     As a result of their wrongful acts or omissions, the defendants are liable for conversion of the Property.

261.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

262.     The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.


### FOURTEENTH CAUSE OF ACTION

### Prima Facie Tort/Intentional Infliction of Economic Damage
### Against Empire Dismantlement Co.

263.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 262 of this verified complaint as if fully set forth here.

264.    Defendant Empire Dismantlement Co. intentionally inflicted harm upon the Plaintiffs by permitting its employees and agents to enter the Property without authorization from the Plaintiffs and by allowing its employees and agents to demolish the Property despite actual or constructive knowledge that they lacked proper authority to perform an emergency demolition.

265.    Defendant Empire Dismantlement Co. had no valid excuse or justification for its actions, as they were performed without authorization from the Plaintiffs and without proper legal authority.

266.    Additionally, defendant Empire Dismantlement Co. has now asserted a lien on the Property for the price of the demolition, rendering it worthless to the Plaintiffs, and allowing the defendants to force a sale of a piece of land that is in a resurging neighborhood.

267.    Defendant Empire Dismantlement Co.'s actions caused the Plaintiffs to lose the benefit of the repairs they performed, the costs associated with the rehabilitation, and the value of both the building and the rent that the Plaintiffs have not been able to collect from two different tenants over the course of many months.

268.    As a result of the foregoing, defendant Empire Dismantlement Co. is liable for the prima facie tort of intentional infliction of economic damages.

269.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

270.    The conduct by Defendants was willful, malicious, oppressive, and reckless, and it was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged here.

## DEMAND FOR JURY TRIAL

271.    Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury in this action of all triable issues.


## PRAYER FOR RELIEF

Plaintiffs, Mr. Levin and Vodka Properties LLC, pray for relief and demand

judgment as follows:

1.    That plaintiffs be awarded compensatory damages against all defendants

in an amount to be determined at trial;

2.    That plaintiffs be awarded punitive damages against all defendants in an

amount to be determined at trial;

3.    That this Court, under 42 U.S.C. § 1988, issue an order awarding plaintiffs

reasonable attorneys' fees, together with the costs of this action against all defendants; and

4.    That this Court award any other further relief, including legal or equitable

relief, as the Court considers just and proper.

Dated:    October 13, 2020
          Buffalo, New York


                              RUPP BAASE PFALZGRAF CUNNINGHAM LLC
                              *Attorneys for Plaintiffs*


                              s/ Jill L. Yonkers
                              Jill L. Yonkers, Esq.
                              Chad A. Davenport, Esq.
                              1600 Liberty Building
                              Buffalo, New York  14202
                              (716) 854-3400
                              yonkers@ruppbaase.com
                              davenport@ruppbaase.com

## VERIFICATION

STATE OF NEW YORK      )
                           : ss.:
COUNTY OF ERIE          )

        Maxim Levin, being duly sworn, deposes and says that he is the Plaintiff named

in the entitled action, and that he is the principal member and owner of Vodka Properties LLC;

that he has read the foregoing Verified Amended Complaint and knows the contents thereof; and

that the same is true to his own knowledge, except as to those matters therein stated to be alleged

upon information and belief, and as to those matters he believes them to be true.


_____

Maxim Levin, Plaintiff


Sworn to before me this
13 day of October, 2020.


Notary Public


Karen Morosey
NOTARY Public, State of New York
No. 01MO4995922
Qualified in Erie County
My Commission Expires May 4, 2022


41