

**RUPP**
**BAASE**
**PFALZGRAF**
**CUNNINGHAM**LLC
**ATTORNEYS**

1600 Liberty Building, 424 Main Street, Buffalo, NY 14202
716.854.3400 ◀ ruppbaase.com

**CHAD A. DAVENPORT**
davenport@ruppbaase.com

February 24, 2021

CITY OF BUFFALO
DEPARTMENT OF LAW
FEB 26 2021
RECEIVED
RQ

**TIMOTHY A. BALL, ESQ.**
Robert E. Quinn, Esq.
65 Niagara Square, 11th Floor
Buffalo, New York 14202

**LEWANDOWSKI & ASSOCIATES**
Stephen J. Stachowski, Esq.
721 Center Road
Buffalo, New York 14224

Dear Counselors:

> Re:    *Levin v. City of Buffalo, et al.*
> Case No.:  20-CV-01511-JLS-LGF
> Our File No.:   5209.27081
> _____

    Enclosed are plaintiffs' initial discovery responses pursuant to Fed. R. P. 26(a).  Please let me know if you have any questions.

        Very truly yours,

        s/ Chad A. Davenport

        Chad A. Davenport, Esq.

Encl.

cc:    Jill L. Yonkers (via email)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MAXIM LEVIN and VODKA PROPERTIES, LLC

                          Plaintiffs,

          v.                                                   Civil Action No.:  20-cv-1511

THE CITY OF BUFFALO, BYRON BROWN,
JAMES COMERFORD, JR., LOU PETRUCCI,
TRACY KRUG, EMPIRE DISMANTLEMENT CO.
and KEVIN COYNE,

                          Defendants.

---

## PLAINTIFF'S RULE 26(a)(1) DISCLOSURES

          In accordance with Federal Rule of Civil Procedure 26 and the Court's scheduling

order, plaintiffs, by their attorneys, Rupp Baase Pfalzgraf Cunningham LLC, disclose the

following information based on information currently and reasonably available to them.

          1.     The following individuals are likely to have discoverable information that

plaintiffs may use to support their claims:

          a.     Plaintiff Maxim Levin, 441 N. Rockingham Way, Amherst, New York

14228.  Plaintiff will confirm the information as detailed in his complaint, any future pleadings,

his anticipated deposition testimony, and otherwise to support of all his claims.  Plaintiff may

only be contacted through his counsel.

          b.     Defendants, whose addresses are identified on the summons or complaint.

They committed the acts complained of as further detailed in the complaint.

          c.     One or more neighbors of 393 Hampshire Street, Buffalo, New York,

14213 (the "Property"), currently unknown to plaintiffs. These individuals may be called as witnesses to refute the defendants' claim that there was ongoing criminal activity at the Property, and to the extent that they may have witnessed the improper demolition of the Property.

      d.     Other members of the City of Buffalo Department of Permit & Inspection Services, currently unknown to plaintiff, who knew about, supported, or committed the acts complained of in the complaint; who supervised, acknowledged, or consented to one or more of the acts complained of in the complaint; who participated in or witnessed the housing-court proceedings concerning the Property; and who witnessed or participated in conduct that deprived plaintiffs of or violated their rights, as identified in the complaint.

      e.     George Berbary, Esq., housing court attorney for plaintiff, 237 Main St. #816, Buffalo, NY 14203. Upon information and belief, Mr. Berbary: 1) discussed the alleged violations with City of Buffalo inspector Tracy Krug; 2) learned for the first time and to his surprise that the defendants claimed the Property was structurally unsound; and 3) showed Inspector Krug pictures of the Property proving that the building did not have structural infirmities. Plaintiffs may also rely on Mr. Berbary to discuss the damages they sustained as a result of having his property wrongfully demolished and having to defend against charges in housing court.

      f.     Empire Dismantlement Co. employees, currently unknown to plaintiffs, who were present during and participated in the demolition of the Property.

      g.     City of Buffalo Common Council employees, currently unknown to plaintiffs, that met with or authorized Commissioner James Comerford to enter into a contract with Empire Dismantlement Co. for the demolition of the Property.

      h.     Buffalo City Court Employees, including Hon. Patrick M. Carney and

others currently unknown to plaintiffs, who witnessed or otherwise participated in hearings on

October 21, 2019 and March 20, 2020 in housing court concerning the alleged violations at the

Property on October 21, 2019.

        i.     City of Buffalo employees, currently unknown to plaintiffs, who worked

with Mayor Byron Brown in the development of his "5 in 5" Demolition Plan.

        j.     Timothy Jones, 145 Monroe Street, Buffalo, New York 14206, whose

property at 858 Jefferson Avenue, Buffalo, New York 14206 was also allegedly wrongfully

demolished in accordance with Mayor Brown's aggressive demolition plan, and in accordance

with an improper practice and procedure used by the City Department of Permit & Inspection

Services and supported by and agreed to by some of the defendants.

        k.     Makka Furqan, 214 E. Amherst, Buffalo, New York 14214, whose

property at 988 Northland Avenue, Buffalo, New York 14215 was also allegedly wrongfully

demolished in accordance with Mayor Brown's aggressive demolition plan, and in accordance

with an improper practice and procedure used by the City Department of Permit & Inspection

Services and supported by and agreed to by some of the defendants.

        l.     Employees of Advance Contracting Services, 8 Lovering, Buffalo, New

York, 14216, who witnessed or otherwise participated in the asbestos sampling of the Property

on August 18, 2018.

        2.     Plaintiffs have the following documents in their possession, custody, or

control that they may use to support the claims: the pleadings, with exhibits, already filed and

served; a copy of the June 28, 2019 City of Buffalo inspection by Kevin Coyne; copies of the

Department of Permit & Inspection Permits for the Property dated June 15, 2017, August 22,

2017, and August 27, 2018; a copy of the October 16, 2015 demolition order; a copy of the June

-3-

28, 2019 Department of Permit & Inspection Services Notice of Violation; a copy of the August

2018 Advance Contracting Services Asbestos sampling report of the Property; a copy of the

September 23, 2019 City of Buffalo Department of Permit & Inspection Services Notice of

Condemnation of the Property; a copy of the Department of Permit and Inspection Services

August 27, 2019 Final Notice to remove personal property; a copy of the September 30, 2019

Department of Permit & Inspection Services Informal Bid for the emergency demolition of the

Property; photographs of the Property taken on June 28, 2019 and August 27, 2019; pleadings

and court documents from *People of the State of New York v. Timothy Jones* (Index No.:

811711/2019); pleadings and court documents from *Furqan v. City of Buffalo, et al.* (Index No.:

806511/2020); records regarding the City of Buffalo's response to calls for assistance at the

Property; police reports regarding the City of Buffalo's response to calls for assistance at the

Property; photographs of the Property from

https://www.preservationready.org/Buildings/393HampshireStreet (last visited on February 24,

2021); a list of active government certified building inspectors at

https://data.ny.gov/Government-Finance/Active-Code-Official-Certifications/civu-giic (last

visited on February 24, 2021); the Division of Building Standards and Codes transcripts from the

housing court proceedings with Judge Carney on October 21, 2019 and March 20, 2020;  copy of

the August 17, 2018 Property deed; a copy of the purchase agreement/mortgage documents of

the Property; and photographs of the Property obtained through FOIL requests to the City of

Buffalo.

       3.     Plaintiffs are in the process of computing their damages, but they include

both compensatory and punitive damages.  Plaintiffs expended and continue to expend sums to

defend against the housing court matters concerning the Property.  Compensatory damages will

include, but are not limited to, out of pocket losses for inspecting, repairing, and remediating the Property, including permitting fees paid to the City of Buffalo; funds expended to purchase the Property, including, without limitation, mortgage payments for the Property and insurance for the Property; and legal fees incurred regarding the alleged violations lodged by the City of Buffalo concerning the Property.

       4.       Plaintiffs are unaware of any insurance agreement under which an insurance business may be liable to satisfy all or any part of a possible judgment in this action or to indemnify or reimburse for payments made to satisfy the judgment. Defendants would be aware of any applicable insurance agreement applicable to their acts and omissions.

       Plaintiffs reserve the right to supplement and amend these responses in accordance with the Federal Rules of Civil Procedure, the Local Rules for the Western District of New York, and any Court order.

Dated: February 26, 2021
       Buffalo, New York

                     **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                     *Attorneys for Plaintiffs*

                     By:   *s/Jill L. Yonkers*
                              Jill L. Yonkers
                              Chad A. Davenport
                              1600 Liberty Building
                              Buffalo, New York  14202
                              (716) 854-3400
                              yonkers@ruppbaase.com
                              davenport@ruppbaase.com

**TO:    TIMOTHY A. BALL, ESQ.**
*Attorneys for defendants*
Robert E. Quinn, Esq.
65 Niagara Square, 11th Floor
Buffalo, New York  14202
(716) 851-4317
rquinn@city-buffalo.com

**LEWANDOWSKI & ASSOCIATES**
*Attorneys for defendants*
Stephen J. Stachowski, Esq.
721 Center Road
Buffalo, New York 14224
(716) 674-4710
sstachowski@lewandowskiandassoc.com

CRT19-946018

| THE CITY COURT OF BUFFALO, NEW YORK | COUNTY OF ERIE |
|---|---|

| THE PEOPLE OF THE STATE OF NEW YORK | PROPERTY INFORMATION |
|---|---|

Plaintiffs,

vs.

**VODKA PROPERTIES LLC**
**441 N ROCKINGHAM WAY**
**AMHERST, NY 14228**

Defendants,

RE PROPERTY:    393 HAMPSHIRE

A.K.A. ADDRESS:

# OF UNITS:  2          Building is: _____ VAC

# OF STORIES:  2

---

I, KEVIN COYNE, the complainant herein, am a Building Inspector for the City of Buffalo and I maintain offices in Room 304, City Hall, Buffalo, New York.

The defendant named above in this action, did OWN for the property listed above, in the City of Buffalo, and did there violate the ordinances of the City of Buffalo on or about 5/27/2019 through and including 6/28/2019, to wit:

### BUFFALO CODE INCORPORATING NEW YORK STATE UNIFORM FIRE PREVENTION AND BUILDING CODE

| COUNT | CODE | VIOLATIONS | VIOLATION DESCRIPTION |
|---|---|---|---|
| 1. | International Property Maintenar | IPMC-304.7 | Roofs and drainage |
| 2. | International Property Maintenar | IPMC-304.6 | Exterior Walls |
| 3. | International Property Maintenar | IPMC-304.2 | Protective treatment |
| 4. | International Property Maintenar | IPMC-304.13 | Window, skylight and door frames |
| 5. | International Residential Code | IRC-312.1 | Guards |
| 6. | International Property Maintenar | IPMC-308.1 | Accumulation of rubbish or garbage |
| 7. | International Property Maintenar | IPMC-302.4 | Weeds |
| 8. | International Property Maintenar | IPMC-301.3 | Vacant structures and land |
| 9. | City of Buffalo Ordinance | B264.4A | Rental Registry |

Based on ASMT which were consulted on 06/28/2019, I found the above named defendant did OWN the property listed above on the same date.

WHEREFORE, I request that this Court issue a Summons requiring the Defendant(s) to appear before this Court.

I HAVE READ THIS INFORMATION WITH THE UNDERSTANDING THAT FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

Verified this
06/28/2019

Chief Approval: _____          _____
                                                                    COMPLAINANT

| THE CITY COURT OF BUFFALO, NEW YORK | | COUNTY OF ERIE | |
|---|---|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK | | PROPERTY INFORMATION | |
| | Plaintiffs, | RE PROPERTY: 393 HAMPSHIRE | |
| vs. | | A.K.A. ADDRESS: | |
| VODKA PROPERTIES LLC | | | |
| 441 N ROCKINGHAM WAY | | # OF UNITS: 2 | Building is: _____ VAC |
| AMHERST, NY 14228 | | # OF STORIES: 2 | |
| | Defendants, | | |

THE FACTS ON WHICH THIS ACCUSATION IS MADE ARE OF MY OWN KNOWLEDGE. ON 06/28/2019, I MADE AN INSPECTION AND OBSERVED THE FOLLOWING:

| COUNT | LOCATION | DESCRIPTION / NARRATIVE |
|---|---|---|
| 1. | | The downspouts are missing at both sides of the building. The downspouts are necessary for proper drainage. |
| 2. | | The siding is deteriorated, missing, or damaged at various areas and not being maintained on a regular basis. |
| 3. | | The exterior walls and wood trim have chipped and peeling paint at all sides of the building. The exterior wall surfaces and wood trim are not being maintained regularly. |
| 4. | | There are numerous broken, boarded, or missing windows and doors. Various windows and doors are in need or repair and are not being maintained as needed. |
| 5. | | The guard rails are missing from the front porch causing a tripping/falling hazard. |
| 6. | | There is trash and debris at the rear and side yards that is not being removed in a timely manner. |
| 7. | | The grass and weeds are overgrown at all yards and not being cut and cleaned regularly. |
| 8. | | The building has been vacant, a constant source of complaints and criminal activity, for an extended period of time. The building is not being maintained on a regular basis. |
| 9. | | The rental registry fee is not being paid on a regular basis. The total fee owed at this time is $350. |

Based on ASMT which were consulted on 06/28/2019, I found the above named defendant did OWN the property listed above on the same date.

WHEREFORE, I request that this Court issue a Summons requiring the Defendant(s) to appear before this Court.

I HAVE READ THIS INFORMATION WITH THE UNDERSTANDING THAT FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS "A" MISDEMEANOR PURSUANT TO SECTION 210.45 OF THE PENAL LAW.

Verified this
06/28/2019

Chief Approval: _____

COMPLAINANT _____



# BUILDING PERMIT
## Department of Permit & Inspection Services
65 Niagara Sq  Rm. 301
Buffalo, NY 14202

Department of Permit & Inspection Services

. . . , Building a Better Buffalo

Byron W. Brown, Mayor

**Application Type:  Repair to Existing Building**

## You must contact the Inspector at (716)851-4382 or at the number listed below prior to starting any work.

| | |
|---|---|
| **Application/Permit No.:** REP17-9433508 | **Issue Date:** 06/15/2017 |
| **Location:** 393 HAMPSHIRE | **Processed By:** CATHERINE AMDUR |
| **Applicant:**    LLC  BELLA DEVELOPMENT | **Expire Date:** 12/15/2017 |
|    148 ELMWOOD AVE | |
|    BUFFALO, NY 14201 | **Fees:** $75.00 |
|    USA | **License No.:** |

**SBL No.:** 0993500009001000

**License Type:**

**Land Use:** 220

**DBA:**

**Census Track:** 66.01

**Value:** $4,000.00

**Inspector:**  John C Stephens  (716)851-4382

**Plans:** No

**Description of Work:**  COMPLETE TEAROFF AND REROOF AT 2-FAMILY DWELLING

## YOU MUST CONTACT YOUR INSPECTOR PRIOR TO STARTING ANY WORK

*James Comerford Jr.*

Commissioner, Permit & Inspection Services

*Thank you for investing in the City of Buffalo*

AND AS SHOWN ON APPLICATION NUMBERED ABOVE, WHICH APPLICATION IS MADE PART OF THIS PERMIT.
*** ALL GENERAL CONTRACTORS AND SUB-CONTRACTORS MUST CARRY A CITY LICENSE ***
ALL WORK PERFORMED AND ANY ASSOCIATED PLANS SUBMITTED FOR THE ISSUANCE OF THIS PERMIT, SHALL COMPLY WITH ALL APPLICABLE STATE AND LOCAL CODES, ORDINANCES AND REGULATIONS.
THIS PERMIT IS VOID IF FOUND TO BE ISSUED IN VIOLATION OF ANY LAW OR ORDINANCE AND CONDITIONS STATED ABOVE.

## THIS PERMIT MUST BE DISPLAYED WHERE IT IS VISIBLE FROM THE STREET

Signature of Contact/Contractor _____    Date: 3/3/2020

Apply for your next Building Permit online at http://www.buffalony.gov



*Byron W. Brown, Mayor*

# BUILDING PERMIT

### Department of Permit & Inspection Services

65 Niagara Sq. Rm. 301
Buffalo, NY 14202

Department of Permit & Inspection Services

. . . . *Building a Better Buffalo*

**Application Type:** Repair to Existing Building

**You must contact the Inspector at (716)851-4382 or at the number listed below prior to starting any work.**

**Application/Permit No.:** REP17-9437217

**Location:** 393 HAMPSHIRE

**Applicant:** LLC  BELLA DEVELOPMENT
148 ELMWOOD AVE
BUFFALO, NY 14201
USA

**SBL No.:** 0993500009001000

**Land Use:** 220

**Census Track:** 66.01

**Inspector:** John C Stephens  (716)851-4382

**Description of Work:** Front porch repairs. Work by owner.

**Issue Date:** 08/22/2017

**Processed By:** MICHAEL CASTRO

**Expire Date:** 02/22/2018

**Fees:** $75.00

**License No.:**

**License Type:**

**DBA:**

**Value:** $1,500.00

**Plans:** No

## YOU MUST CONTACT YOUR INSPECTOR PRIOR TO STARTING ANY WORK

*James Comerford Jr.*
_____
Commissioner, Permit & Inspection Services

*Thank you for investing in the City of Buffalo*

AND AS SHOWN ON APPLICATION NUMBERED ABOVE, WHICH APPLICATION IS MADE PART OF THIS PERMIT.
*** ALL GENERAL CONTRACTORS AND SUB-CONTRACTORS MUST CARRY A CITY LICENSE ***
ALL WORK PERFORMED AND ANY ASSOCIATED PLANS SUBMITTED FOR THE ISSUANCE OF THE PERMIT, SHALL COMPLY WITH ALL APPLICABLE STATE AND LOCAL CODES, ORDINANCES AND REGULATIONS.
THIS PERMIT IS VOID IF FOUND TO BE ISSUED IN VIOLATION OF ANY LAW OR ORDINANCE AND CONDITIONS STATED ABOVE.

## THIS PERMIT MUST BE DISPLAYED WHERE IT IS VISIBLE FROM THE STREET

Signature of Contact/Contractor _____    Date: 3/3/2020

Apply for your next Building Permit online at http://www.buffalony.gov



**Department of Permit & Inspection Services**

*. . . . Building a Better Buffalo*

# BUILDING PERMIT

## Department of Permit & Inspection Services

65 Niagara Sq  Rm. 301
Buffalo, NY 14202

*Byron W. Brown, Mayor*

**Application Type:  Repair to Existing Building**

## You must contact the Inspector at (716)851-4382 or at the number listed below prior to starting any work.

**Application/Permit No.:  REP18-9460691**

**Location:**  393 HAMPSHIRE

**Applicant:**    VODKA PROPERTIES LLC
441 N ROCKINGHAM WAY
AMHERST, NY 14228
USA

**SBL No.:**  0993500009001000

**Land Use:**  220

**Census Track:**  66.01

**Inspector:**  John C Stephens  (716)851-4382

**Issue Date:** 08/27/2018

**Processed By:**  THOMAS CARTER

**Expire Date:** 02/27/2019

**Fees:** $75.00

**License No.:**

License Type:

DBA:

Value: $7,000.00

Plans: No

**Description of Work:**  tear out entire interior and replace with new drywall - new replacement vinyl windows - new doors throughout - new vinyl siding on exterior with new trim - new roof - new gutters - asbestos survey attached

## YOU MUST CONTACT YOUR INSPECTOR
## PRIOR TO STARTING ANY WORK

*James Comerford Jr.*

Commissioner, Permit & Inspection Services

*Thank you for investing in the City of Buffalo*

AND AS SHOWN ON APPLICATION NUMBERED ABOVE, WHICH APPLICATION IS MADE PART OF THIS PERMIT.
** ALL GENERAL CONTRACTORS AND SUB-CONTRACTORS MUST CARRY A CITY LICENSE **
ALL WORK PERFORMED AND ANY ASSOCIATED PLANS SUBMITTED FOR THE ISSUANCE OF THIS PERMIT, SHALL COMPLY WITH ALL APPLICABLE STATE AND LOCAL CODES, ORDINANCES AND REGULATIONS.
THIS PERMIT IS VOID IF FOUND TO BE ISSUED IN VIOLATION OF ANY LAW OR ORDINANCE AND CONDITIONS STATED ABOVE.

## THIS PERMIT MUST BE DISPLAYED WHERE IT IS VISIBLE FROM THE STREET

Signature of Contact/Contractor _____  Date: 3/3/2020

Apply for your next Building Permit online at http://www.buffalony.gov

STATE OF NEW YORK
COUNTY OF ERIE: BUFFALO CITY COURT

PEOPLE OF THE STATE OF NEW YORK,

                        Plaintiff,

v.

                                            **DEMOLITION ORDER**

                                            Docket No. CR-14868-15
                                            RE:  393 HAMPSHIRE

BELLA DEVELOPMENT INC,

                        Defendant.

        Upon the Information charging defendant with violations of the applicable New York

State, Erie County and/or Buffalo City Codes concerning the conditions at the property located at

393 HAMPSHIRE  upon sworn affidavits, evidence and/or testimony concerning the conditions

of the structure(s) present on such property; it is hereby

        ORDERED that the condition of the subject premises is dangerous to the life, health, or

safety of the public, and that demolition of the structure(s) on that property is necessary to protect

and promote the public interest; and it is further

        ORDERED that the City of Buffalo may demolish such structure(s) as soon as it is

practical for the City to do so; and it is further

        ORDERED that defendant or any other parties responsible for this demolition may be

held liable to the City of Buffalo for the costs of such demolition, and that the City may bring an

action seeking a judgment for such costs once they have been determined.

ENTERED:    October 16, 2015

                                       _____
                                       Hon. Patrick M. Carney



# CITY OF BUFFALO
## DEPARTMENT OF
### PERMIT AND INSPECTION SERVICES
65 Niagara Square, Room 304 City Hall • Buffalo, New York 14202-3303

## NOTICE OF VIOLATION

Initial Inspection Date _____ 6/28/19

District _____

Inspected Property Address _____ 393 HAMPSHIRE

☐ Front   ☐ Rear     ☐ Upper   ☐ Lower

Owner/Agent _____

# Stories _____     # Units _____

Mail Address _____

Const.: _____

City/State/Zip Code _____

☒ Vacant     ☐ Occupied

Note:   The circled items indicate violation of the Property Maintenance Code and/or Residential Code of the State of New York and/or the Ordinances of the City of Buffalo.

| Chapter # | | | OK | Date Inspected |
|---|---|---|---|---|
| PM 304.11 | 1.) | The chimney/s _____ | ☐ | _____ |
| PM 304.7 | 2.) | The roof _____ | ☐ | _____ |
| PM 304.7 | (3.) | Gutters and downspouts _____ MISSING _____ | ☐ | _____ |
| PM 304.7 | 4.) | Roof drainage _____ | ☐ | _____ |
| PM 304.9 | 5.) | Overhang extensions _____ | ☐ | _____ |
| PM 304.6 | (6.) | The siding is _____ in the following location/s: | ☐ | |
| PM 304.5 | 7.) | The skirting at the base of the building must be _____ and made rodent proof in the following location/s: _____ | ☐ | |
| PM 304.2 | (8.) | The exterior walls/(wood trim) shall be protected from the weather in the following location/s: _____ | ☐ | _____ |
| PM 304.4 | 9.) | Structural members shall be maintained _____ | ☐ | _____ |
| PM 304.5 | 10.) | Foundation walls shall be maintained _____ | ☐ | _____ |
| PM 304.13 | (11.) | Windows/doors in the following locations shall be weather tight and operable _____ | ☐ | _____ |
| PM 304.12 | 12.) | Handrails and guardrails shall be maintained _____ | ☐ | _____ |

*Advanced Contracting Services*

# ASBESTOS SAMPLING

*Location:*

## Vacant House
## 393 Hampshire
## Buffalo NY

*Conditions as of August 2018*

*Prepared For:*

*Homeowner*
*Prepared by:*

Advance Contracting Services
8 Lovering
Buffalo NY 14216
*advancedcss1976@gmail.com*

NYSDOL Asbestos License # 115026

8 Lovering, Buffalo NY 14216 (716) 480-2125  *advancedcss1976@gmail.com*

 *Advanced Contracting Services*

Advanced Contracting Services, was retained to perform asbestos sampling.

The purpose of the sampling was to determine the presence, location and quantity of ACM (asbestos containing materials), at the above referenced location. As defined by the property owners specific scope of work for the project. This survey includes the following:

- *Identification of suspect asbestos containing materials.*
- *Sampling and analysis of suspect materials.*
- *Identification of the location, approximate quantity, friability of confirmed asbestos containing materials.*

*ASBESTOS CONTAINING MATERIALS (ACM)*

Polarized Light Microscopy (PLM) and, where required, Transmission Electron Microscopy (TEM) revealed asbestos in the following analyzed samples

| Homogeneous Material | Approximate Quantity and Location of ACM | | Friability | Asbestos |
|---|---|---|---|---|
| Plaster | | NA | - | no |
| Plaster | | NA | - | no |
| Plaster | | NA | - | no |
| Plaster | | NA | - | no |
| Floor Y | | NA | - | no |
| Floor R | | NA | - | no |

*Laboratory Analysis Performed By: Paradigm Environmental NYS DOH ELAP# 11195*
*Sampling Preformed By: Advanced Contracting NYS Asbestos Contractor # 115026*

*GENERAL CONDITIONS OF INSPECTION*

Any reported quantities found in this report, if applicable, are field approximations of materials in accessible areas only and should be field verified prior to abatement. This report is not designed to serve as a specification for abatement. Please, find enclosed the laboratory analytical results and chain of custody documentation.

Any included laboratory results, if applicable, are submitted pursuant to CEM Services current terms and conditions of sale, including the company's standard warrant and limitation of liability provisions. No responsibility or liability is assumed for the manner in which the results are used or interpreted.

PO Box 212 West Seneca NY 14224 (716) 480-2125  advancedcss1976@gmail.com

 *Advanced Contracting Services*

This report is based on the condition and contents present at the above referenced location at the time of inspection.

Serial No. 61620

 **PARADIGM**
ENVIRONMENTAL SERVICES, INC.

1815 Love Road, Grand Island, NY 14072 Office: (716) 775-5777 Fax: (716) 775-5778

### PLM & TEM BULK ASBESTOS ANALYSIS REPORT
### via NYSDOH ELAP Method 198.1, 198.4 and 198.6

| Client: | CEM Services Inc | Job No: 2367-18B |
| Location: | 393 Hampshire | Page: 1 of 2 |

**Sample Date:** 8/18/2018                                    **Sample Received Date:** 8/20/2018

| Client ID | Lab ID | Sampling Location | Description | PLM Asbestos Fibers Type & Percentage | PLM Total Asbestos | N O B | TEM Asbestos Fibers Type & Percentage | TEM Total Asbestos | PLM Non-Asbestos Fibers Type & Percentage | Non-Fibrous Matrix Material % |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 20488 | Plaster | Gray Plaster | None Detected | 0% | | Not Required | N/A | None Detected | 100% |
| 2 | 20489 | Plaster | Gray Plaster | None Detected | 0% | | Not Required | N/A | None Detected | 100% |
| 3 | 20490 | Plaster | Gray Plaster | None Detected | 0% | | Not Required | N/A | None Detected | 100% |
| 4 | 20491 | Plaster | Gray Plaster | None Detected | 0% | | Not Required | N/A | None Detected | 100% |
| 5 | 20492 | Floor Y | Gray Floor Tile | Inconclusive No Asbestos Detected | 0% | √ | None Detected | <1.0% | None Detected | 100% |
| 6 | 20493 | Floor R | Gray Floor Tile | Inconclusive No Asbestos Detected | 0% | √ | None Detected | <1.0% | None Detected | 100% |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

KEY TO NOB COLUMN SYMBOLS
No Symbol in the NOB column denotes sample analyzed by ELAP Method 198.1 (PLM).
√ NOB (non-friable organically bound) denotes material analyzed by ELAP Method 198.6 (PLM) and 198.4 (TEM) as noted.
V denotes material analyzed by ELAP Method 198.6 (PLM) per NYSDOH. This Method does not remove vermiculite and may underestimate the level of asbestos
present in a sample containing greater than 10% vermiculite.
# denotes friable material analyzed by ELAP Method 198.6 (PLM) and 198.4 (TEM) as noted.
X denotes sample prepped only by ELAP Method 198.6.
** Polarized-light microscopy is not consistently reliable in detecting asbestos in floor coverings and similar non-friable organically bound materials.
Quantitative transmission electron microscopy is currently the only method that can be used to determine if this material can be considered or treated as non-asbestos containing.
PLM Bulk Asbestos Analysis by New York State Department of Health, ELAP Method 198.1 ,198.4 and 198.6 ("Polarized Light Microscopy and Transmission Electron
Identifying and Quantitating Asbestos in Bulk Samples and in Non-Friable Organically Bound Bulk Samples.") or EPA 600/M4-82-020 per 40 CFR 763

**ELAP ID No.: 11955**

| | |
|---|---|
| PLM Date Analyzed: | 8/21/2018 |
| PLM Analyst: | A. Dembski / Y. Dorfman |
| Microscope: | Olympus BH-2 #241709 |

TEM Date Analyzed: 8/22/2018
TEM Analyst: A. Dembski
Microscope: Hitachi 600 AB

**Laboratory Results Approved By:**
Asbestos Technical Director or Designee

Amy Dembski

Paradigm Environmental Services, Inc. is not responsible for the data supplied by an independent inspector. New York State Department of Health Environmental Laboratory
Program (ELAP) requirements mandate that this report must not be reproduced except in full without the approval of the laboratory. This report relates ONLY to the item
received by the lab. This report must not be used to claim product endorsement by NYS ELAP or any agency of the U.S. Government. Quality control data (including 95%
limits and laboratory or analysts' accuracy and precision) is available upon request.

2367-18B   8/23/2018

2367 - WB

# CEM SERVICES INC Analysis Request & Chain of Custody

Project Number: 393 Hampshire

Contact Person: Mike C

Turnaround time: 2 day

# of Samples: ___

| Sample Number | Material Description | Quantity | Lab Use |
|---|---|---|---|
| 1 | Plaster | | 23087 |
| 2 | | | -84 |
| 3 | | | -90 |
| 4 | | | -11 |
| 5 | Floor Y | | -17 |
| 6 | Floor R | | -15 |

Comments/Special Instructions: ___

| Relinquished By | Date | Time | Received By | Date | Time |
|---|---|---|---|---|---|
| Sampled By | Date 8/18/18 | Time | Received By | Date | Time 07005 |





# CITY OF BUFFALO
## DEPARTMENT OF
## PERMIT & INSPECTION SERVICES

### OFFICE OF THE COMMISSIONER

### NOTICE OF CONDEMNATION

BYRON W. BROWN
Mayor

JAMES COMERFORD, Jr.
Commissioner

September 23, 2019

New York State Department of Labor
Division of Safety and Health
Engineering Services Unit
State Office Building Campus
Albany, New York 12240

RE: 393 HAMPSHIRE

As Commissioner of the Department of Permit and Inspection Services, I have had the opportunity to review the conditions referencing the aforementioned property. The following conditions were noted:

1. The Building is vacant and abandoned.

2. The Building and/or portions thereof are in a state of structural compromise.

   *BUILDING IS STRUCTURALLY UNSOUND AND IN IMMINENT DANGER OF COLLAPSE. HOLES IN ROOF, FLOORS AND WALLS AND FOUNDATION ISSUES.*

3. The Building condition is such that the likelihood of a fire exists.

4. The Building condition is such that it poses a health and safety issue for the community.

As this building is in partial structural failure and entering upon these premises poses imminent danger, the Department of Permit and Inspection Services has determined that this structure is in violation of Chapter 113 – "Unsafe Buildings" – of the Code and Ordinance of the City of Buffalo. By the powers vested in me by the Charter of the City of Buffalo, Section 17-2 – "Duties and Powers", **I am declaring this building *condemned* and I am ordering demolition as soon as possible.** The Department of Permit and Inspection Services is in support of the application of an ICR 56, 11/5 – Controlled Demolition/Condemned Buildings – to demolish the structure with the asbestos-containing material in place 'so as not to place workmen in a dangerous situation. Compliance with ICR 56-3.4(B1) – Notification to the New York State Department of Labor - is underlined mandatory. Due to emergency conditions, we request that the ten-day notification be waived.

If you have any questions concerning this matter, please contact Commissioner James Comerford, Jr. at (716) 851-4976.

Sincerely,

*James Comerford Jr.*

James Comerford, Jr., Commissioner
Lou Petrucci, Deputy Commissioner



**CITY OF BUFFALO**
DEPARTMENT OF
PERMIT & INSPECTION SERVICES
OFFICE OF THE COMMISSIONER



BYRON W. BROWN
Mayor

JAMES COMERFORD, JR
Commissioner

## FINAL NOTICE

Date: _8/27/19_

TO: VODKA PROPERTIES LLC
441 N. ROCKINGHAM
AMHERST NY 14228

## NOTICE TO REMOVE PERSONAL PROPERTY

PROPERTY ADDRESS: _393 HAMPSHIRE_ BUFFALO, NY _14213_

TO WHOM IT MAY CONCERN:

You are hereby notified that any valuable personal household items in the building located at above address should be removed by _9/3/19  (5 DAYS)_, due to imminent demolition of said building.

If you require any further information, contact the Demolition Office at 716-851-4949 or 716-851-4908.

Respectfully,

_[signature]_

65 NIAGARA SQ / 324 CITY HALL / BUFFALO, NY 14202-3303 / 716-851-4972 / FAX: 716-851-4942 / Email: jcomerford@city-buffalo.com

**CITY OF BUFFALO**
**DIVISION OF AUDIT & CONTROL**
**CONTRACT FORM**

| | | | |
|---|---|---|---|
| **FROM:** | PERMITS & INSPECTIONS SERVICES | **DATE:** | 9/30/2019 |
| **VENDOR ID NUMBER:** | 5179 | **CONTRACT #** | |
| **VENDOR NAME:** | EMPIRE DISMANTLEMENT | | |
| **FUND:** | CPF | | |
| **ACCOUNT CHARGEABLE** | 36552006 | | |
| **SPECIFIC GENERAL LEDGER DESCRIPTION** | Land Improvements | | |
| **AMOUNT** | $42,900.00 | | |

**EXPLANATION:** DEMOLITION OF UNSTABLE BUILDING AT 393 HAMPSHIRE

**DEPARTMENT HEAD SIGNATURE & DATE** _Jamie Comerford Jr._ 10/1/19

*Please Answer Questions Below and Attach Proper Documents:*

| | |
|---|---|
| Approved to Form by Law Department | YES |
| Contract has been Notarized | YES |
| Printout of Current GL Account and Balances | Yes |
| Is this Contract a Renewal? | NO |
| Common Council Approval | **ITEM** _____ **DATE:** _____ |

| | ExpirationDate | | ExpirationDate |
|---|---|---|---|
| **GENERAL LIABILITY** | 7/1/2020 | **BUILDERS INSURANCE** | |
| **AUTOMOBILE LIABILITY** | 7/1/2020 | **INSTALLATION INS.** | |
| **EXCESS LIABILITY** | 7/1/2020 | **PROFESSIONAL LIABILITY** | |
| **WORKER'S COMPENSATION** | 7/1/2020 | **NYS DISABILITY INS.** | 1/1/2020 |
| **OWNERS PROTECTIVE** | | **OTHER** | |
| **BOND NUMBER** | | **RETENTION** | |

**Debt & Investment Auditor** _____

**Encumbering Contract Auditor** _____

**PRINCIPAL AUDITOR SIGNATURE** _____

**CITY AUDITOR SIGNATURE** _____

**DEPUTY COMPTROLLER SIGNATURE** _____

**COMMENTS:** _____

IL&P-204
APPROVED BY CORPORATION COUNSEL

# INFORMAL BID
## DEPARTMENT OF PERMIT & INSPECTION SERVICES

### CITY OF BUFFALO – CONTRACT FOR EMERGENCY DEMOLITION SERVICES

Bids will be accepted **SEPTEMBER 25, 2019** for the following work.
Bids shall be submitted in a sealed opaque envelope, marked with the name and address of the bidder and the work bid upon.

TO THE Commissioner of Permit & Inspection Services:

The undersigned hereby proposes to furnish all the labor, services, plant, equipment, materials, supplies and other facilities and things necessary and proper for, or incidental to, the performance and completion of the following work; subject to the conditions and instructions on reverse side:

Demolition shall be performed in accordance with the City of Buffalo's Department of Permit & Inspection Services demolition specifications. Copies of specifications may be reviewed at Room 304 City Hall.

## 393 HAMPSHIRE     $ 42,900

## CONTROLLED DEMOLITION WITH NO REMOVALS.
## FINAL GRADE SHALL BE 12 INCHES OF AGGREGATE FREE SOIL TOPPED WITH GRASS SEED.

### TOTAL:     $ 42,900

The undersigned declares that he or his representatives have visited the site of the work; have examined the drawings and/or specifications for the work; have verified all measurements and are responsible for the correctness of same; have conferred with the Commissioner of Permit & Inspection Services and have been fully informed of existing conditions and limitations under which the work must be performed.

The undersigned further declares that his bid covers all the work contemplated by the drawings and/or specifications and agrees that his bid becomes part of the Order to Proceed, if and when such order is issued.

| THE UNDERSIGNED FURTHER AGREES TO START THE WORK **IMMEDIATELY**, AND TO COMPLETE THE SAME WITHIN **SEVEN (7) DAYS** FROM STARING DATE. |
|---|

NON-COLLUSIVE BIDDING CERTIFICATION: (a) By submission of this bid, each bidder and each person signing on behalf of any bidder certifies, and in the case of a joint bid each party thereto certifies as to its own organization, under penalty of perjury, that to the best of knowledge and believe: (1) The prices in this bid have been arrived at independently without collusion, consultation, communication, or agreement, for the purpose of restricting competition: as to any matter relating to such prices with any other bidder or with any competitor; (2) Unless otherwise required by law, the prices which have been quoted in this bid have not bee knowingly disclosed by the bidder and will not knowingly be disclosed by the bidder prior to opening, directly or indirectly, to any other bidder or to any competitor; and (3) No attempt has been made or will be made by the bidder to induce any other person, partnership or corporation to submit or not to submit a bid for the purpose of restricting competition.

Accepted and Agreed to By:

James Comerford Jr., Commissioner
Louis Petrucci, Deputy Commissioner

OLEDA L. VAZQUEZ
Notary Public - State of New York
No. 01VA6389780
Qualified in Erie County
My Commission Expires 04/2023

Contractor **Empire Dismantlement Corp.**
By: **David Mazur, President**
Title:
Address: **2680 Grand Island Blvd.**
**Grand Island, New York 14072**

OLEDA L. VAZQUEZ
Notary Public - State of New York
No. 01VA6389780
Qualified in Erie County
My Commission Expires 04/2023

*Revised, August 2016*

**BIDS:** The City of Buffalo intends to award the work to the lowest responsible bidder. The City reserves the right to reject any and/or all bids and to not award the contract. While the City may choose to do so, the City is under no obligation to re-issue any cancelled bid.

**NOTICE:** An Order to Proceed shall be given by Commissioner of Permit & Inspection Services to the Contractor or his representative before commencement of any work.

**CONTRACT:** The City's specifications relating to the work, together with the Contractor's bid and the Order to Proceed shall all together constitute the contract between the successful bidder and the City.

**GUARANTY:** The Contractor shall leave the work in perfect order on completion thereof and, without expense to the City, keep and maintain the same in good condition and repair for one (1) year from date of acceptance of same by the City and shall leave the work in good condition and repair at the end of said period and neither the final payment or final certificate nor any provisions in the contract documents shall relieve the Contractor or his surety of the responsibility for negligence or faulty materials or workmanship within the extent and period provided by law and upon written notice from the City the Contractor shall remedy any defects due thereto and shall pay all expenses for any damage to other work resulting therefrom.

**DRAWINGS AND SPECIFICATIONS:** The Contractor shall adhere strictly to the drawings and/or specifications, as interpreted by the Commissioner or Director of Permit & Inspection Services, in the performance of the work of this contract. The Director may make minor changes in the work, not inconsistent with the work and not involving extra cost. No changes or any work involving extra cost shall be done except on the written order of the Commissioner of Permit & Inspection Services.

**MATERIALS:** Unless otherwise specified, all materials, if requested, shall be submitted to the City for approval.

**WORKMANSHIP:** Shall be first-class in every respect without exception and shall be equal to the best modern practices.

**INSPECTION:** The Commissioner of Permit & Inspection Services, or his designee, shall inspect all work and may stop such work, if, in their opinion, it is not being satisfactorily performed. No work shall be closed *or covered* until it has been approved by the inspector in charge.

**DEFECTIVE MATERIALS OR WORKMANSHIP:** Should any material or workmanship be found to be defective or contrary to order, such material or workmanship, no matter in what stages of completion, may be rejected, and shall be corrected by the Contractor at his own expense.

**PREPARATION:** Contractor shall remove all existing materials as required to permit the installation of new work.

**DEBRIS AND OLD MATERIALS:** Contractor shall clean up and remove all debris and rubbish resulting from the work from time to time as required or directed. At completion of the work, the premises shall be left in a neat, unobstructed condition and the buildings broom clean, and everything in perfect order and repair. Old Materials are the property of the Contractor unless otherwise specified.

**SHOP AND SETTING DRAWINGS:** If requested, the Contractor shall submit for approval by the City shop and setting drawings.

**PROTECTION OF WORK AND PROPERTY:** The Contractor shall continuously maintain adequate protection of all his work from damage and shall protect the City's property and all adjacent property from injury arising in connection with this work. Contractor hereby assumes the sole responsibility for any and all costs attributed to his failure to comply with this provision.

**SUPERVISION:** The Contractor shall give the work adequate personnel supervision and shall keep a competent superintendent constantly on the site while the work is progressing. None but competent men shall be employed on the work and if the Commissioner of Permit & Inspection Services or his representative shall deem any employee incompetent or for any cause unfit for his duty, the Contractor shall remove the employee immediately and he shall not again be employed on the work.

**INDEMNIFICATION:** This Contractor shall and does hereby indemnify and save harmless the City, its officers and employees from all claims, suits, actions, damages, losses and costs of every name and description, including attorney's fees, to which the City may be subjected to or put by reason of injury to the person or property of another, or the property of the City, resulting in any degree or manner whatsoever from or in connection with Contractor's activities and or resulting, from the negligence or carelessness, active or passive, of the Contractor, or the joint negligence, active or passive of the Contractor and others, his, its, or their employees, agents, or subcontractors, in the performance of Contractor's work, or in the delivery of materials and supplies, or otherwise. Contractor's indemnification is without limit. The City shall not be limited by reason of any insurance coverage provided hereunder or the limits of any insurance requirements. The provisions of this section shall survive the expiration or termination of this contract. In addition to and in furtherance of the foregoing indemnity, the insurance coverage described herein must include language that states that the insurance carrier will defend the City for any and all claims arising or resulting from this work. Furthermore, the whole or so such money to become due under this contract or as shall be considered necessary by the City, may be retained by it until all suits or claims for damages shall have been settled or otherwise disposed of and evidence to that effect furnished to the satisfaction of the City.

**INSURANCE:** Prior to the issuance of the Order to Proceed, the Contractor shall file certificates of insurance evidencing proof of having obtained the requisite policies of insurance with the Department of Permit & Inspection Services.

The City requires insurance coverage as listed below for this work. The required insurance shall be submitted to the City by the lowest responsible bidder within five (5) days after receipt of bids. Failure to do so will give the City the right to reject such bid and either award the contract to the next lowest responsible bidder or re-advertise the work. The Contractor must apply to the City for all required permits within five (5) days after the work of the Order to Proceed. Upon failure to comply with this requirement, the City shall have the right to declare the Contractor in default, terminate the work order and remove the Contractor's name from the list of invited bidders for all City work.

The term "Contractor" shall also include the contractor, their respective agents, representatives, employees or subcontractors; and the term "City of Buffalo" (hereinafter called the "City") shall include their respective officers, agents, officials, employees, volunteers, boards, agencies and commissions. The insurance required shall be written for not less than the scope and limits of insurance specified hereunder, or required by applicable federal, state and/or municipal law, regulation or requirement, whichever coverage requirement is greater. It is agreed and understood that the scope and limits of insurance specified hereunder are minimum requirements and shall in no way limit or exclude the City from additional limits and coverage provided. Coverage shall be primary and non-contributory. The insurance provisions contained herein may be increased on very large or complex projects where the risk is felt to be greater by the Commissioner of Permits & Inspection Services, in his sole discretion.

*Revised, August 2015*

All policies of insurance shall be provided by a company or companies admitted and authorized to do business in the State of New York. Before commencing the work, Contractor shall furnish to the City the certificates of insurance, and shall thereafter provide renewal certificates, as appropriate, evidencing such coverage written by a company or companies acceptable to the City. All certificates of insurance shall be subject to the approval of the Corporation Counsel of the City as to form. Such certificates and renewal certificates shall provide for a notice of cancellation, lapse or restrictive amendment by certified or registered mail of at least thirty (30) days. If such insurance is written on a "claims made" basis then such insurance shall be kept in full force and effect for three (3) years after final payment to the Contractor.

### MINIMUM SCOPE AND LIMITS OF INSURANCE

#### i.)   *Workers' Compensation & Disability Insurance:*

With respect to all operations the Contractor performs the Contractor shall carry Workers' Compensation Insurance in accordance with the requirements of the laws of the State of New York. Evidence of Workers' Compensation on the New York form must be provided on the New York State approved form and is not acceptable on the Accord form. The Contractor shall also carry Disability Insurance and provide evidence thereof on the New York State approved form. Certificates of insurance evidencing such coverages shall be submitted by the Contractor and must name the City of Buffalo as certificate holder.

#### ii.)   *Commercial General Liability:*

With respect to all work the Contractor performs, the Contractor shall carry Commercial General Liability insurance providing for a total limit of not less than two million dollars ($2,000,000) per occurrence for each job site or location for all damages arising out of bodily injury, personal injury, property damage, products/completed operations, and contractual liability coverage for the indemnification provided under this contract. Each annual aggregate limit shall not be less than three million dollars ($3,000,000). A certificate of insurance evidencing such coverage shall be submitted by the Contractor and must name the City of Buffalo as both additional insured and certificate holder. The City of Buffalo shall also be named as both additional insured and certificate holder under Contractor's Excess and Umbrella policies, if any.

#### iii.)   *Commercial Automobile Liability:*

With respect to any owned, non-owned, or hired vehicles the Contractor shall carry Automobile Liability insurance providing not less than one million dollars ($1,000,000) per accident for bodily injury and property damage. A certificate of insurance evidencing such coverage shall be submitted by the Contractor and must name the City of Buffalo as both additional insured and certificate holder.

#### iv.)   *Aggregate Limits:*

Any aggregate limits must be declared to and approved by the City. It is agreed that the Contractor shall notify the City when fifty percent (50%) of the aggregate limits are eroded during the contract term. If the aggregate limit is eroded for the full limit, the Contractor agrees to reinstate or purchase additional limits to meet the minimum limit requirements stated herein. The premium shall be paid for by the Contractor. All deductibles or self-insured retentions are the sole responsibility of the Contractor to pay and/or to indemnify.

#### v.)   *Asbestos/Pollution Liability:*

Notwithstanding the foregoing, in the event that the Contractor's work involves asbestos containing materials and/or other potentially harmful materials, the City shall have the right to require that the Contractor provide evidence of pollution liability insurance in the amount of not less than one million dollars ($1,000,000.00). Such amount may be adjustable upward in the sole discretion of the City depending upon the scope and nature of the work to be performed.

**NOTICE OF CANCELLATION OR NONRENEWAL:** Each insurance policy required shall be endorsed to state that coverage shall not be suspended, voided, cancelled, or reduced in coverage or in limits except after 30 days prior written notice by certified mail, return receipt requested, has been given to the City.

**ASSIGNMENT AND SUBCONTRACTING:** No Contractor awarded a Contract pursuant to bid shall assign or subcontract any part of such Contract to any person, firm or corporation by whom a bid was submitted to the City for the same contract. In any event, no Contractor shall assign, transfer or otherwise dispose of this Contract, or any part thereof, or any right, title or interest thereunder, without the prior written consent of the Commissioner of Permits & Inspection Services. Any such purported action without such consent shall be null and void.

**"REFUSAL" TO TESTIFY, GROUNDS FOR CANCELLATION, DISQUALIFICATION:** Upon refusal by the Contractor or if the Contractor is a firm, partnership or corporation upon refusal of a person who is a member, partner, officer or director thereof, or upon a member, partner, officer or director, when called before a Grand Jury to testify concerning any transaction or contract had with the State, any political subdivision thereof, a public authority or with any public department, agency or official of the State or any other political subdivision thereof or of a public authority, to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such transaction or contract, the Contractor, such other person, and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified after such refusal from selling to or submitting bids to or receiving awards from or entering into any contracts with the City for goods, work or services for a period of five (5) years and this agreement at the option of the City may be canceled or terminated without incurring any penalty or damages on account of such cancellation or termination, provided, however, that any monies owing hereunder for goods delivered or work done prior to such cancellation or termination shall be paid.

**LAWS AND ORDINANCES:** In the performance of this work the Contractor shall be governed by all the Laws of the State of New York and the Ordinances of the City of Buffalo, now in force, or which may hereafter be adopted, applicable to this work.

**WAGE RATES:** The Contractor shall pay to all employees engaged on this work the prevailing rate of wages as established by the Comptroller of the City of Buffalo and he shall so certify on the invoice-voucher requesting payment.

**AFFIRMATIVE ACTION:** The Contractor shall comply with the Executive Order #11246 and 311375 as amended. This Equal Employment Opportunity Clause shall be part of this contract. Contractor also acknowledges receipt of a copy of this law.

**FORM 2A – AFFIRMATIVE ACTION STATEMENT**

The _Empire Dismantlement Corp._
(Company Name)

hereby states that Contractor will make good faith efforts to ensure a diverse workforce and minority

business participation for this bid/bid in accordance with the City of Buffalo Charter, Chapter 96,

Bonds and Contracts.

Contractor will work toward a minority workforce goal of 25%, and woman workforce goal of 5%. In

addition, Contractor will work toward a business utilization goal for minority business enterprise of

25% and woman business enterprise of 5%.

(Signature of Authorized representative of Bidder)

Date _9/25/2019_

BIDS/BIDS FAILING TO INCLUDE OR COMPLETE ANY OF THE ABOVE ITEMS WILL BE
CONSIDERED NON-RESPONSIVE AND WILL NOT BE ACCEPTED.

EEO-2

Revised, August 2015

 CITY OF BUFFALO

```
10/01/2019 09:54    |CITY OF BUFFALO                          |P        1
pmix-rush           |G/L ACCOUNT - MASTER INQUIRY             |glacting
```

```
Org code:      36552006  EMERG DEMOLITIONS 19          Type:      E
Object code:   445100    GENERAL CONTRACTING           Status:    A
Project code:                                          Budgetary: Y

   Fund          3022    2019 BOND SALE
   Department    65      PERMIT & INSPECTION SERVICES
   Div/Function  3652    EMERG DEMOLITIONS 19
   Location      0000    NOT ASSIGNED
   Major Object  6       SERVICES
   Site Coding   00      NOT ASSIGNED
   Future Use    0       NOT ASSIGNED
   GAAP          65      ECONOMIC ASSIST & OPPORTUNITY

Full description:  EMERG DEMOLITIONS 19        Short desc: GENL CONTR
Reference Acct:                                Auto-encumber? (Y/N)  N
```

```
            --------- CURRENT YEAR MONTHLY AMOUNTS ----------
PER         ACTUAL      ENCUMBRANCE       BUD TRANSFER         BUDGET
00            .00        18,361.01              .00             .00
01      16,296.01        99,403.99              .00      995,168.45
02      72,965.00        49,085.00              .00             .00
03     122,900.00       -38,078.00              .00             .00
04            .00              .00              .00             .00
05            .00              .00              .00             .00
06            .00              .00              .00             .00
07            .00              .00              .00             .00
08            .00              .00              .00             .00
09            .00              .00              .00             .00
10            .00              .00              .00             .00
11            .00              .00              .00             .00
12            .00              .00              .00             .00
13            .00              .00              .00             .00
Tot:   212,161.01       128,772.00              .00      995,168.45
```

```
            --------- CURRENT YEAR TOTAL AMOUNTS -----------
Actual (Memo)        212,161.01  Original Budget               .00
Encumbrances         128,772.00  Budget Tranfr In              .00
Requisitions          47,326.00  Budget Tranfr Out             .00
   Total             388,259.01  Carry Fwd Budget              .00
Available Budget     606,909.44  Carry Fwd Bud Tfr             .00
Percent Used               .00   Revised Budget                .00

Inceptn to SOY             .00   Inceptn Orig Bud       995,168.45
                                 Inceptn Revsd Bud      995,168.45

Encumb-Last Yr             .00   REQUEST                       .00
Actual-Last Yr       18,361.01   MAYOR REC                     .00
Estim-Actual        995,168.45   COUNCIL                       .00
                           .00   MAYOR REV                     .00
                                 ADOPTED                       .00
```

# BUFFALO POLICE
## Complaint List

Report Date: 6/15/2020

Date Range: -

| Complaint | Date | Call Type | Disposition(s) | Address |
|---|---|---|---|---|
| 08-2781066 | 10/04/2008 22:21:16 | TRAFFIC STOP | 1. Closed by Dispatch | 393 HAMPSHIRE ST (B1) Priority: 7 |
| 09-1630649 | 06/12/2009 16:13:39 | FAMILY DISPUTE | 1. Merged Record - See Remarks | 393 HAMPSHIRE ST BUF (B1) Priority: 3 |
| 14-1770216 | 06/26/2014 08:46:42 | TRESPASSING | 1. Advised | 393 HAMPSHIRE ST BUF (B1) Priority: 3 |
| 15-1250101 | 05/05/2015 07:11:49 | TRESPASSING | 1. Checked OK | 393 HAMPSHIRE ST BUF (B1) Priority: 3 |
| 16-1751066 | 06/23/2016 21:59:10 | TRESPASSING | 1. Radio Log | 393 HAMPSHIRE ST (B1) Priority: 3 |
| 17-1390199 | 05/19/2017 07:49:25 | SUSPICIOUS INCIDENT | 1. Checked OK | 393 HAMPSHIRE ST (B1) Priority: 3 |
| 17-1390366 | 05/19/2017 10:50:19 | MISCELLANEOUS | 1. Mayor's Impact Team Notifd | 393 HAMPSHIRE ST (B1) Priority: 5 |
| 18-1340536 | 05/14/2018 15:35:38 | JUVENILE TROUBLE | 1. Gone on Arrival | 393 HAMPSHIRE ST BUF (B1) Priority: 3 |
| 18-2101088 | 07/29/2018 22:56:13 | TRAFFIC STOP | 1. Radio Log | 393 HAMPSHIRE ST (B1) Priority: 7 |
| 18-2390022 | 08/27/2018 00:45:13 | MISCELLANEOUS | 1. Closed by Dispatch | 393 HAMPSHIRE ST (B1) Priority: 5 |
| 19-0960744 | 04/06/2019 19:07:49 | HIT/RUN PROPERTY DAM ONLY | 1. MV/10A STATE ACCIDENT RPT | 393 HAMPSHIRE ST BUF (B1) Priority: 5 |
| 19-1630396 | 06/12/2019 12:38:41 | NARCOTICS | 1. Gone on Arrival | 393 HAMPSHIRE ST BUF (B1) Priority: 4P |
| 19-1900220 | 07/09/2019 09:21:37 | MISCELLANEOUS | 1. Checked OK | 393 HAMPSHIRE ST (B1) Priority: 5 |

Total Complaints:13

1



## BUFFALO PD
## POLICE REPORT
## CRIMINAL TRESPASS

*Complaint*
# 17-0830578
Report Date & Time
03/24/2017 16:37

### INCIDENT

| Address of Occurrence | | District | Tract | Occ. Date & Time | Day of Week | | Type of Premise |
|---|---|---|---|---|---|---|---|
| 393 HAMPSHIRE ST | | 'B' | | 03/24/2017 16:37 | Friday | | Single Family Home |

| Status | | Follow Up By | Supl | TT Mess# | TT Entry Date | TT Cancel# | TT Cancel Date |
|---|---|---|---|---|---|---|---|
| Cleared By Arrest | | | N | | | | |

| Officers: P2735 - TEDESCO | P3452 - SERCU | Rep. Off.: P2735 - TEDESCO |
|---|---|---|
| P2372 - ACQUINO | D641 - QUINTANA | Supervisor: |

### OFFENDER - 1

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| ZELEE | JUNIOR | | | | Black | M | 16 | N | Y | PR |

| Address | | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|---|
| | | BUFFALO | NY | 14213 | | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos |
|---|---|---|---|---|---|---|---|
| 5'05" | 130 | BRO | BRO | S | DBR | | |

Victim DID receive Information on Victim's Rights and Services pursuant to New York State Law    Yes/No

### OFFENDER - 2

| Last Name | First Name | MI | Ext | Birth Date | Race | Sex | Age | Juvenile | Arrested | Report |
|---|---|---|---|---|---|---|---|---|---|---|
| MOHAMED | MOHAMED | A | | | Black | M | 16 | N | Y | PR |

| Address | | City | State | Zip | Home Phone | Work Phone |
|---|---|---|---|---|---|---|
| | | BUFFALO | NY | 14206 | | |

| Height | Weight | Hair | Eyes | Build | Complexion | Glasses | Scars/Marks/Tattoos |
|---|---|---|---|---|---|---|---|
| 5'04" | 130 | BLK | BRO | S | | | |

Victim DID receive Information on Victim's Rights and Services pursuant to New York State Law    Yes/No

### OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 195.05 | M | A | 2 | OBSTRUCT GOVERNMENTL ADMIN 2ND | PR |
| PL | 140.10-0A | M | B | 3 | CRIM TRESAPSS 3RD - ENCLSD PROP | PR |

### ARREST - 1

| Arrest # | Name | Date | Address |
|---|---|---|---|
| 225910 | ZELEE, JUNIOR | 03-24-2017 | GRANT BUFFALO |

| Status | Arrest Type | Arresting Officers |
|---|---|---|
| Held | Crime in Progress | ACQUINO,JOSEPH B -TEDESCO,JUSTIN P - 172780 |

| Law | Section | CA | CL | DG | Description | Counts |
|---|---|---|---|---|---|---|
| PL | 195.05 | M | A | 2 | OBSTRUCT GOVERNMENTL ADMIN 2ND | 1 |
| PL | 140.10-0A | M | B | 3 | CRIM TRESAPSS 3RD - ENCLSD PROP | 1 |

### ARREST - 2

| Arrest # | Name | Date | Address |
|---|---|---|---|
| 225911 | MOHAMED, MOHAMED | 03-24-2017 | PARKDALE BUFFALO |

| Status | Arrest Type | Arresting Officers |
|---|---|---|
| Held | Crime in Progress | ACQUINO,JOSEPH B -TEDESCO,JUSTIN P - 172780 |

| Law | Section | CA | CL | DG | Description | Counts |
|---|---|---|---|---|---|---|
| PL | 140.10-0A | M | B | 3 | CRIM TRESAPSS 3RD - ENCLSD PROP | 1 |
| PL | 195.05 | M | A | 2 | OBSTRUCT GOVERNMENTL ADMIN 2ND | 1 |

### NARRATIVE

POLICE REPORT    Date Entered: 03/27/2017 16:10    Type:    Office: ACQUINO,JOSEPH B

THE DEFENDANTS DID TRESPASS AT 393 HAMPSHIRE AND DID FLEE FROM THE OFFICERS AFTER BEING COMMANDED TO STOP.

Printed Date:    06/15/2020 05:10 PM

Page: 1



| | **BUFFALO PD**<br>**POLICE REPORT**<br>**NARCOTICS** | *Complaint*<br>**13-3430501** |
|---|---|---|
| | | Report Date & Time<br>12/09/2013 15:31 |

### INCIDENT

| Address of Occurrence<br>393 HAMPSHIRE ST | District<br>'B' | Tract<br>BU | Occ. Date & Time<br>12/09/2013 15:31 | Day of Week<br>Monday | Type of Premise |
|---|---|---|---|---|---|

| Status<br>Cleared By Arrest | Follow Up By | Supl<br>N | TT Mess# | TT Entry Date | TT Cancel# | TT Cancel Date |
|---|---|---|---|---|---|---|

| Officers: | Rep. Off.: |
|---|---|
| | Supervisor: |

### OFFENDER

| Last Name<br>CATALDO | First Name<br>KAYLA | MI<br>L | Ext | Birth Date | Race<br>White | Sex<br>F | Age<br>24 | Juvenile<br>N | Arrested<br>N | Report<br>PR |
|---|---|---|---|---|---|---|---|---|---|---|

| Address | City<br>BUFFALO | State<br>NY | Zip<br>14216 | Home Phone | Work Phone |
|---|---|---|---|---|---|

| Height<br>5' 07" | Weight<br>152 | Hair<br>BLN | Eyes<br>GRN | Build<br>M | Complexion<br>LGT | Glasses | Scars/Marks/Tattoos |
|---|---|---|---|---|---|---|---|

Victim DID receive information on Victim's Rights and Services pursuant to New York State Law    Yes/No

### OFFENSES

| Law | Section | CA | CL | DG | Description | Report |
|---|---|---|---|---|---|---|
| PL | 221.10-02 | M | B | 5 | CRIM POSSESSION MARIHUANA 5TH: WEIGHT MORE THAN 25 GRAMS | PR |

### ARREST

| Arrest #    Name | Date | Address |
|---|---|---|
| 181915    CATALDO, KAYLA L | 12-09-2013 | 393 HAMPSHIRE ST BUFFALO |

| Status<br>Appearance Tick:Crime in Progress | Arrest Type | Arresting Officers |
|---|---|---|

| Law | Section | CA | CL | DG | Description | Counts |
|---|---|---|---|---|---|---|
| PL | 221.10-02 | M | B | 5 | CRIM POSSESSION MARIHUANA 5TH: WEIGHT MORE THAN 25 GRAMS | 1 |

### NARRATIVE

| Officer: · | Supervisor: · |
|---|---|

| Printed Date:    06/15/2020 05:10 PM | Page: 1 |
|---|---|

THE STATE OF NEW YORK
BUFFALO CITY COURT
50 DELAWARE AVENUE
BUFFALO, NEW YORK  14202

- - - - - - - - - - - - - - - - - -

CITY OF BUFFALO,                          Docket #CR-10921019

    -vs-

MAX LEVIN,

        Defendant.                    October 21, 2019

- - - - - - - - - - - - - - - - - -


BEFORE HONORABLE PATRICK M. CARNEY



APPEARANCES:           RASHIED H. McDUFFIE, ESQ.
                       Appearing for the People

                       GEORGE A. BERBARY, ESQ.
                       Appearing for the defendant


PRESENT:               KEVIN COYNE




TRANSCRIPTION SERVICE:   Kathleen S. Hume
                         46 Deerwood Drive
                         Williamsville, New York  14221
                         (716) 688-1280


    Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

1          (Proceedings commencing at 10:40 A.M.)

2          CLERK:  And these were scheduled for November

3     16th, which is a Saturday, anyway.  Vodka Properties,

4     City, 7641 of `18, 103 Thompson, 10921 of `19, 393

5     Hampshire, Vodka, and City for 118 Orange, 8263 of `19.

6     We're scheduled for a Saturday, anyway so you can give a

7     new date, anyway.

8          THE COURT:  I scheduled them for a Saturday?

9          CLERK:  Yeah, November 16th is a Saturday.

10         THE COURT:  Why would I do that?

11         MR. BERBARY:  I can speak on Thompson.

12    Everything, I am told, is done except for C of O and

13    they're stating that the City is attempting to have him

14    comply with the C of O regulations that were in effect

15    some time ago and that the new regulations do not

16    require drywalling and partitioning the basement, which

17    is what they're asking for.  And he can't afford to do

18    it.  But if you apply the current regulations, he would

19    be granted the C of O.  I don't know because I'm not

20    familiar with the regulations, but that's what the

21    property manager is telling me.

22         THE COURT:  Hampshire is already gone.

23         MR. BERBARY:  Hampshire's gone.

24         THE COURT:  Orange Street is what?

25         MR. BERBARY:  Orange Street, I've talked to

1   Tracy.  The commissioner was concerned about it.  Tracy

2   said he told the commissioner to hold off on demo.  They

3   are in the process right now of putting in new furnaces

4   over there.  I told him you gotta do something on the

5   exterior, also.  I believe it's across from a school, so

6   he's -- they're going to do something on the exterior,

7   also.  But he should be available to fully rehab it

8   early next year.

9                   THE COURT:  What do we do with this?

10                  MALE:  Well, Thompson -- or excuse me, not

11  Thompson.

12                  THE COURT:  Do we have any other Vodka

13  Property cases --

14                  MR. BERBARY:  These are it, I believe.

15                  MALE:  (Inaudible.)  The Orange Street, well,

16  it needs -- there's definitely something --

17                  THE COURT:  What federal penitentiary is this

18  guy in right now?

19                  MR. BERBARY:  I think it's out in Ohio,

20  perhaps.  I don't know.  I don't communicate with him.

21  I deal with a property manager.

22                  THE COURT:  All right.  When do you want me to

23  put these in for?

24                  MALE:  If we could maybe put them into March.

25  As far as the (inaudible) regulations, I would have to

10/21/19                                          4
City of Buffalo vs. Max Levin

1    look into that personally.

2            THE COURT:  All right.  March 12th in the

3    morning.

4            MR. BERBARY:  Thank you, Your Honor.

5            MALE:  But obviously Mr. Berbary knows the

6    process in order to (inaudible) further demolition.

7            MR. BERBARY:  Yeah.  I'll speak to him about

8    it, speak to my client.  Thank you, Your Honor.

9            (Proceedings concluded at 10:43 A.M.)

10                    * * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE


I, Kathleen S. Hume, certify that the foregoing

transcript of proceedings in the Buffalo City Court,

State of New York, in the matter of:


City of Buffalo vs. Max Levin

Docket #CR-10921-19


was prepared using the required transcription equipment

and is a true and accurate record of the proceedings.


*Kathleen S. Hume*
Kathleen S. Hume
46 Deerwood Drive
Williamsville, New York   14221
Date:   March 30, 2020

THE STATE OF NEW YORK
BUFFALO CITY COURT
50 DELAWARE AVENUE
BUFFALO, NEW YORK  14202

- - - - - - - - - - - - - - - - - - -

CITY OF BUFFALO,                        Docket #CR-10921-19

    -vs-

MAX LEVIN,

       Defendant.                       March 12, 2020

- - - - - - - - - - - - - - - - - - -

BEFORE HONORABLE PATRICK M. CARNEY

APPEARANCES:            RASHIED H. McDUFFIE, ESQ.
                        Appearing for the People

                        GEORGE A. BERBARY, ESQ.
                        Appearing for the defendant

PRESENT:                KEVIN COYNE

TRANSCRIPTION SERVICE:    Kathleen S. Hume
                          46 Deerwood Drive
                          Williamsville, New York  14221
                          (716) 688-1280

   Proceedings recorded by electronic sound recording.
Transcript produced by transcription service.

3/12/20
City of Buffalo vs. Max Levin

2

1                 (Proceedings commencing at 10:11 A.M.)

2                     CLERK:  City, Vodka Properties, 8263-19, 118

3         Orange, City, 393 Hampshire, 10921 of `19, and 7641 of

4         `18, 103 Thompson.

5                     MR. BERBARY:  Good morning, Your Honor.

6         George Berbary for Vodka.

7                     THE COURT:  Okay.  In the as the Vodka turns

8         world, what?

9                     MR. BERBARY:  The owner is getting up to speed

10        at this point.

11                    THE COURT:  Is he getting up to speed?  He's

12        in a federal penitentiary.

13                    MR. BERBARY:  No, he's out.  He's out.

14                    THE COURT:  He's out?

15                    MR. BERBARY:  He's in --

16                    THE COURT:  I didn't even get invited to the

17        release party?

18                    MR. BERBARY:  He was in a halfway house in

19        Rochester.

20                    THE COURT:  Oh, my God.  I am -- so

21        disappointing.  He's in a halfway house?

22                    MR. BERBARY:  He was.  He could be around now

23        with an ankle monitor.  I'm not sure, but I have talked

24        to him.

25                    MALE:  So Hampshire, Judge, we're seeking a

1    retainer agreement for the demo.  I think that may be a

2    larger issue.

3              THE COURT:  Okay.  Thompson is pretty much

4    gone except for the C of O?

5              MALE:  Well, they disagree.  I'd like Mr.

6    Levin to meet with the inspector out there.

7              MR. BERBARY:  Yeah, I will have him do that,

8    Your Honor.  He had some idea that it was as is

9    grandfathered in, but now that --

10             THE COURT:  Oh, you mean the fire separation

11   laws?

12             MR. BERBARY:  Yeah.  Now that he's out I'll

13   have him meet with the inspector.

14             THE COURT:  Okay.

15             MR. BERBARY:  With regard to Hampshire, you

16   know, this was a commissioner demo, as you know.  You

17   did not order it.  And if you look at these violations,

18   none of them rise to the level of the fact the property

19   should have been demoed, but that's neither here nor

20   there.  I did contact Charlene Thompson and she sent me

21   some paperwork which I forwarded to my client, but

22   that --

23             THE COURT:  My only concern would be whether

24   the violations existed and whether --

25             MR. BERBARY:  I know.

3/12/20                          4
City of Buffalo vs. Max Levin

1           THE COURT:  -- in my judgment it would be

2     proper, above and beyond whether the City's judgment --

3           MR. BERBARY:  I know.

4           THE COURT:  -- is proper for the demolition of

5     it.

6           MR. BERBARY:  Right.

7           THE COURT:  Your issue here is going to be

8     with whether or not the City negated your ability to

9     repair the violations --

10           MR. BERBARY:  Right.

11           THE COURT:  -- in a timely fashion which would

12     only concern sentencing.

13           MR. BERBARY:  Right.

14           THE COURT:  So if you want to enter a plea of

15     guilty, I will --

16           MR. BERBARY:  Well, obviously they existed at

17     the time it was written.

18           THE COURT:  I'll hear all your concerns at a

19     sentencing hearing.

20           MR. BERBARY:  I will plead him guilty.

21           THE COURT:  Okay.  So we'll just proceed on

22     that to a sentencing hearing and probably just put the

23     baby somewhere.  Orange Street.  That's the only one I'm

24     not hearing anything about.

25           MALE:  Orange is -- there was an awful lot of

1    demolition, Your Honor.  Mr. Coyne might be able to

2    speak to it more than me.  He was there recently.  They

3    are attempting to work on it, but I believe it is

4    lacking plans and permits.

5              MR. BERBARY:  Right.  And again --

6              THE COURT:  Vodka is lacking plans and

7    permits?

8              MR. BERBARY:  -- he was held up --

9              MALE:  I was as shocked as anybody, Judge.

10             MR. BERBARY:  He was held up due to his

11   incarceration.  I do know the manager had -- did secure

12   the place, but --

13             THE COURT:  Yeah, I think they were doing some

14   interior demolition --

15             MR. BERBARY:  Right, and I think he's --

16             THE COURT:  -- that they never --

17             MR. BERBARY:  -- planning --

18             THE COURT:  -- acquired permits for.

19             MR. BERBARY:  -- on again starting --

20             THE COURT:  So is everybody comfortable with

21   August to see if we can figure this all out?

22             MALE:  Yeah, I would recommend demolition on

23   this building, Your Honor.  It's --

24             THE COURT:  On Orange Street?

25             MALE:  Yeah.  There's no floors in the back

3/12/20
City of Buffalo vs. Max Levin

6

1       section.  It's structurally unsound.

2               MR. BERBARY:  Well, again, he intends to

3       submit plans on that --

4               THE COURT:  That's a whole new twist which

5       I --

6               MR. BERBARY:  He feels that it's, you know,

7       valuable property.

8               THE COURT:  George, I think that's going to

9       move us into May.

10              MR. BERBARY:  Okay.

11              THE COURT:  Which gives you two months to get

12      plans, permits or have me tear it down.

13              MR. BERBARY:  Okay.

14              THE COURT:  One of the two.  May 21st in the

15      morning and we will schedule that for all of them.

16              MR. BERBARY:  For all three?

17              THE COURT:  Yeah.

18              MR. BERBARY:  Okay.  Thank you.

19              THE COURT:  We will proceed with the

20      sentencing.  So we do know that the nature and purpose

21      of the demolition will be an issue at sentencing, so I

22      expect to have some information.

23              (Proceedings concluded at 10:15 A.M.)

24              *  *  *  *  *  *  *

25

3/12/20                                    7
City of Buffalo vs. Max Levin


CERTIFICATE


I, Kathleen S. Hume, certify that the foregoing

transcript of proceedings in the Buffalo City Court,

State of New York, in the matter of:


City of Buffalo vs. Max Levin

Docket #CR-10921-19


was prepared using the required transcription equipment

and is a true and accurate record of the proceedings.


*Kathleen S. Hume*
Kathleen S. Hume
46 Deerwood Drive
Williamsville, New York  14221
Date:  March 30, 2020

MICHAEL P. KEARNS, ERIE COUNTY CLERK
REF:

DATE:8/17/2018
TIME:12:41:02 PM
RECEIPT: 18148848

WILLIAM J. MILLER ESQ.
ACCOUNT #: 9574

ITEM - 01  744
RECD: 8/17/2018 12:45:31 PM
FILE: 2018164673  BK/PG D 11333/3049
CITY OF BUFFALO
BELLA DEVELOPMENT LLC                    50.50
   Recording Fees        50.50
Subtotal

ITEM - 02  703
RECD: 8/17/2018 12:45:31 PM
FILE: 2018164674  BK/PG D 11333/3051
WOODS CHARLES                            50.00
   Recording Fees        50.00
Subtotal

ITEM - 03  DEED
RECD: 8/17/2018 12:45:31 PM
FILE: 2018164675  BK/PG D 11333/3053
Deed Sequence: TT2018001286
WOODS CHARLES
VODKA PROPERTIES LLC            55.00
   Recording Fees           9.00
   RP5217 CNTY $9         116.00
   RP5217  ST-RES $116     10.00
   TP584
   TRANSFER                 0.00
   MANSION TT              40.00
   TT-STATE $2/500         50.00
   TT-COUNTY $2.50/500
Subtotal           280.00

ITEM - 04 SERVICE                        49.50
   DEBIT ESCROW

Subtotal           49.50

TOTAL DUE            $430.00
PAID TOTAL           $430.00
PAID CHECK           $430.00
Check #5117:          180.00
Check #313651:        250.00
------------------------------
REC BY: David RB
~~~~~ RECORDER

Warranty Deed with Lien Covenant
Re: 393 Hampshire Street, Buffalo, NY

Record & Return To:

## THIS INDENTURE is made the 17th day of August, 2018

**BETWEEN**    **CHARLES WOODS,**
14 Richlawn Avenue, Buffalo, NY 14215

Grantor,

and

AUG 17 2018

ERIE COUNTY
CLERK'S OFFICE    **VODKA PROPERTIES, LLC,** a limited liability company organized
under the Laws of the State of New York, and having its place of business at 441
North Rockingham, in the Town of Amherst, County of Erie, and State of New
York,

Grantee,

*WITNESSETH,* that the said Grantors, in consideration of One and More Dollars, ($1.00 and more) lawful money of the United States, paid by the Grantee, does hereby grant and release unto the Grantee, her heirs, successors and assigns forever:

ALL THAT CERTAIN PIECE OR PARCEL OF REAL PROPERTY, situate in the City of Buffalo, County of Erie and State of New York, being the southeast corner of Hampshire and 18th Streets, commonly known as 393 Hampshire Street, and being bounded and described as follows:

BEGINNING at a point in the southeasterly line of Hampshire Street where the northeasterly line of Eighteenth Street intersects to the said southeasterly along the said northeasterly parallel with said southeasterly line of Hampshire Street 30 feet; thence northwesterly parallel with said northeasterly line of 18th Street, 90 feet to said southerly line of Hampshire Street, and thence southwesterly along said southeasterly line of Hampshire Street, 30 feet to the point or place of beginning.    See Schedule A

*SUBJECT TO* easements and restrictions of record, if any.

*SUBJECT TO* rights of others in and to that portion of the above described premises lying within.

*TOGETHER* with the appurtenances and all the estate and rights of the Grantors in and to the said premises.

*TO HAVE AND TO HOLD,* the above granted premises unto the said Grantees.

*AND*    the said Grantors do covenant with said Grantees as follows:
*FIRST*:    That the Grantees shall quietly enjoy the said premises.
*SECOND*:    That the Grantors will forever WARRANT the title to said premises.
*THIRD*:    Subject to the trust fund provisions of Section Thirteen of the Lien Law.

*IN WITNESS WHEREOF,* the said Grantors have hereunto set her hand and seal the day and year first above written.

*IN PRESENCE OF*:

_Charles Woods_    (L.S.)
CHARLES WOODS

STATE OF NEW YORK
COUNTY OF ERIE

Charles Woods

On the 17 day of July in the year 2018, before me, the undersigned, a notary public in and for said state, personally appeared James and Sheryl Andreozzi personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_William J Miller_
Notary Public

WILLIAM J MILLER
Notary Public, State of New York
No. 02MI6359945
Qualified in Erie County
Commission Expires June 12, 20__

Commitment No. 18-2565

### SCHEDULE A
### LEGAL DESCRIPTION

ALL THAT TRACT OR PARCEL OF LAND, situate in the City of Buffalo, County of Erie and State of New York, being the southeast corner of Hampshire and 18th Streets, commonly known as 393 Hampshire Street, and being bounded and described as follows:

BEGINNING at a point in the southeasterly line of Hampshire Street where the northeasterly line of Eighteenth Street intersects to the said southeasterly line of Hampshire Street and running thence southeasterly along the said northeasterly line of 18th Street, 90 feet; thence northeasterly parallel with said southeasterly line of Hampshire Street 30 feet; thence northwesterly parallel with said northeasterly line of 18th Street, 90 feet to said southerly line of Hampshire Street, and thence southwesterly along said southeasterly line of Hampshire Street, 30 feet to the point or place of beginning.

kb

Premises commonly known as 393 Hampshire Street, Buffalo, NY

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

RESIDENTIAL CONTRACT (Revised 03/15/18)    © 2018 by Buffalo Niagara Association of REALTORS®, Inc ("BNAR")
*Prior versions are obsolete.*    © 2018 by Bar Association of Erie County ("BAEC")

**Modifications of this form must be clearly shown.**

*This Contract is recommended for the sale of improved or unimproved residential real estate. If used for new construction or commercial real estate, appropriate modification is required.*



CAUTION: *This Contract contains an Attorney Approval Contingency. Read Paragraph ATC1 carefully.*
CAUTION: *Substituting pages of a signed Contract could result in an unenforceable Contract or a Fraud Claim.*

# CONTRACT

Date: _____05/11/2018_____ ("Contract Date")

1. **PARTIES.** The parties are as follows (individually a "Party" and collectively the "Parties"):
   **(A) Seller:**    Charles Woods
   ("Seller")
   Address:    14    Richlawn Ave    Buffalo, NY    14215    *(Property address if blank)*

   **(B) Purchaser:**    Vodka propeties LLC
   ("Purchaser")
   Address:    441 N Rockingham    Amherst    NY    14228

2. **AGREEMENT.** Seller shall sell and Purchaser shall purchase the items described in Paragraphs 3(A) through 3(D) ("Property") and the items described in Paragraph 3(E)(1) - (5) as being included ("Included Items") on the terms stated in this contract, including Paragraphs ATC1 through ATC14 of the attached BAEC/BNAR approved Additional Terms and Conditions (Rev. 03/15/18) ("ATC"), as well as the Riders and attachments referenced in Paragraphs 3(B) and 16 which all Parties have signed and/or initialed (including all changes) as applicable ("Contract"). This Contract uses defined terms shown as an initial capitalized word(s), initially in quotes and parentheses or as defined in Paragraph ATC13. Unless otherwise indicated, all paragraph references are to paragraphs of this Contract. References to paragraph numbers which are preceded by letters refer to the corresponding riders listed in Paragraph 16. All defined terms and paragraph references used in this Contract shall have such meanings throughout, and in all modifications of, this Contract.

3. **PROPERTY.**
   **(A) Address.** No. & Street: ___393    Hampshire Street_____ Zip Code: __14213__
   County of _____Erie_____ ("County"), Town/City of _____Buffalo_____, Village of: __NA__, NY.
   Tax Map Identifier (Section-Block-Lot Number) ____140200-099-350-0009-001-000____
   **(B) Additional Description.**
   ☐ Per attached map/survey map  ☐ Per attached legal description  ☐ Approximate Lot Size: ____30x90____
   ☐ Includes interest in a homeowners' association: See *Condominium/Homeowners' Association Rider*
   ☐ Condominium Unit: See *Condominium/Homeowners' Association Rider*
   **(C) Current Uses/Improvements:** ☒ _1_ Family dwelling  ☐ with ____ car garage
   ☐ Vacant Land: See *Vacant Land Rider.*  ☐ Additional uses/improvements (specify): _____
   **(D) Land and Other Items.** Unless excluded in Paragraph 3(E), the following items are included:
   (1) All land; trees; buildings; improvements; oil, gas and mineral rights; and rights appurtenant to the land.
   (2) All fixtures and property attached or appurtenant to the land, buildings and improvements including: all heating, air conditioning (except window units), plumbing (including septic systems, well pumps, water pumps, sump pumps, water filtration systems and water softeners), electrical and mechanical systems (including hard wired electricity generators); plumbing fixtures; lighting fixtures (including bulbs) and landscaping (except free standing planters); matching kitchen islands; storm windows, storm doors, screens and awnings; exterior T.V. antennas and satellite dishes; garage door openers; weather vanes; window boxes; mail boxes; utility sheds; fences; underground electric pet fencing and equipment; flag poles; in-ground or garage mounted basketball backboards and poles; gas operated post-type outdoor grills; in-ground and above-ground pools and related equipment; wood-burning stoves, oil and gas fired space heaters, fireplaces, fireplace inserts, screens (including free-standing screens), grates and glass enclosures; wall to wall carpeting and attached runners; linoleum; garbage disposals; ceiling fans, exhaust fans and hoods; security systems; intercom systems; central

393 Hampshire Street    Buffalo    NY    14213
NY

Purchaser Initials

**Instanet**FORMS

Authentisign ID: E40DA988-3420-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

vacuuming systems (including all hoses and attachments); smoke detectors; carbon monoxide detectors; mirrors; window shades, curtain rods and traverse rods; all styles of window and door blinds; cabinet and wall-mounted appliances; all transferable trash and recycling containers provided by a municipality or service company; and all motors, transmitters, receivers, controls, system operation keys, remote units and all component parts.

    (3)  If presently on the Property and unless free-standing, all cabinets, shelving, dishwashers, refrigerators, ovens, cooktops, ranges, microwave ovens, trash compactors, humidifiers, dehumidifiers and air filtration systems.

    (4)  Seller's rights in and to public and private streets, highways, alleys, driveways, easements and rights of way.

    (5)  Seller's rights to receive all future rents and royalties due under any lease, agreement or tenancy.

(E) **Included and Excluded Items.** The following items are included or excluded as follows: *("Excluded" if blank)*

    (1)  Hot tub(s)/spa(s) and related equipment are . . . . . . . . . . . . . . . . . . . . . . . □ Included; □ Excluded; ☒ N/A

    (2)  Outdoor play set(s) are . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Included; □ Excluded; ☒ N/A

    (3)  Speakers (recessed, wall mounted and outdoor) and speaker wiring are . . □ Included; □ Excluded; ☒ N/A

    (4)  The following items are included: all appliances set forth in Paragraph RPR1._____

_____

which are included with no increase in the Purchase Price and which nevertheless must be left:

□  (a)  in substantially the same condition as of the date of the Property Inspection (as defined in Paragraph 9) or if none is conducted, as of the Contract Date, subject to the obligations in Paragraph 5 ("As-is"); or

□  (b)  in the condition existing at Closing (as defined in Paragraph 4(C)) *("(a)" if blank).*

    (5)  Unless specifically included in Paragraph 3(E), Paragraph 20 or a rider or addendum to this Contract, the following items are excluded: furniture; household furnishings; televisions, including brackets; and also _____

4.  **PURCHASE PRICE.** The purchase price ("Purchase Price"), payable in U.S. Dollars as follows, is  $_____9,900.00

  (A)  **Seller's Concession.** At Closing, Seller shall credit to Purchaser the sum of *("0" if blank)*

    ("Seller's Concession") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

  (B)  **Deposit.** The following deposit ("Deposit"), payable to and held in escrow by

        **Hunt Real Estate**  ("Escrow Agent") at  **M&T Bank**  ("Bank")  $_____5,000.00

□  (1)  When Purchaser signs this Contract;

☒  (2)  Within 2 Business Days (as defined in Paragraph ATC13(C)) following:

    □  (a)  The Effective Date (as defined in Paragraph ATC13(D)).

    □  (b)  Satisfaction or waiver of the Attorney Approval Contingency (as defined in Paragraph ATC1).

    □  (c)  Satisfaction or waiver of the Property Inspection Contingency (as defined in Paragraph 9(A)(1)) or the Investigation Contingency (as defined in Paragraph VLR4(B)).

    ☒  (d)  The later of (b) and (c).

The Deposit and any additional deposit paid pursuant to this Contract, if applicable (collectively "Deposits"), shall be deposited by Escrow Agent with the Bank within 5 Business Days following receipt. Escrow Agent will promptly notify Seller's attorney if any Deposits are not received on time. In the event any of the Deposits are not received by Escrow Agent within 3 Business Days after payment is due, Seller may cancel this Contract at any time prior to Escrow Agent's receipt of whichever of the Deposits was past due.

  (C)  **Adjusted Balance.** Upon delivery of the deed ("Closing"), the Purchase Price less (i) the Seller's Concession, *and* (ii) the Deposits, subject to closing adjustments and credits as provided in this Contract ("Adjusted Balance").

5.  **CONDITION OF PROPERTY AND INCLUDED ITEMS.**

  (A)  Except as otherwise provided in this Contract, until Closing, Seller shall, at Seller's expense:

    (1)  maintain the Property and Included Items in substantially the same condition as of the date of the Property Inspection, if any, or if no Property Inspection is conducted, as of the Contract Date;

    (2)  perform ordinary lawn and landscape maintenance and snow removal; *and*

    (3)  maintain all utilities in service that are required for the operation of the heating, air conditioning, plumbing, security and electric systems.

  (B)  Except as provided in the Property Condition Disclosure Statement provided by Seller before Purchaser signed this Contract ("PCDS") and in Paragraphs 5(A), 5(C), 6, 8, 13, ATC4 and, if applicable, ADR1, LBPR4 and VLR2, Seller makes no representations, warranties or disclosures as to the condition of the Property and Included Items.

  (C)  Subject to (i) any rights of Purchaser under Paragraphs 9, 12(D) and LBPR5(B), (ii) Seller's obligations under Paragraphs 5(A), 5(D), 12 and 13, and (iii) Seller's obligation to complete all repairs agreed to in writing, Purchaser shall accept the Property in substantially the same condition (a) as of the date of the Property Inspection, if any, or if no Property Inspection is conducted, as of the Contract Date, and (b) as disclosed in the PCDS, if any, and shall accept the Included Items as set forth in Paragraph 3(E)(4).

393 Hampshire Street        Buffalo   NY   14213

Authentisign ID: E40DA9B8-342D-419F-B4O5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

(D)  The Property shall be in "broom clean" condition and free of debris on the date of Closing.

6.  SELLER'S DISCLOSURES.  Seller makes the following disclosures to the best of Seller's knowledge:

☒ Yes  ☐ No    (A)  **Title.** Seller has title to the Property, subject to the provisions of Paragraph ATC5, and Seller owns the Included Items.

☐ Yes  ☒ No    (B)  **Agricultural District.** The Property is located partially or wholly within an agricultural district. If "Yes", see *Agricultural District Rider.*

☐ Yes  ☒ No    (C)  **Utility Surcharge.** The Property is subject to a utility (e.g. gas, electricity, water) surcharge. If "Yes": Type/Purpose: _____
Amount:_____ Payable (i.e. monthly, yearly): _____

☐ Yes  ☒ No    (D)  **Water Well.** The Property has a private water well and/or other non-public water supply.

☒ Yes  ☐ No    (E)  **Public Water.** The Property is connected to a public water supply.

☐ Yes  ☒ No    (F)  **Septic System. (1)** The Property has a private septic system approved for _____ bedrooms.
(2) If yes, the dwelling(s) on the Property: *(Answer all.)*

☐ Yes  ☐ No        (a) will have been continuously occupied prior to the inspection to obtain a Certificate/Approval (as defined in Paragraph 12(B)) for the private septic system ("Septic Inspection"); *or*
(b) will have been vacant for less than 90 days immediately prior to the Septic Inspection *and*

☐ Yes  ☐ No            (i) is serviced by metered water

☐ Yes  ☐ No            (ii) the County Health Dept. has a record of the current private septic system.

☐ Yes  ☐ No        (c) will have been vacant for more than 90 days immediately prior to the Septic Inspection.

☒ Yes  ☐ No    (G)  **Public Sewers.** The Property is connected to public sanitary sewers.

☐ Yes  ☒ No    (H)  **Heating Oil/Propane.** The Property is serviced by heating oil and/or propane.

☐ Yes  ☒ No    (I)  **Gas and Oil Wells.** The Property has an uncapped natural gas and/or oil well, even if inactive.

☐ Yes  ☒ No    (J)  **Oil/ Gas/Mineral Leases.** Seller has received, is receiving or is entitled to receive rents, royalties or other payments and/or free gas under any oil or gas or mineral lease affecting the Property.

☐ Yes  ☒ No    (K)  **Flood Zone.** The Property is currently located in a special flood hazard zone.
Note: If Yes, flood insurance will likely be required by an institutional lender.

☐ Yes  ☒ No    (L)  **Radon.** The Property has been tested for radon.

☐ Yes  ☒ No    (M)  **Special Tax/Preservation District.** The Property is located in a Special Tax District and/or Preservation District, namely:_____

☐ Yes  ☒ No    (N)  **Tax Exemption. (1)** The Property tax bill(s) reflect(s) a tax exemption (e.g. STAR, veteran's).
(2) If yes, Seller is entitled to the exemption on the most recent tax bills.

☐ Yes  ☒ No    (O)  **Special Tax Assessments.** The Property is subject to assessments for special or local improvements (e.g. sidewalks, water/sewer lines)("Special Tax Assessments").

(P)  **Vehicular Access.** Vehicular access to the Property is currently by way of:

☒ Yes  ☐ No        (1)  a contiguous municipal road right of way.

☐ Yes  ☒ No        (2)  a contiguous, shared private road right of way of record.

☐ Yes  ☒ No    (Q)  **Shared Driveway.** The Property is serviced by a shared driveway.

☐ Yes  ☒ No    (R)  **Court Orders.** Seller is currently subject to a court order that prohibits the sale or transfer of the Property without the consent of another person or further court order.

☐ Yes  ☒ No    (S)  **Bankruptcy.** Seller is currently in bankruptcy.

☐ Yes  ☒ No    (T)  **Foreclosure.** The Property is currently the subject of a foreclosure proceeding or a mortgage encumbering the Property that is in arrears in excess of 60 days.

☒ Yes  ☐ No    (U)  **Sufficient Funds.** Including the proceeds from the sale of the Property, Seller has sufficient funds to close this transaction and pay all of Seller's closing costs and expenses.

☒ Yes  ☐ No    (V)  **Code Violations.** Notice from a governmental authority has been issued advising that the Property and/or Current Uses/Improvements (as defined in Paragraph 12(A)) violate applicable building codes and/or zoning ordinances, any of which violations continue as of the Contract Date.

☐ Yes  ☒ No    (W)  **FIRPTA Certification.** Seller is a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as defined in the Internal Revenue Code and IRS Regulations).

7.  CLOSING FUNDS.
(A)  **Purchaser's Representations.** Purchaser represents that except for the proceeds of any financing selected in Paragraph 10 or as otherwise accepted by Purchaser and any Seller's Concession:

393 Hampshire Street          Buffalo    NY    14213

InstanetFORMS

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CD038F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

        **(1)** Purchaser is, and until Closing will be, in *actual possession* of sufficient money in U.S.
             dollars *on deposit* with a federally insured bank, trust company, savings and loan
             association or credit union ("Financial Institution") to close this transaction. . . . . . . . . .   ☒ Yes ☐ No
        **(2)** In order to close this transaction, Purchaser does, or Purchaser's lender may, require:
            **(a)** the closing of the sale of any other real estate or the discharge of any mortgage
               for which Purchaser is liable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes ☒ No
            **(b)** the receipt of a gift of funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ☐ Yes ☒ No
   **(B) Sale Contingency.** This Contract is contingent upon the sale of other real estate as
      provided in the *Sale Contingency Rider* ("Sale Contingency") . . . . . . . . . . . . . . . . . . . .   ☐ Yes ☒ No
   **(C) Closing Contingency.** This Contract is contingent upon the closing of the sale of Purchaser's
      real estate located at _____ ("Purchaser's Property").   ☐ Yes ☒ No
      If yes, either Party may cancel this Contract after any material breach, termination or cancellation of the contract for
      Purchaser's Property or upon proof that the closing of the sale of Purchaser's Property has not occurred within 10
      Business Days after the Contract Closing Date (as defined in Paragraph 14(A)). Purchaser shall notify Seller within
      3 Business Days after any material breach, termination or cancellation of the contract for Purchaser's Property.

**8. LEAD-BASED PAINT DISCLOSURE.** Seller represents that: *Choose either (A) or (B) below.*
   ☒  **(A) Pre-1978 Construction.** The dwelling(s) on the Property was/were or may have been built prior to 1978. A
        *Lead Based Paint Rider must* be attached to this Contract.
   ☐  **(B) Post-1977 Construction.** The dwelling(s) on the Property was/were built in 1978 or later.

**9. INSPECTION OF PROPERTY AND INCLUDED ITEMS.** *Choose either (A) or (B) below. ("(A)" if blank).*

| *vp* | | | *CAUTION: New York law requires that any paid property inspector be properly licensed by the State. The use of a non-licensed inspector or election not to have a property inspection conducted shall be at Purchaser's own risk.* |
|---|---|---|---|
| Purchaser Initials | | | |

   ☐  **(A) Property Inspection to be conducted.**
        **(1) The Inspection.** Purchaser shall have the right to have the Property and Included Items inspected and/or
           tested by inspector(s) chosen and paid for by Purchaser ("Property Inspection") *and* any notice of
           unsatisfactory results pursuant to Paragraph 9(A)(4) shall be completed within _____ *("7" if blank)* days
           following the later of (i) satisfaction or waiver of the Attorney Approval Contingency, or (ii) if all applicable
           utilities are not in service on the Effective Date, the date Purchaser or Purchaser's attorney receives a
           notice given by Seller that all applicable utilities are in service ("Inspection Period"). The scope of the
           Property Inspection shall be determined by Purchaser, but shall not, without the consent of Seller, result
           in damage to the Property or Included Items. Seller will cooperate with Purchaser's reasonable requests,
           but need not consent to any damage to the Property or Included Items. The results of the Property
           Inspection must be satisfactory to Purchaser ("Property Inspection Contingency").
        **(2) Radon Notice.** Radon is a colorless, odorless, tasteless gas that can seep into homes through cracks
           and openings in a home's foundation. Inhalation of radon gas is associated with increased risk of lung
           cancer. Testing for the presence of radon in residential real estate prior to purchase is advisable.
        **(3) Radon Test.** The Property Inspection will include a radon test *("Yes" if blank).* . . . . . ☐ Yes ☐ No
        **(4) Notice of Results and Right to Cancel Contract.** If the results of the Property inspection are not
           satisfactory to Purchaser for any reason whatsoever, *and if notice of the unsatisfactory results of the*
           *Property Inspection is received by Seller or Seller's attorney on or before the expiration of the*
           *Inspection Period,* either Party may cancel this Contract. The results need not be disclosed. If the notice
           under this Paragraph 9(A)(4) is not timely received by Seller or Seller's attorney, the Property Inspection
           Contingency is deemed waived by Purchaser.
   ☒  **(B) No Property Inspection.** Except for the Final Inspection (as defined in Paragraph ATC7), Purchaser elects
        not to have a Property Inspection conducted. This election shall not be deemed to waive or expand any other
        rights Purchaser may have under this Contract or at law.

**10. FINANCING.** *Choose all that apply below ("(A)" if blank).*
   ☒  **(A) No Financing.** Purchaser will close this transaction without financing.
   ☐  **(B) New Loan(s).**
        **(1) Application.** Purchaser shall promptly and in good faith, but in no case later than _____ *("5" if*
           *blank)* days after satisfaction or waiver of the Attorney Approval Contingency, Property Inspection

393 Hampshire Street        Buffalo    NY  14213

Seller Initials

Purchaser Initials

InstanetFORMS

AuthentiSign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

Contingency, Lead-Based Paint Inspection Contingency (as defined in Paragraph LBPR5(B)), Sale Contingency and Investigation Contingency, if applicable, make application for and diligently and in good faith pursue and accept a Loan Commitment (as defined in Paragraph 10(B)(3)) for one or more of the following loans *(NOTE: More than one loan type may be selected, but Purchaser need not apply for all loan types selected)* ("Loan"):

☐ **(a)** **First Loan:**

    **(i)** **Loan Amount** is not to exceed ☐ $_____; or ☐ _____% of the Purchase Price, plus any financed Private Mortgage Insurance, Mortgage Insurance Premium or VA Funding Fee ("Loan Amount").

    **(ii)** **Loan Type** is: ☐ Conventional  ☐ FHA  ☐ VA *(See FHA/VA Option Clause)*  ☐ SONYMA; ☐ Other: _____ *("Conventional" if all blank)*.

    **(iii)** **Loan Term** is: ☐ 30 year; ☐ 20 year; ☐ 15 year; ☐ _____ year *("30 year" if all blank)*.

    **(iv)** **Interest Rate** is: (Reference to "prevailing" rate is not permissible)
      ☐ a fixed rate not to exceed _____ % per year for a fixed rate loan, or;
      ☐ an initial interest rate not to exceed _____ % for an adjustable rate loan.

    **(v)** **Loan Discount Fees** are not to exceed _____ *("0" if blank)* % of the Loan Amount.

☐ **(b)** **Second Loan/Grant** is a _____ year ☐ *Fixed Rate* ☐ *Adjustable Rate* loan/grant in an amount not to exceed ☐ $_____; or ☐ _____% of the Purchase Price with an interest rate (initial or fixed) not to exceed _____ %.

**(2)** **Interest Rate Protection.** Provided Purchaser complies with the provisions of Paragraph 10(B)(1), Purchaser may cancel this Contract if, at the time of loan application, Purchaser is not able to lock in at interest rates and loan discount fees at or below the rates and fees set forth in Paragraph 10(B)(1). If an interest rate is not set forth in Paragraph 10(B)(1) or, if Purchaser elects not to lock in an interest rate at the time of application (i.e. to "float"), Purchaser shall be obligated to accept a Loan Commitment for the applicable loan at any available interest rate with any required loan discount fees. Purchaser must lock in an interest rate no later than 10 days before the Contract Closing Date.

**(3)** **Commitment.** The written approval of Purchaser's application for a loan must have commitment and interest rate expiration dates after the Contract Closing Date *and must not be conditioned upon:* initial underwriting approval by the lender, verification of credit, receipt of an appraisal, payment of debt (other than mortgage(s) encumbering Purchaser's Property if Paragraph 7(A)(2)(a) is answered "Yes"), verification of funds or initial verification of employment ("Loan Commitment"). Purchaser shall deliver to Seller's attorney a *complete* copy of the Loan Commitment and notice of its acceptance by Purchaser within 3 Business Days after Purchaser's acceptance of a Loan Commitment. If a Loan Commitment within the terms set forth in Paragraphs 10(B)(1) through 10(B)(2) is not issued to and accepted by Purchaser by (choose either (a) or (b) below *("(b)" if both (a) and (b) blank)*)

    **(a)** ☐ _____ *[insert date]; or*

    **(b)** ☐ _____ *("45" if blank)* days after the later of (1) the Effective Date; or (2) satisfaction or waiver of the latest of any applicable (i) Sale Contingency, (ii) Investigation Contingency, (iii) Property Inspection Contingency, or (iv) _____

    ("Loan Commitment Due Date"), either Party may cancel this Contract at any time prior to Purchaser's acceptance of a Loan Commitment on terms the same as or different than those set forth in Paragraphs 10(B)(1) through 10(B)(2). Either Party may cancel this Contract if a Loan Commitment is granted but later cancelled without fault on the part of Purchaser. Purchaser shall promptly notify Seller of any Loan Commitment cancellation.

**(4)** **Cooperation.**

    **(a)** Seller shall promptly and in good faith cooperate with reasonable requests by Purchaser's lender(s) to provide access to the Property and Included Items and to execute documents which, except for the FHA/VA Option Clause, do not modify the terms of this Contract.

    **(b)** Purchaser hereby authorizes and agrees to execute any documents required to authorize Purchaser's lender(s) to deliver a complete copy of each Loan Commitment, without any account numbers shown, to Seller's attorney and the Brokers (as defined in Paragraph 19).

    **(c)** Prior to Closing, Purchaser shall not intentionally do anything to adversely affect Purchaser's qualification for the Loan (by way of example only, incur any significant additional debt or voluntarily change employment that will result in a disqualification for the Loan.)

☐ **(C)** **Loan Assumption.** A loan is being assumed (See *Loan Assumption Rider*).

☐ **(D)** **Seller Financing.** Seller is holding a purchase money mortgage (See *Seller Financing Rider*).

**11.** **STATUS OF TITLE.** Purchaser will accept title to the Property and Included Items subject to the encumbrances set forth in Paragraph ATC5 and: _____ *("Nothing further" if blank)*.

393 Hampshire Street          Buffalo    NY   14213

InstanetFORMS

Authentisign ID: E40DA9B8-342D-419F-B4D5-20E31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

12. **IMPROVEMENTS.**

    (A) **Intended Uses and Improvements.** *CAUTION: This Property may have easements, rights of way and restrictions which may affect intended uses of or improvements to the Property. Purchaser acquires the Property subject to these encumbrances unless intended uses or improvements, different from the current uses and improvements as set forth in Paragraph 3(C) ("Current Uses/Improvements"), are listed below.* Purchaser intends to use the Property for a ☒ one ☐ two ☐ three ☐ four -family dwelling or ☐ other _____ ("Intended Uses").

        (1) Purchaser intends to make the following specific improvements on or modifications to the Property or make the following specific use of the Property (for example, erection of fence, swimming pool or garage, parking of recreational vehicles): _____ ("Intended Improvements").

        (2) If any Intended Uses or Intended Improvements, different from the Current Uses/Improvements, are listed in subparagraphs (1) and/or (2) above, within 10 Business Days after the Effective Date, Seller will provide Purchaser with a copy of Seller's existing survey map and of all restrictions, easements and rights of way affecting the Property as is or should be disclosed in the Search and/or Survey. If Purchaser finds that any restriction, easement or right of way is inconsistent with any of the above-stated Intended Uses or Intended Improvements, then Purchaser may cancel this Contract within 7 Business Days after receipt of (i) a copy of Seller's existing survey map or, if not available, the Survey, and (ii) a copy of all restrictions, easements and rights of way required to be provided by Seller under this Paragraph 12(A)(2).

    (B) **Certificates/Approvals.** Seller shall obtain certificates/approvals valid through the date of Closing issued by appropriate governmental authorities evidencing compliance with all applicable laws, ordinances, regulations and codes relating to the Current Uses/Improvements and as disclosed in this Contract (excluding the Intended Uses and Intended Improvements which are different from the Current Uses/Improvements) as required by the appropriate governmental authorities for the transfer of the Property (for example: certificate of occupancy, sump pump certificate and approvals of non-public sewage disposal and water supply) ("Certificates/Approvals"). However, Seller shall have no obligation to supply a certificate of occupancy or certificate of compliance for occupancy of the Property if the Property has been occupied solely as a one or two family dwelling.

    (C) **Order and Delivery.**

        (1) **Order.** Certificates/Approvals not already in Seller's possession shall be ordered, all applicable testing and inspections shall be requested, and all applicable application fees shall be paid by Seller no later than 7 Business Days after the later of (i) the Effective Date, and (ii) the satisfaction or waiver of the Attorney Approval Contingency, Property Inspection Contingency, Lead-Based Paint Inspection Contingency, Sale Contingency and Investigation Contingency, if applicable. Any additional fees shall be paid promptly by Seller.

        (2) **Delivery.** Seller shall deliver to Purchaser's attorney a copy of all Certificates/Approvals at least 5 Business Days prior to the Contract Closing Date, except if delayed pursuant to Paragraph 12(D). The originals of all Certificates/Approvals obtained shall be delivered to Purchaser at Closing.

    (D) **Objections.** If Purchaser gives Seller notice of valid objection to the legal status or legal use of any of the structures or other improvements located on the Property ("Condition Defects"), or if Seller receives notification from the applicable governmental authority that there is any problem which needs to be corrected before any one or more of the Certificates/Approvals can be obtained ("Corrective Faults"), Seller shall, at Seller's sole expense, correct the Condition Defects and Corrective Faults, and have all necessary governmental inspections completed, prior to the Contract Closing Date. However, Seller may, within 10 Business Days following receipt by Seller or Seller's attorney of a notice of Condition Defects, a notice that Corrective Faults must be corrected, and/or a notice that an inspection cannot be conducted due to weather conditions, governmental delays or governmental policies, notify Purchaser that Seller will not (i) correct the Condition Defects and/or Corrective Faults, and/or (ii) obtain one or more Certificates/Approvals (a "Non-Correction Notice") provided Seller has timely complied with Seller's obligations under Paragraph 12(C)(1), if applicable. If, within 10 Business Days following receipt by Purchaser or Purchaser's attorney of a Non-Correction Notice, Purchaser does not elect to accept the Property and Included Items subject to the Condition Defects and Corrective Faults and without Certificates/Approvals which cannot be obtained, either Party may cancel this Contract. Nothing in this Paragraph 12 is intended to affect the rights of Seller or Purchaser under General Obligations Law Section 5-1311, or as otherwise provided under this Contract.

13. **KEYS.** At Closing, unless the Parties have made other prior satisfactory arrangements, Seller shall deliver to Purchaser all keys, security and access codes, and remote control openers (which must be in working order) for the Property, except as follows: _____ *("no exclusions" if blank).*

14. **CLOSING.**

    (A) **Closing Date.** Closing shall be at the County Clerk's Office on the date set forth below or, if that date is not a Business Day, on the next Business Day. **("(2)" if both (1) and (2) blank).** Time is not of the essence.

        ☒ (1) _____05/21/2018_____ *[insert date],* or

        ☐ (2) ____ *("60" if blank)* days after the later of (a) the Effective Date; or (b) satisfaction or waiver of the latest

393 Hampshire Street        Buffalo  NY  14213

InstanetFORMS

AuthentiSign ID: E40DA9B6-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

of any applicable (i) Sale Contingency, (ii) Investigation Contingency, (iii) Property Inspection Contingency, or (iv)_____ (the "Contract Closing Date"), or at such other time and place as the Parties mutually agree.

(B) **Time of Essence Notice.** Either Party (the "Declaring Party") may, at any time after the Contract Closing Date, notify the other Party that time is of the essence, which notice shall set a specific time for Closing on a Business Day that is on or after the 7th Business Day following receipt of the notice by the other Party or the other Party's attorney, provided (i) the Declaring Party has completed each obligation required of the Declaring Party by this Contract to be completed prior to Closing (a "Pre-Closing Obligation"), (ii) the number of days specified in this Contract for the completion of a Pre-Closing Obligation prior to Closing, if applicable, has or will have elapsed following actual completion of the Pre-Closing Obligation, (iii) the number of days available under this Contract to the other Party following the completion of a Pre-Closing Obligation, if applicable, has or will have elapsed following actual completion of the Pre-Closing Obligation, and (iv) the contingencies in this Contract for the benefit of the Declaring Party have been satisfied or waived, or, absent a default by the other Party, will or could be satisfied at Closing.

15. **TAXES, ADJUSTMENTS AND CREDITS.**

(A) **Special Tax Assessments.** Purchaser will accept title to the Property subject to, and will pay, all Special Tax Assessments that may be payable in installments not yet due and payable as of Closing. Any Special Tax Assessment payable in installments may be so paid on the installment due date at the election of Seller.

(B) **Water Charges and Delinquent Taxes.** Seller shall pay all water charges until Closing and all prior fiscal years' taxes and tax assessments, including interest and penalties.

(C) **Items To Be Adjusted.** There shall be prorated and adjusted, as of 12:00 midnight prior to the date of Closing: rents; royalties; propane; fuel oil; mortgage interest for assumed mortgages; all current fiscal years' taxes, assessments and installments of amounts appearing on current tax bills computed on a fiscal year basis; Special Tax Assessments; flat rate water charges; sewer charges; user fees; license and/or registration fees; and the following items:_____. For adjustment purposes, all rents and royalties due as of the date of adjustment will be considered paid to Seller. If Closing occurs before a new tax rate is fixed, the apportionment of taxes shall be made on the basis of the most recent tax rate applied to the latest assessed valuation and the provisions of Paragraph 15(E) shall not apply.

(D) **Items To Be Credited.** There shall be assigned and/or credited to the appropriate Party at Closing: security deposits and any accrued interest thereon; assumed mortgage escrows; the principal balance of and any accrued interest on any assumed mortgage; the principal balance of and any interim interest on any mortgage held by Seller; all penalties and interest on current fiscal years' taxes, assessments and Special Tax Assessments due as of Closing; increases in taxes due to an exemption termination, removal or revocation for the period from the date of the loss of the exemption to the date of Closing; any meter purchase fees; and any other credits provided for in this Contract.

(E) **Post Closing Adjustment.** Any errors and/or omissions in the Closing computations of adjustments, credits and/or taxes, including any increases due to an exemption, termination or removal, which exceed $100.00 in the aggregate, shall be corrected upon discovery and paid within a reasonable period of time following a demand for payment.

(F) **Loans.** All loans which appear on any tax and/or utility bill(s) shall be paid in full by Seller prior to or at Closing.

16. **RIDERS AND ATTACHMENTS.** This Contract includes the following Riders and attachments marked below:
☒ *Lead-Based Paint Rider ("LBPR")*    ☐ *Rented Property Rider ("RPR")*    ☐ *Sale Contingency Rider ("SCR")*
☐ *Vacant Land Rider ("VLR")*    ☐ *Loan Assumption Rider ("LAR")*    ☐ *Seller Financing Rider ("SFR")*
☐ *Condominium/Homeowners' Association Rider ("CHAR")*    ☒ *Property Condition Disclosure Statement ("PCDS")*
☐ *FHA/VA Option Clause*    ☐ *Agricultural Disclosure Rider ("ADR")*
☐ Other: _____    *("None" if blank)*

17. **SIGNATURES.** This Contract shall not become binding unless all Parties sign it, initial it (where appropriate) and deliver it so that it is received by all Parties or their respective attorneys no later than 5:00 p.m. on _____. *(If blank, this paragraph is not applicable).*

18. **ATTACHMENT OF ADDITIONAL TERMS AND CONDITIONS.**

(A) **Receipt and Release.** By initialing this page, the Parties acknowledge having received and reviewed the attached ATC. *This Contract shall be void if all Parties do not acknowledge below that they received the ATC.*

(B) **Changes.** Changes ☐ have ☒ have not *("have not" if blank)* been made to the ATC. If "have not", any changes made to the ATC other than in Paragraphs 1 through 20 or in any Rider or Addendum shall be ineffective.

393 Hampshire Street        Buffalo    NY    14213

Page 7 of 13

AuthentiSign ID: E400A9B8-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

19.  BROKERS.  The brokers listed below (individually a "Broker" and collectively the "Brokers") are:

| LISTING REAL ESTATE BROKER | | | SELLING REAL ESTATE BROKER | | |
|---|---|---|---|---|---|
| Hunt Real Estate ERA | Ethan Grant | 10401285600 | Queen City Realty Group LLC | Michael M Algawani | 10491200612 |
| Broker | Agent | Lic. # | Broker | Agent | Lic. # |
| 720 Elmwood Avenue | Buffalo NY 14222 | | 295 Main Street Suite 123 | Buffalo NY 14203 | |
| Address | | | Address | | |
| 716-883-2200  716-883-0936 | 39H01164328 | | 716-923-7407  866-461-5179 | 10991202467 | |
| Office Phone/Fax | Brokerage Lic. # | | Office Phone/Fax | Brokerage Lic. # | |
| 716-935-0848 | ethan.grant@huntrealestate.com | | | michael@callQueenCityRealty.com | |
| Other Phone | E-mail | | Other Phone | E-mail | |

20.  OTHER TERMS.  *(If blank, this paragraph is not applicable.)*  In the event of a conflict between the provisions of this paragraph and the provisions of any other paragraph of this Contract, the provisions of this paragraph shall control.

CAUTION:  *Any Property Condition Disclosure Statement provided by Seller must be delivered to Purchaser and a copy attached to this Contract before Purchaser signs this Contract.*

| | | |
|---|---|---|
| _Charles Woods_ | _5-13-18_ | 05/11/2018 |
| Seller Charles Woods | Date | Vedha Properties LLC |
| | | Purchaser Purchaser |
| Seller | Date | |
| | | Purchaser |
| Seller | Date | |
| | | Purchaser |
| Seller | Date | |

Signature of authorized agent of Escrow Agent          Date
Name of authorized agent: Hunt Real Estate

Deposit received:  ☐ Yes  ☐ No
[Must be signed even if Deposit has not been received.]

**SELLER'S ATTORNEY**

Firm: Bill Miller Law          Attorney: Bill Miller

Address: 1234 Delaware Ave

Telephone: 716 310 8733          Fax: 716 884 2146

E-mail address: bill@billmiller.law.com

393 Hampshire Street

**PURCHASER'S ATTORNEY**

Attorney: George Bethay

Firm:

Address:

Telephone:          Fax:

E-mail address: gbarbay@gmail.com

Buffalo NY 14213

InstanetFORMS

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

# ADDITIONAL TERMS AND CONDITIONS

ATC1.  **ATTORNEY APPROVAL CONTINGENCY.** *CAUTION: The deletion or modification of Paragraph ATC1(A) or Paragraph ATC1(B), unless such modification extends the Attorney Approval Period or Addendum Approval Period, shall result in the automatic withdrawal of any bar association approval of this form.*

    (A)  *Contract Approval.* This Contract is contingent upon its approval by the Parties' respective attorneys ("Attorney Approval Contingency") within 3 Business Days following receipt by each Party's attorney of a complete copy of the Contract ("Approval Period"). Within 2 Business Days following the Effective Date, the Parties shall cause a complete copy of this Contract to be delivered to their respective attorneys if one has not already been delivered. In any event, the Approval Period shall commence no later than 2 Business Days following the Effective Date. If either Party's attorney disapproves this Contract before the end of the Approval Period, this Contract is deemed cancelled. The reason for the disapproval need not be disclosed. If either Party's attorney conditionally approves this Contract before the end of the Approval Period, either Party may cancel this Contract at any time prior to unconditional approval of this Contract by the attorneys for both Parties. If there is no disapproval, conditional approval or approval of this Contract by an attorney on behalf of a Party by the end of the Approval Period, this Attorney Approval Contingency is deemed waived by that Party. Disapproval, conditional approval or approval must be in writing and must be received by the attorney representing the other Party, if known, or if not known, the other Party, before the expiration of the Approval Period.

    (B)  **Addendum Approval.** Any modification to this Contract which all Parties have signed and/or initialed (including all changes) as applicable ("Addendum") is contingent upon its approval by the Parties' respective attorneys ("Addendum Attorney Approval Contingency") within 3 Business Days following receipt by each Party's attorney of a complete copy of the Addendum ("Addendum Approval Period"). Within 2 Business Days following receipt of a duplicate or copy of the Addendum by both Parties or their respective attorneys (the "Addendum Effective Date"), the Parties shall cause a complete copy of the Addendum to be delivered to their respective attorneys, if one has not already been delivered. In any event, the Addendum Approval Period shall commence no later than 2 Business Days following the Addendum Effective Date. If either Party's attorney disapproves the Addendum before the end of the Addendum Approval Period, the Addendum is deemed cancelled (the reason for disapproval need not be disclosed), but this Contract shall remain in full force and effect, except (i) if either Party's attorney conditionally approves or disapproves an Addendum incorporating changes to this Contract upon which either Party's attorney's approval was conditioned, the attorney's conditional approval shall not be deemed satisfied or waived by the execution of the Addendum by all Parties; and (ii) if either Party's attorney disapproves a Property Inspection Notice and Addendum ("PINA") in which either PINA2(C) or PINA2(D) is selected, either Party may cancel this Contract. If, following unconditional approval of this Contract pursuant to ATC1(A), either Party's attorney conditionally approves an Addendum before the end of the Addendum Approval Period, either Party may cancel the Addendum at any time prior to unconditional approval of the Addendum by the attorneys for both Parties, but this Contract shall remain in full force and effect. If there is no disapproval, conditional approval or approval of the Addendum by an attorney on behalf of a Party by the end of the Addendum Approval Period, the Addendum Approval Contingency is deemed waived by that Party. Disapproval, conditional approval or approval must be in writing and must be received by the attorney representing the other Party, if known, or if not known, the other Party, before the expiration of the Addendum Approval Period.

ATC2.  **SEARCH AND SURVEY.**

    (A)  **Search.** Seller shall provide a tax and title search which covers the Property only, fully guaranteed by a title insurance corporation licensed under Article 64 of the Insurance Law ("Search"). Unless the standards adopted by the bar association applicable for the Property locality ("Bar Association") provide otherwise, the first set-out of the Search shall be the first recorded source of title in the County Clerk's Office or a deed to an apparent owner recorded prior to 1920. The last continuation of the Search shall be dated after the Contract Date. If the description certified to in the Search contains references to boundary or other prior instruments, the Search shall show, for information purposes, the descriptions contained in the instruments. Seller shall also provide local tax certificates where not covered by the Search.

    (B)  **Survey.** Seller shall provide a survey map of the Property prepared according to the Bar Association standards or, if none, BAEC standards, from a survey of the Property performed after the Contract Date by a professional who is licensed or otherwise authorized under the New York Education Law to practice land surveying ("Survey"). If the Survey includes a certification or statement indicating for whom it was prepared the Survey must, at Seller's expense, be certified to Purchaser, Purchaser's lender(s), Purchaser's attorney and the title insurance agent(s) and company(ies) providing any title insurance in connection with this transaction.

    (C)  **Order and Delivery.** Seller shall order the Search and Survey within 5 Business Days after the satisfaction or waiver of the Attorney Approval Contingency, Property Inspection Contingency, Lead-Based Paint Inspection Contingency, Sale Contingency and Investigation Contingency, if applicable. Seller shall deliver the Search,

Instanet

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Residential Contract (Rev. 03/15/18)

local tax certificates and the Survey to Purchaser's attorney not less than 15 Business Days before the Contract Closing Date.

**(D) Return on Cancellation.** In the event this Contract is cancelled pursuant to any of its terms, Purchaser shall have the Search and Survey returned to Seller or Seller's attorney within 7 Business Days after receipt of a notice of cancellation.

**ATC3.** **COSTS.** Except as otherwise provided, in addition to the costs set forth elsewhere in this Contract, (i) Seller shall pay for the Search to the date of Closing and for the Survey, transfer tax, filing fee for transfer tax forms, recording fees for any documentation required to cure any Title Defects (as defined in Paragraph ATC5(B)), the special additional mortgage tax, all costs to be paid to the County Clerk to enable the deeds, in excess of one, to be recorded, any estimated New York State income tax due at Closing, and any additional transfer tax imposed under Tax Law Section 1402-a if Purchaser is exempt from paying such tax; and (ii) Purchaser shall pay the mortgage tax, fees for recording deed and mortgage(s), filing fee for Real Property Transfer Report, fee for certification of the Survey (if requested by Purchaser or Purchaser's attorney), mortgage holder's assumption and release of liability fees, any additional transfer tax imposed under Tax Law Section 1402-a, unless Purchaser is exempt from paying such tax, and, except as otherwise provided in this Contract, all fees, costs and other charges imposed or required by Purchaser's lender.

**ATC4.** **RIGHT TO FARM DISCLOSURE.** It is or may be the policy of the County to conserve, protect and encourage the development and improvement of agricultural land for the production of food and other products, and also for its natural and ecological value. This disclosure notice is to inform prospective residents that farming activities occur within the County. Such farming activities may include, but not be limited to, activities that cause noise, dust, fumes, odors, smoke, insects, operation of machinery during any hour of the day or evening, storage and disposal of plant and animal waste products, and the application of fertilizers, soil amendments, and pesticides by ground or aerial spraying or other method. Property owners and residents of the County should be aware that farmers have the right to undertake generally accepted practices and one should expect such conditions as a normal and necessary aspect of living in an agricultural area.

**ATC5.** **STATUS OF TITLE.**

**(A) Quality of Title.** At Closing, Seller shall convey to Purchaser good and marketable title to the Property and Included Items in fee simple, free and clear of all liens and encumbrances, except as stated in this Contract. Purchaser will accept title to the Property subject to (i) restrictions of record, provided they do not conflict with the Current Uses/Improvements, Intended Uses or Intended Improvements and have not been violated, unless their enforcement is barred by law; (ii) easements and rights-of-way of record for water lines, sanitary sewer lines, drainage, gas pipelines, electrical lines, media and communication lines, provided they are or may be used to service the Property and provided the Current Uses/Improvements, Intended Uses or Intended Improvements are not or will not be within the easements or rights-of-way areas; and (iii) the encumbrances itemized in Paragraph 11, if any.

**(B) Title Objections.** Purchaser's attorney shall notify Seller's attorney of all defects, liens and encumbrances to Seller's title to the Property to which Purchaser objects and which Purchaser is not required to accept under this Contract ("Title Defects"). Seller shall in good faith attempt to cure the Title Defects. Seller shall have the later of (i) 10 Business Days after Seller's attorney receives notice of the Title Defects, or (ii) the Contract Closing Date in which to cure the Title Defects. Purchaser shall accept title to the Property once the Title Defects are cured. If Seller cannot cure the Title Defects within the time period set forth above, but either Party can obtain an owner's title insurance policy reasonably and adequately insuring the uncured Title Defects in the amount of the Purchase Price naming Purchaser as insured, including all endorsements necessary to cover the Title Defects, a market value rider (if available) and a covenant by the issuing company to reissue the policy containing the same affirmative coverages ("Owner's Policy"), at standard rates and at no additional cost or obligation to Purchaser, then Purchaser shall accept the Owner's Policy and title to the Property. Seller shall in good faith comply with all reasonable requests of the title insurer to enable it to insure over the Title Defects, including all requirements relating to Title Defects occurring or arising during Seller's ownership of the Property.

**(C) Title Insurance.** Purchaser's attorney shall order any title insurance policy and any required endorsement insuring Purchaser's lender ("Loan Policy"). If an Owner's Policy is required under Paragraph ATC5(B), the Owner's Policy shall be issued by the company chosen by Seller's attorney, provided the premium for the Owner's Policy without a simultaneous Loan Policy is not greater than that for which Seller is responsible under Paragraph ATC5(D). Otherwise, the Owner's Policy shall be issued by the company issuing the Loan Policy, if available. If no Loan Policy is required or if an Owner's Policy is not available from the company issuing the Loan Policy, the Owner's Policy shall be issued by (i) the company chosen by Seller's attorney, or (ii) the company chosen by Purchaser's attorney if Seller's attorney does not obtain the Owner's Policy.

**(D) Title Insurance Premiums.** If Seller is required to provide an Owner's Policy under Paragraph ATC5(B) or CHAR3(B)(1)(a), if applicable, and if no Loan Policy is required or obtained, or if the Owner's Policy is not available from the company issuing the Loan Policy, Seller shall pay the premium for the Owner's Policy at the full standard rate. If a Loan Policy is required or obtained and if an Owner's Policy is required and is available

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD30F4

from the company issuing the Loan Policy, Purchaser shall pay the full premium for the Loan Policy, and Seller shall pay an amount equal to the combined premium for the Owner's Policy and simultaneous Loan Policy, less the premium for the Loan Policy at the standard rate.

(E)  **Contract Termination.** If Seller cannot cure all Title Defects within the time period provided in Paragraph ATC5(B) and if an Owner's Policy insuring over the Title Defects cannot be obtained in accordance with Paragraph ATC5(B), (i) Purchaser may cancel this Contract, (ii) Purchaser may elect to accept title as Seller can convey, or (iii) Seller may cancel this Contract if Purchaser fails to elect to accept such title within 3 Business Days after Purchaser receives a demand by Seller to accept title to the Property.

(F)  **Title Examination Standards.** The standards for title examination of the Bar Association applicable for the Property locality or, if none, BAEC standards, shall apply to this Contract.

ATC6.  **DEED.** At Closing, Seller shall deliver to Purchaser all documentation, in recordable form where required, reasonably necessary for Seller to comply with this Contract including (i) a warranty deed with lien covenant if Seller is a natural person, (ii) a fiduciary deed with lien covenant if Seller is a fiduciary, (iii) a bargain and sale deed with lien covenant and covenants against grantor's acts if Seller is not a natural person, and/or (iv) a bargain and sale deed with lien covenant and covenant against grantor's acts for so much of the Property as may be affected by a Title Defect which is accepted by Purchaser or which will be insured over by an Owner's Policy.

ATC7.  **INSPECTION AND UTILITIES.** Before Closing (but after a Loan Commitment has been accepted) and upon reasonable notice to Seller, Purchaser shall have the right to a single final inspection of the Property and Included Items ("Final Inspection"). Seller shall arrange for final utility readings and Purchaser shall arrange for the transfer of utility services to Purchaser effective as of the date of Closing.

ATC8.  **POSSESSION.** Subject only to the tenancies listed on the *Rented Property Rider*, if applicable, at Closing, Purchaser shall have possession of all of the Property and Included Items and the Property shall be vacant.

ATC9.  **PAYMENT OF ADJUSTED BALANCE.**

(A)  **Acceptable Funds.** The Adjusted Balance shall be paid by:
(1)  Cash, but not in excess of $500.00;
(2)  Certified check(s) drawn on, or bank draft(s) or official check(s) issued by a New York State branch of any Financial Institution, with the original payee as Seller or as Seller's attorney may otherwise direct upon not less than 2 Business Days notice to Purchaser's attorney.
(3)  As otherwise agreed to in writing by Seller or Seller's attorney.

(B)  **Payment Accepted Subject to Collection.** Any non-cash payment is accepted subject to collection.

ATC10.  **CANCELLATION.** Any cancellation made under any Paragraph of this Contract, other than Paragraph ATC1(A), shall be made by notice by the cancelling Party to the other Party ("Cancellation Notice"). The Cancellation Notice must state the reason for the cancellation and a copy of the Cancellation Notice must be delivered to the Escrow Agent. If the cancelling Party delivers a Cancellation Notice to the other Party and Escrow Agent and if a notice by the other Party objecting to the cancellation of this Contract ("Cancellation Objection Notice") is not received by the cancelling Party and Escrow Agent within 10 days following their receipt of a Cancellation Notice, or if this Contract is cancelled under Paragraph ATC1(A), this Contract shall automatically terminate upon that event, the Deposits shall be returned to Purchaser and neither Party nor the Brokers shall have any rights or obligations arising out of this Contract (other than obligations under this Contract that are intended to survive any cancellation or termination).

ATC11.  **ESCROW.**

(A)  **Trust Funds.** Escrow Agent's sole duties and responsibilities shall be as a stakeholder only to hold the Deposits in trust for the benefit of the Parties and disburse the Deposits following Closing or cancellation in accordance with this Contract notwithstanding that Escrow Agent may act as attorney or real estate broker for either Party in this transaction. At no time shall the Deposits be the property of Escrow Agent and at no time shall Escrow Agent earn any interest on the Deposits.

(B)  **Brokers' Commissions.** The Brokers brought about this sale and, if this Contract is not validly cancelled by either Party, the Parties shall pay the entire compensation to the Brokers in accordance with their respective written agreements unless the Closing does not take place through no fault of the Party owing the compensation ("Commissions"). However, if no Brokers are identified in this Contract, each Party represents that such Party has not dealt with any person who brought about this sale. Each Party shall indemnify, defend and hold the other harmless from and against any and all causes of action, claims, damages, judgments, awards, expenses and fees (including reasonable attorneys' fees and court costs) in connection with any claim for compensation by any person for having brought about this sale.

(C)  **Closing Disbursements.** If Escrow Agent has signed this Contract, Seller authorizes Escrow Agent to, and Escrow Agent shall, apply the Deposits at Closing, first to the payment of the Commissions owed by Seller, then to payment of Seller's costs as set forth in this Contract. The balance of the Deposits, if any, shall be paid to Seller or any other payee identified by Seller or Seller's attorney. In the event the Deposits are not sufficient to pay the Commissions owed by Seller, Seller authorizes Seller's attorney to, and Seller's attorney shall, pay the

Authentisign ID: E40DA9B8-342D-419F-B4D5-20E31CDD38F4

balance of the Commissions owed by Seller from the net proceeds due Seller at Closing. In the event Escrow Agent is the Listing Real Estate Broker, Escrow Agent will pay any Commissions due to the Selling Real Estate Broker out of Escrow Agent's escrow account within 7 Business Days after receipt of final payment from Seller.

(D) **Return of Deposits.** Except as otherwise provided in this Contract, Escrow Agent, in its capacity, is not subject to the unilateral direction of any Party with respect to the return of Deposits after cancellation. If this Contract is cancelled under Paragraph ATC1(A), Escrow Agent shall return the Deposits to Purchaser within 5 Business Days following Escrow Agent's receipt of a notice of disapproval or cancellation. If this Contract is cancelled under any other Paragraph in accordance with Paragraph ATC10, Escrow Agent shall return the Deposits to Purchaser within 14 days following Escrow Agent's receipt of a Cancellation Notice provided Escrow Agent did not timely receive a Cancellation Objection Notice. In all other cases, the Deposits shall be distributed by Escrow Agent to Seller or Purchaser as the case may be within 5 Business Days after the earliest of:

    (1) Escrow Agent's receipt of a mutual release (on a Bar Association approved form) executed and delivered by each of the Parties and Brokers to the others on terms agreed to by the Parties and Brokers that designates the manner in which the Deposits are to be distributed ("Release").;

    (2) Escrow Agent's receipt of a copy of a final non-appealable court order which directs how the Deposits are to be distributed; or

    (3) The date designated by Escrow Agent in a Notice of Intention (as defined below) as the day by which written objections to the release of the Deposits must be received by Escrow Agent, provided no written objection is received by Escrow Agent by such designated date. A "Notice of Intention" is a notice given by Escrow Agent to the Parties and their respective attorneys of Escrow Agent's intention to distribute the Deposits to Seller or Purchaser, as the case may be, due to a cancellation or breach of this Contract. The Notice of Intention shall be delivered by certified mail, return receipt requested and a copy by first class mail at least 7 days prior to such designated date and shall specify to whom the Deposits shall be distributed and the amount to be distributed to each. Escrow Agent shall deliver a Notice of Intention within 3 Business Days following Escrow Agent's receipt of a written demand for same from a Party.

    (4) In the event Escrow Agent receives a written objection pursuant to Paragraph ATC11(D)(3) by the date designated in the Notice of Intention, Escrow Agent may thereafter deposit the Deposits with any New York State court in whose jurisdiction any part the Property lies and commence an interpleader action to determine the disposition of the Deposits ("Interpleader Action"). Each Party shall reimburse Escrow Agent one-half of all expenses incurred by Escrow Agent, including court costs and reasonable attorneys fees, arising out of the commencement and prosecution of the Interpleader Action unless the court directs a different allocation of Escrow Agent's expenses.

(E) **Escrow Agent.** By accepting the Deposits, (i) Escrow Agent warrants that the individual signing on behalf of Escrow Agent is authorized to bind Escrow Agent and (ii) agrees to act in accordance with the terms of Paragraphs 4, ATC10, ATC11, ATC12, ATC13 and ATC14. Escrow Agent is not a party to this Contract for any other purpose and in such capacity shall not be liable for any damages under this Contract except for any act or omission inconsistent with the terms of this Contract.

(F) **Rights Retained.** Nothing contained in this Paragraph shall affect any right of either Party with respect to any claim against the Brokers.

ATC12. **NOTICES.**

(A) **Addresses.** All notices, demands and objections given under this Contract ("Notice(s)") shall be *in writing and delivered* in accordance with Paragraph ATC13, except as provided in Paragraph ATC11(D)(3), and a copy *should* be sent to the Brokers. Notice(s) to be delivered to Seller, Purchaser or Escrow Agent, other than those personally delivered, shall be delivered to Seller's, Purchaser's or Escrow Agent's address listed in this Contract, unless such Party has given notice to the other Parties of different address.

(B) **Notice by Attorney.** Notice(s) to Seller may be given or made by Purchaser or on behalf of Purchaser by Purchaser's attorney *with a copy to Seller* of only any notice of cancellation, notice declaring time of the essence or notice of satisfaction of any Sale Contingency. Notice(s) to Purchaser may be given or made by Seller or on behalf of Seller by Seller's attorney *with a copy to Purchaser* of only any notice of cancellation, notice declaring time of the essence or notice of acceptance of a Subsequent Agreement (as defined in Paragraph SCR2), if applicable.

ATC13. **ADDITIONAL REFERENCES/DEFINITIONS.** The following terms shall have the following meanings throughout, and in all modifications of, this Contract:

(A) **Delivery.** Unless otherwise specifically provided, any delivery of this Contract or Notice(s) ("Document(s)") shall be made by fax, personal delivery, first class mail, overnight delivery service or verified by a Signature Authenticator (as defined in ATC14(C)). If delivery is made by fax, an original or copy of the Document(s) shall be mailed by first class prepaid mail no later than 1 Business Day following the date of the confirmed fax transmission.

(B) **Receipt.**

    (1) If delivery is made by fax, the Document(s) transmitted shall be deemed received on the date the sender

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

receives confirmation from the recipient's equipment that the entire transmission has been received, provided the required mailing is completed.

(2)   If delivery is made by personal delivery, the Document(s) delivered shall be deemed received on the date delivered.

(3)   If delivery is made by first class mail or overnight delivery service, the Document(s) delivered shall be deemed received 1 Business Day following the date upon which the Document(s) is/are deposited with the postal service with required postage affixed or with the delivery service with delivery charges prepaid or charged to the sender's account.

(4)   If delivery is made by certified mail as required by this Contract, the Document(s) delivered shall be deemed received (a) on the date the return receipt is signed, (b) on the date delivery is refused, or (c) if the mailing is not claimed, 3 Business Days following the date upon which the Document(s) is/are deposited with the postal service with required postage affixed, provided copies of the Document(s) was/were mailed by first class prepaid mail no later than 1 Business Day following the certified mailing.

(5)   If delivery is made by a Signature Authenticator, the Document(s) shall be deemed received by the recipient on the date of receipt as reflected in the records of the Signature Authenticator.

(6)   If delivery is made in a manner which does not comply with the provisions of Paragraph ATC13(A), including email to the intended recipient's email address and (a) the other Party or the other Party's attorney acknowledges receipt of the Document(s), or (b) receipt is otherwise established, the Document(s) shall be deemed received on the earliest of the date of the acknowledgment, the date of receipt set forth in the acknowledgment, or the date of receipt as otherwise established.

(7)   Notice(s) given by a Party's attorney in accordance with Paragraph ATC12(B), shall be deemed received on the earlier of the date the Notice(s) is/are received by the other Party or other Party's attorney.

(C)   **Business Day.** "Business Day" shall mean calendar days excluding Saturdays, Sundays and legal holidays and shall end at 5:00 p.m. A day other than a Business Day shall end at 11:59 p.m.

(D)   **Effective Date.** "Effective Date" shall mean the latest date on which a duplicate or copy of this Contract has been received by both Parties or their attorneys.

(E)   **Use of Terms.** Whenever the term "including" is used, it shall mean "including but not limited to".

## ATC14.  MISCELLANEOUS.

(A)   **Attorney's Fees.** In connection with any litigation concerning this Contract, the prevailing Party shall be entitled to recover reasonable attorney's fees and costs.

(B)   **Captions.** The captions contained in this Contract are for convenience only and are not intended to limit or amplify the terms of this Contract.

(C)   **Electronic Signatures.** The Parties, Brokers and Escrow Agent agree and consent that this Contract, and every demand, notice and objection given under this Contract, may be signed and initialed in any manner permitted by the laws of New York State including the Electronic Signatures and Records Act and applicable regulations ("ESRA"). Electronic signatures and initials verified by a person acting as a Certification Authority as provided under ESRA ("Signature Authenticator") shall be considered deemed originals.

(D)   **Governing Law.** This Contract shall be interpreted and enforced in accordance with the laws of the State of New York without regard to the principle of conflict of laws. The invalidity or unenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract.

(E)   **Jurisdiction.** The Parties agree to submit to the jurisdiction of the Courts of the State of New York in the County in which the Property is located with respect to any dispute arising out of this Contract.

(F)   **Parties Bound/Entire Agreement.** This Contract is intended to bind the Parties and Escrow Agent, and those who succeed to their interests, contains the entire agreement between the Parties, and, for purposes of Paragraphs 4, ATC10, ATC11, ATC12, ATC13 and ATC14, the Escrow Agent. Nothing is binding upon the Parties which is not contained in this Contract. *Any modification of this Contract must be in writing and signed by the Parties.* Nothing herein expressed or implied is intended or shall be construed to grant to any person, other than the Parties and those who succeed to their interests, any rights or remedies under or by reason of this Contract.

(G)   **Survival.** The disclosures in Paragraph 6(R), (V) and (W) and the provisions of Paragraphs ATC11(B) and (F) and ATC14 shall survive the Closing or cancellation of this Contract. Any claim arising from failure to comply with Paragraphs 3(D)(5), 3(E)(4), 5, 13, 15, ATC2(C) and (D), ATC8, ATC9(B), ATC10 and ATC11(C) shall survive for 2 years after the Closing or cancellation of this Contract. Whether any other provision of this Contract survives the Closing shall be determined by applicable law or as specifically set forth in this Contract.



9B6-342D-419F-B4D5-2DE31C0D38F4

NYS Department of State
Division of Licensing Services
P.O. Box 22001
Albany, NY 12201-2001
(518) 474-4429
www.dos.state.ny.us

## Property Condition Disclosure Statement

Name of Seller or Sellers: *Charles Woods*

Property Address: *393 Hampshire*
*Buffalo NY*

### General Instructions:

The Property Condition Disclosure Act requires the seller of residential real property to cause this disclosure statement or a copy thereof to be delivered to a buyer or buyer's agent prior to the signing by the buyer of a binding contract of sale.

### Purpose of Statement:

This is a statement of certain conditions and information concerning the property known to the seller. This Disclosure Statement is not a warranty of any kind by the seller or by any agent representing the seller in this transaction. It is not a substitute for any inspections or tests and the buyer is encouraged to obtain his or her own independent professional inspections and environmental tests and also is encouraged to check public records pertaining to the property.

A knowingly false or incomplete statement by the seller on this form may subject the seller to claims by the buyer prior to or after the transfer of title. In the event a seller fails to perform the duty prescribed in this article to deliver a Disclosure Statement prior to the signing by the buyer of a binding contract of sale, the buyer shall receive upon the transfer of title a credit of $500 against the agreed upon purchase price of the residential real property.

"Residential real property" means real property improved by a one to four family dwelling used or occupied, or intended to be used or occupied, wholly or partly, as the home or residence of one or more persons, but shall not refer to (a) unimproved real property upon which such dwellings are to be constructed or (b) condominium units or cooperative apartments or (c) property on a homeowners' association that is not owned in fee simple by the seller.

### Instructions to the Seller:

 a. Answer all questions based upon your actual knowledge.
 b. Attach additional pages with your signature if additional space is required.
 c. Complete this form yourself.
 d. If some items do not apply to your property, check "NA" (Non-applicable). If you do not know the answer check "Unkn" (Unknown).

### Seller's Statement:

The seller makes the following representations to the buyer based upon the seller's actual knowledge at the time of signing this document. The seller authorizes his or her agent, if any, to provide a copy of this statement to a prospective buyer of the residential real property. The following are representations made by the seller and are not the representations of the seller's agent.

## GENERAL INFORMATION

1. How long have you owned the property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *1 yr*

2. How long have you occupied the property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *N/a*

3. What is the age of the structure or structures? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   *unknown*
   *Note to buyer – If the structure was built before 1978 you are encouraged to investigate for the presence of lead based paint..*

4. Does anybody other than yourself have a lease, easement or any other right to use or occupy any part of your property other than those stated in documents available in the public record, such as rights to use a road or path or cut trees or crops? . . . . . . . . . . . . . . . . . . . . . ☐Yes ☐No ☒Unkn ☐NA

5. Does anybody else claim to own any part of your property? *If Yes, explain below* . . . . . . . ☐Yes ☐No ☒Unkn ☐NA

Instant forms

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

*Property Condition Disclosure Statement*

6. Has anyone denied you access to the property or made a formal legal claim challenging your title to the property? *If Yes, explain below* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

7. Are there any features of the property shared in common with adjoining landowners or a homeowner's association, such as walls, fences or driveways? *If Yes, describe below* . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

8. Are there any electric or gas utility surcharges for line extensions, special assessments or homeowner or other association fees that apply to the property? *If Yes, explain below* . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

9. Are there certificates of occupancy related to the property? *If No, explain below* . . . . . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

## ENVIRONMENTAL

**Note to Seller:**

In this section, you will be asked questions regarding petroleum products and hazardous or toxic substances that you know to have been spilled, leaked or otherwise been released on the property or from the property onto any other property. Petroleum products may include, but are not limited to, gasoline, diesel fuel, home heating fuel, and lubricants. Hazardous or toxic substances are products that could pose short or long-term danger to personal health or the environment if they are not properly disposed of, applied or stored. These include, but are not limited to, fertilizers, pesticides and insecticides, paint including paint thinner, varnish remover and wood preservatives, treated wood, construction materials such as asphalt and roofing materials, antifreeze and other automotive products, batteries, cleaning solvents including septic tank cleaners, household cleaners and pool chemicals and products containing mercury and lead.

**Note to Buyer:**

If contamination of this property from petroleum products and/or hazardous or toxic substances is a concern to you, you are urged to consider soil and groundwater testing of this property.

10. Is any or all of the property located in a designated floodplain? *If Yes, explain below* . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

11. Is any or all of the property located in a designated wetland? *If Yes, explain below* . . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

12. Is the property located in an agricultural district? *If Yes, explain below* . . . . . . . . . . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

13. Was the property ever the site of a landfill? *If Yes, explain below* . . . . . . . . . . . . . . . . . .  ☐ Yes ☐ No ☒ Unkn ☐ NA

DOS-1614 (Rev 8/06)

*Instanet forms*

Authentisign ID: E40DA988-342D-419F-B4D5-2DE31CDD38F4

*Property Condition Disclosure Statement*

14. Are there or have there ever been fuel storage tanks above or below the ground on the
property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA
   • If Yes, are they currently in use? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA
   • Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

   • Are they leaking or have they ever leaked? *If Yes, explain below* . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

15. Is there asbestos in the structure? *If Yes, state location or locations below* . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

16. Is lead plumbing present? *If Yes, state location or locations below* . . . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

17. Has a radon test been done? *If Yes, attach a copy of the report* . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

18. Has motor fuel, motor oil, home heating fuel, lubricating oil or any other petroleum product,
methane gas, or any hazardous or toxic substance spilled, leaked or otherwise been released
on the property or from the property onto any other property? *If Yes, describe below* . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

19. Has the property been tested for the presence of motor fuel, motor oil, home heating fuel,
lubricating oil, or any other petroleum product, methane gas, or any hazardous or toxic
substance? *If Yes, attach report(s)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

## STRUCTURAL

20. Is there any rot or water damage to the structure or structures? *If Yes, explain below* . . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

21. Is there any fire or smoke damage to the structure or structures? *If Yes, explain below* . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

22. Is there any termite, insect, rodent or pest infestation or damage? *If Yes, explain below* . . . ☐ Yes ☐ No ☒ Unkn ☐ NA

23. Has the property been tested for termite, insect, rodent or pest infestation or damage? . . . . ☐ Yes ☐ No ☒ Unkn ☐ NA
    *If Yes, please attach report(s)*

24. What is the type of roof/roof covering (slate, asphalt, other)? . . . . . . . . . . . . . . . . . . . . . .
    • Any known material defects? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   NO
    • How old is the roof? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Le months

Instanet
forms

Authentisign ID: E40DA9B8-3420-419F-B4D5-2DE31C0D38F4

*Property Condition Disclosure Statement*

- Is there a transferable warrantee on the roof in effect now? *If Yes, explain below* ..... ☐ Yes ☐ No ☒ Unkn ☐ NA

25. Are there any know material defects in any of the following structural systems: footings, beams, girders, lintels, columns or partitions? *If Yes, explain below* ................. ☐ Yes ☐ No ☒ Unkn ☐ NA

## MECHANICAL SYSTEMS AND SERVICES

26. What is the water source? *(Circle all that apply)* ........................... well,    private.    (municipal,)
    other: __N/A__

- If municipal, is it metered? ..................................... ☐ Yes ☐ No ☒ Unkn ☐ NA

27. Has the water quality and/or flow rate been tested? *If Yes, describe below* ........ ☐ Yes ☐ No ☒ Unkn ☐ NA

28. What is the type of sewage system? *(Circle all that apply)* ..................... (public sewer)    private sewer,
                                                                        septic.    cesspool

- If septic or cesspool, age? ................................ —    N/A
- Date last pumped? ....................................... —    N/A
- Frequency of pumping? .................................. —    N/A
- Any known material defects? *If Yes, explain below* ...................... ☐ Yes ☐ No ☒ Unkn ☐ NA

29. Who is your electrical service provider? .............................. —    N/A   unknown
- What is the amperage? ..................................... —    N/A   unknown
- Does it have circuit breakers or fuses? ......................... —    unknown
- Private or public poles? ...................................... .    public
- Any known material defects? *If yes, explain below* .......................... ☐ Yes ☐ No ☒ Unkn ☐ NA

30. Are there any flooding, drainage or grading problems that resulted in standing water on any portion of the property? *If Yes, state locations and explain below* ..................... ☐ Yes ☐ No ☒ Unkn ☐ NA

31. Does the basement have seepage that results in standing water? *If Yes, explain below* .... ☐ Yes ☐ No ☒ Unkn ☐ NA

Are there any known material defects in any of the following? *If Yes, explain below. Use additional sheets if necessary* ...... ....................................

32. Plumbing system? ................................................ ☐ Yes ☐ No ☒ Unkn ☐ NA

33. Security system? ................................................. ☐ Yes ☐ No ☒ Unkn ☐ NA

34. Carbon monoxide detector? ........................................ ☐ Yes ☐ No ☒ Unkn ☐ NA

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

*Property Condition Disclosure Statement*

| | Yes | No | Unkn | NA |
|---|---|---|---|---|
| 35. Smoke detector? | ☐ | ☐ | ☒ | ☐ |
| 36. Fire sprinkler system? | ☐ | ☐ | ☒ | ☐ |
| 37. Sump pump? | ☐ | ☐ | ☒ | ☐ |
| 38. Foundation/slab? | ☐ | ☐ | ☒ | ☐ |
| 39. Interior walls/ceilings? | ☐ | ☐ | ☒ | ☐ |
| 40. Exterior walls or siding? | ☐ | ☐ | ☒ | ☐ |
| 41. Floors? | ☐ | ☐ | ☒ | ☐ |
| 42. Chimney/fireplace or stove? | ☐ | ☐ | ☒ | ☐ |
| 43. Patio/deck? | ☐ | ☐ | ☒ | ☐ |
| 44. Driveway? | ☐ | ☐ | ☒ | ☐ |
| 45. Air conditioner? | ☐ | ☐ | ☒ | ☐ |
| 46. Heating system? | ☐ | ☐ | ☒ | ☐ |
| 47. Hot water heater? | ☐ | ☐ | ☒ | ☐ |

48. The property is located in the following school district _____ ☒ Unkn

*Note:*   Buyer is encouraged to check public records concerning the property (e.g. tax records and wetland and floodplain maps).

*The seller should use this area to further explain any item above. If necessary, attach additional pages and indicate here the number of additional pages attached.*

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

*Property Condition Disclosure Statement*

## Seller's Certification:

Seller certifies that the information in this Property Condition Disclosure Statement is true and complete to the seller's actual knowledge as of the date signed by the seller. If a seller of residential real property acquires knowledge which renders materially inaccurate a Property Condition Disclosure Statement provided previously, the seller shall deliver a revised Property Condition Disclosure Statement to the buyer as soon as practicable. In no event, however, shall a seller be required to provide a revised Property Condition Disclosure Statement after the transfer of title from the seller to the buyer or occupancy by the buyer, whichever is earlier.

*Seller's Signature*

X _[signature]_                                            Date  5/7/18

*Seller's Signature*

X                                                          Date

## Buyer's Acknowledgment:

Buyer acknowledges receipt of a copy of this statement and buyer understands that this information is a statement of certain conditions and information concerning the property known to the seller. It is not a warranty of any kind by the seller or seller's agent and is not a substitute for any home, pest, radon or other inspections or testing of the property or inspection of the public records.

*Buyer's Signature*

X  *Vodka Properties LLC*                                  Date        05/11/2018
   5/11/2018 9:39:27 PM EDT

*Buyer's Signature*

X                                                          Date

DOS-1614 (Rev. 8/06)                                       PAGE 6 OF 6

Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

LEAD-BASED PAINT RIDER (LBPR) (Rev. 8/07)
*Prior versions are obsolete.*

© 2007 by Buffalo Niagara Association of REALTORS®, Inc.
© 2007 by Bar Association of Erie County

 # LEAD-BASED PAINT RIDER
# AND DISCLOSURE 

RIDER TO CONTRACT dated: _____ ("Contract")
between ___*Charles Woods*_____ ("Seller")
and _____ ("Purchaser")
regarding: ___*393 Hampshire Buffalo NY*_____ ("Property").

The Parties agree that the following additions and/or modifications are hereby made to the Contract:

**LBPR1.** **VALIDITY OF CONTRACT.** Federal Regulations require that Seller provide the disclosures in Paragraph LBPR4 *before* the Contract becomes binding on Purchaser. If any such disclosures are changed after Purchaser signs the Contract, Purchaser may cancel the Contract.

**LBPR2.** **LEAD WARNING STATEMENT.** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**LBPR3.** **LEAD HAZARD INFORMATION PAMPHLET.** Seller shall deliver to Purchaser the EPA approved lead-hazard information pamphlet, *Protect Your Family From Lead in Your Home.* Intact lead-based paint that is in good condition is not necessarily a hazard.

**LBPR4.** **SELLER'S DISCLOSURES.** *(Check all applicable boxes.)*

**(A)** **Presence of Lead-Based Paint and/or Lead-Based Paint Hazards.** (Check either (1) or (2) below.)

Initials & Date

| VP | Purchaser | Seller |

05/11/2018

☐ **(1)** **Hazards Known.** Attached hereto is a statement signed by Seller disclosing the presence of known lead-based paint and/or lead-based paint hazards at the Property, including but not limited to the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards and the condition of the painted surfaces.

☒ **(2)** **Hazards Unknown.** Seller has no actual knowledge of the presence of lead-based paint and/or lead-based paint hazards at the Property.

**(B)** **Records and Reports Available to Seller.** *(Check either (1) or (2) below.)*

Initials & Date

| VP | Purchaser | Seller |

05/11/2018

☐ **(1)** **Record Provided.** The following is a list of all records and/or reports available to Seller pertaining to lead-based paint and/or lead-based paint hazards at the Property.

_____
_____
_____

☒ **(2)** **No Records.** Seller has no records or reports pertaining to lead-based paint and/or lead-based paint hazards at the Property.



Authentisign ID: E40DA9B8-342D-419F-B4D5-2DE31CDD38F4

BAEC/BNAR Lead-Based Paint Rider (LBPR) (Rev. 8/07)



(C)  **Validity of Information.**  This Rider was prepared based on information previously provided by Seller either verbally or as part of Seller's listing information.

**LBPR5.  RISK ASSESSMENT.**  *Choose either (A) or (B) below ("(A)", if blank).*

☐  (A)  Purchaser hereby waives the opportunity to conduct a lead-based paint hazard risk assessment or inspection.

☐  (B)  This Contract is contingent upon a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards being obtained by Purchaser at Purchaser's expense within 10 days after the Effective Date ("Lead Paint Inspection Period").  The results must be satisfactory to the Purchaser ("Lead-Based Paint Inspection Contingency").  If the results of such inspection are unacceptable to Purchaser for any reason whatsoever, Purchaser shall notify Seller within 2 Business Days after the end of the Lead Paint Inspection Period, together with a copy of the inspection and/or risk assessment report.  In such case, either Party may cancel this Contract.  A copy of such notice(s) **should** be delivered to the Brokers.  If Purchaser does not notify Seller of any unacceptable results within 2 Business Days after the end of the Lead Paint Inspection Period, the Lead-Based Paint Inspection Contingency is deemed waived by the Purchaser.  Seller will cooperate with Purchaser's inspection in such fashion as may be reasonably requested by Purchaser.  Purchaser may remove this contingency at any time without cause.

**LBPR6.  PURCHASER'S ACKNOWLEDGMENT.**



(A)  Purchaser has received copies of all information, records and/or reports set forth in Paragraph LBPR4 of this Rider or attached to this Contract, or has been informed that <u>no</u> such information, records and/or reports exist.

(B)  Purchaser has received the EPA approved lead hazard information pamphlet, *Protect Your Family From Lead in Your Home.*

**LBPR7.  CERTIFICATION OF ACCURACY.**  Seller and Purchaser have reviewed the information above and each certifies to the best of his/her/their knowledge that the statements he/she/they have provided are true and accurate.

| | | | |
|---|---|---|---|
| | | | 05/11/2018 |
| _Merle ward_ | 5/7/2018 | _Vadka Properties LLC_ | |
| Seller | Date | Purchaser 05/11/2018 9:39:59 PM EDT | Date |
| | | | |
| Seller | Date | Purchaser | Date |
| | | | |
| Seller | Date | Purchaser | Date |

AGENT'S ACKNOWLEDGMENT

Each real estate agent who receives compensation from payment made by Seller acknowledges that he/she:

(a)  prepared this Rider based on information previously provided by Seller either verbally or as part of Seller's listing information;

(b)  has informed the Seller of the Seller's obligations under 42 U.S.C. 4852(d);

(c)  is aware of his/her duty to ensure compliance; and

(d)  certifies that his/her statements are true and accurate to the best of his/her knowledge.

| | | | |
|---|---|---|---|
| | 5/11/18 | | 5/7/2018 |
| Agent | Date | Agent | Date |
| | | | |
| Agent | Date | Agent | Date |



Authentisign ID: E40DA988-342D-419F-B4D6-2DE31CDD38F4

## ATTACHMENT A TO THE LISTING AGREEMENT

**SELLER'S DISCLOSURES.** Seller makes the following disclosures to the best of Seller's knowledge:

☒ Yes ☐ No    (A) Title. Seller has title to the Property, subject to the provisions of Paragraph ATC5, and Seller owns the Included Items.

☐ Yes ☒ No    (B) Agricultural District. The Property is located partially or wholly within an agricultural district. If "Yes", see Agricultural District Rider.

☐ Yes ☒ No    (C) Utility Surcharge. The Property is subject to a utility (e.g. gas, electricity, water) surcharge. If "Yes": Type/Purpose:_____

Amount: _____ Payable (i.e. monthly, yearly): _____

☐ Yes ☒ No    (D) Water Well. The Property has a private water well and/or other non-public water supply.

☒ Yes ☐ No    (E) Public Water. The Property is connected to a public water supply.

☐ Yes ☒ No    (F) Septic System. (1) The Property has a private septic system approved for _____ bedrooms.

    (2) If yes, the dwelling(s) on the Property is/are vacant or will have been vacant in excess of 30 consecutive days immediately prior to the inspection to obtain the Certificate/Approval (as defined in Paragraph 12(B)) for the septic system.

☒ Yes ☐ No    (G) Public Sewers. The Property is connected to public sanitary sewers.

☐ Yes ☒ No    (H) Heating Oil/Propane. The Property is serviced by heating oil and/or propane.

☐ Yes ☒ No    (I) Gas and Oil Wells. The Property has an uncapped natural gas and/or oil well.

☐ Yes ☒ No    (J) Oil/ Gas/Mineral Leases. Seller has received, is receiving or is entitled to receive rents, royalties or other payments and/or free gas under any oil or gas or mineral lease affecting the Property.

☐ Yes ☒ No    (K) Flood Zone. The Property is currently located in a special flood hazard zone. Note: If Yes, flood insurance will likely be required by an institutional lender.

☐ Yes ☒ No    (L) Radon. The Property has been tested for radon.

☐ Yes ☒ No    (M) Special Tax District. The Property is located in a special tax district having a separate tax bill (for example: Buffalo Place, Bailey/Kensington Business District).

☐ Yes ☒ No    (N) Tax Exemption. (1) The Property tax bill(s) reflect(s) a tax exemption (e.g. STAR, Veteran's).

☐ Yes ☒ No    (2) If yes, Seller is entitled to the exemption on the most recent tax bills.

☐ Yes ☒ No    (O) Special Tax Assessments. The Property is subject to assessments for special or local improvements (e.g. sidewalks, water/sewer lines)("Special Tax Assessments").

    (P) Vehicular Access. Vehicular access to the Property is currently by way of:

☒ Yes ☐ No    (1) a contiguous municipal road right of way.

☐ Yes ☒ No    (2) a contiguous, shared private road right of way of record.

☐ Yes ☒ No    (Q) Shared Driveway. The Property is serviced by a shared driveway.

☐ Yes ☒ No    (R) Court Orders. Seller is currently subject to a court order that prohibits the sale or transfer of the Property without the consent of another person or further court order.

☐ Yes ☒ No    (S) Bankruptcy. Seller is currently in bankruptcy.

☐ Yes ☒ No    (T) Foreclosure. The Property is currently the subject of a foreclosure proceeding or a mortgage encumbering the Property that is in arrears in excess of 60 days.

☒ Yes ☐ No    (U) Sufficient Funds. Including the proceeds from the sale of the Property, Seller has sufficient funds to close this transaction and pay all of Seller's closing costs and expenses.

☒ Yes ☐ No    (V) Code Violations. Notice from a governmental authority has been issued advising that the Property and/or Current Uses/Improvements (as defined in Paragraph 12(A)) violate applicable building codes and/or zoning ordinances, any of which violations continue as of the Contract Date.

☐ Yes ☒ No    (W) FIRPTA Certification. Seller is a non-resident alien, foreign corporation, foreign partnership, foreign trust or foreign estate (as defined in the Internal Revenue Code and IRS Regulations).

The above information is to the best of the Owner's knowledge and we authorize the Broker to provide this information to any potential purchaser, tenants or exchange parties and other Brokers or their agents.

_Clause ~~~~~~_ _____    _5/7/2018_
(Owner)                             (Date)

_____    _____
(Owner)                             (Date)

# 393 HAMPSHIRE





# 393 HAMPSHIRE

6/28/19



393 HAMPSHIRE                    6/28/19



# 393 HAMPSHIRE                    6/28/19



# 393 HAMPSHIRE





# 393 HAMPSHIRE

8/27/19





