UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MAXIM LEVIN and
VODKA PROPERTIES LLC,

                                        Plaintiffs,

                v.

CITY OF BUFFALO,
BYRON W. BROWN, Individually and in his capacity
  as the Mayor of the City of Buffalo,
JAMES COMERFORD, JR., Individually and in his
  capacity as the Commissioner of the Department
  of Permit & Inspection Services,
LOU PETRUCCI, Individually and in his capacity as
  the Deputy Commissioner of the Department of
  Permit & Inspection Services,
TRACY KRUG, Individually and in his capacity as
  an inspector for the City of Buffalo,
KEVIN COYNE, Individually and in his capacity as
  an inspector for the City of Buffalo, and
EMPIRE DISMANTLEMENT CO.,
                                        Defendants.

_____

EMPIRE DISMANTLEMENT CO.,

                                        Cross Claimant,

                v.

BYRON W. BROWN, Individually and in his capacity
  as the Mayor of the City of Buffalo,
CITY OF BUFFALO,
JAMES COMERFORD, JR., Individually and in his
  capacity as the Commissioner of the Department
  of Permit & Inspection Services,
KEVIN COYNE, Individually and in his capacity as
  an inspector for the City of Buffalo,
TRACY KRUG, Individually and in his capacity as
  an inspector for the City of Buffalo, and
LOU PETRUCCI, Individually and in his capacity as
  the Deputy Commissioner of the Department of
  Permit & Inspection Services,
                                        Cross Defendants.

_____

REPORT
and
RECOMMENDATION
-----------------------------
DECISION
and
ORDER

20-CV-1511-JLS-LGF

APPEARANCES:          RUPP PFALZGRAF LLC
                             Attorneys for Plaintiffs
                             JILL LIANE YONKERS, and
                             CHAD A. DAVENPORT, of Counsel
                             1600 Liberty Building
                             424 Main Street
                             Buffalo, New York  14202

                             CAVETTE A. CHAMBERS
                             CORPORATION COUNSEL, CITY OF BUFFALO
                             Attorney for City Defendants and Cross Defendants
                             ROBERT EMMET QUINN
                             Assistant Corporation Counsel, of Counsel
                             1100 City Hall
                             65 Niagara Square
                             Buffalo, New York  14202

                             LEWANDOWSKI & ASSOCIATES
                             Attorneys for Defendant and Cross Claimant
                              Empire Dismantlement Co.
                             STEPHEN J. STACHOWSKI, of Counsel
                             721 Center Road
                             West Seneca, New York  14224

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on November 18, 2020, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 8).  The matter is presently before the court on motions filed October 26, 2022 for partial summary judgment by Plaintiffs (Dkt. 28), for summary judgment by Defendant Empire Dismantlement Corp.[1] (Dkt. 30), and for summary judgment or judgment on the pleadings by Defendants City of Buffalo, Mayor Brown, Comerford, Petrucci, Krug, and Coyne, (Dkt. 31), as well as on cross-

---

[1] Defendant Empire Dismantlement Corp. is incorrectly identified in the Complaint as "Empire Dismantlement Co."

motions to strike filed by Plaintiff on November 30, 2022 (Dkt. 36), and on December 15, 2022 (Dkt. 42).[2]

## BACKGROUND

Plaintiffs Maxim Levin and Vodka Properties, LLC (together, "Plaintiffs"), commenced this civil rights action on October 19, 2020, alleging the demolition of Plaintiffs' building located at 393 Hampshire Street in Buffalo, New York was unlawful and in violation of the Constitution and New York common law.  Defendants to this action include the City of Buffalo ("City") and City employees and officials Mayor Byron Brown ("Mayor Brown"), James Comerford, Jr. ("Comerford"), Lou Petrucci ("Petrucci"), Tracy Krug ("Krug"), and Kevin Coyne ("Coyne") (together, "City Defendants"), as well as Empire Dismantlement Corp. ("Empire").

Plaintiffs assert 14 claims for relief, the first ten of which are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983") ("§ 1983 claims"), and the remaining four allege violations of New York common law ("common law claims").  Specifically, Plaintiff asserts the § 1983 claims against all Defendants including a violation of Fourteenth Amendment procedural due process, Complaint, First Cause of Action ("First Claim"), a violation of Fourteenth Amendment substantive due process, *id*., Second Cause of Action ("Second Claim"), unlawful taking in violation of the Fifth and Fourteenth Amendments, *id*., Third Cause of Action ("Third Claim"), the provisions of the Code and Ordinances of the City of Buffalo ("Buffalo Code"), Chapter 113-3 ("Ch. 113-3"), and Charter of the City of

---

[2] Although motions for summary judgment are dispositive, whereas motions to strike facts and exhibits are nondispositive, *see Gwynn v. Clubine*, 302 F.Supp.2d 151, 154 n.1 (W.D.N.Y. 2004) (motions to strike are nondispositive), the court addresses all pending motions in this combined Report and Recommendation/Decision and Order in the interests of clarity and judicial economy.

Buffalo ("City Charter") § 17-2 ("§ 17-2"), on which Defendants relied, are facially invalid and overbroad in violation of the Fifth and Fourteenth Amendments, *id*., Fourth Cause of Action ("Fourth Claim"), Ch. 113-3 and § 17-2 are facially invalid and violate New York General City Law § 20[35] in violation of the Fifth and Fourteenth Amendments, *id*., Fifth Cause of Action ("Fifth Claim"), violation of Fourteenth Amendment equal protection, *id*., Sixth Cause of Action ("Sixth Claim"), unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments, *id*., Seventh Cause of Action ("Seventh Claim"), abuse of process in violation of the Fourth, Fifth, and Fourteenth Amendments, *id*., Eighth Cause of Action ("Eighth Claim"), and conspiracy to violate Plaintiffs' constitutional rights in violation of the Fourth, Fifth, and Fourteenth Amendments, *id*., Ninth Cause of Action ("Ninth Claim").  Plaintiff asserts only against Defendant City a violation of the Fourteenth Amendment based on Defendants' policy, custom, practice, and failure to train and supervise employees, *id*., Tenth Cause of Action ("Tenth Claim").  Plaintiffs' common law claims, asserted only against Defendant Empire, include negligence, *id*., Eleventh Cause of Action ("Eleventh Claim"), trespass and trespass to chattels, *id*., Twelfth Cause of Action ("Twelfth Claim"), conversion, *id*., Thirteenth Cause of Action ("Thirteenth Claim"), and *prima facie* tort/intentional infliction of economic damage, *id*., Fourteenth Cause of Action ("Fourteenth Claim").

Answers were filed on November 13, 2020, by City Defendants, and on November 16, 2020 by Empire (Dkt. 7).  In its answer, Empire asserts cross claims against the City Defendants for contribution, indemnification, misrepresentation, and comparative negligence.  On December 22, 2020, Plaintiffs filed an answer to the crossclaims.  (Dkt. 10).

On October 26, 2022, summary judgment motions were filed by Plaintiffs, Empire, and City Defendants.  In particular, Plaintiffs filed a motion for partial summary judgment pursuant to Fed.R.Civ.P. 56 ("Rule 56") against Defendants Comerford, Coyne, Krug and Empire (Dkt. 28) ("Plaintiffs' Summary Judgment Motion"), attaching the Attorney Declaration [of Chad A. Davenport, Esq.][3] in Support of Plaintiffs' Motion for Partial Summary Judgment Against Defendants Comerford, Krug, Coyne, and Empire Dismantlement Co. (Dkt. 28-1) ("Davenport Declaration"), with exhibits A through Z (Dkts. 28-2 through 28-27) ("Plaintiffs' Exh(s). ___"), the Statement of Material Facts Pursuant to Local Rules of Civil Procedure 7(a)(5) and (56) Submitted by Plaintiffs Maxim Levin and Vodka Properties, LLC (Dkt. 28-28) ("Plaintiffs' Statement of Facts"), and the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment as to Defendants Comerford, Krug, Coyne, and Empire Dismantlement Co. (Dkt. 28-29) ("Plaintiffs' Memorandum").  Empire filed a motion seeking to dismiss the Complaint against it pursuant to Fed.R.Civ.P. 12(c) ("Rule 12(c)")[4] or for summary judgment pursuant to Rule 56 on all of Plaintiffs' claims asserted against Empire, as well as for summary judgment on Empire's cross-claims (Dkt. 30) ("Empire's Motion"), attaching the Attorney Declaration [of Stephen J. Stachowski, Esq.] in Support of Empire Dismantlement Corp.'s Motion for Summary Judgment (Dkt. 30-1) ("Stachowski Declaration") with exhibits A through Y (Dkts. 30-2 through 30-26) ("Empire's Exh(s). ___"), the Statement of Material Facts Pursuant to Local Rules of Civil Procedure 7(a)(5) and 56 Submitted by Empire Dismantlement Corp. (Dkt. 30-27) ("Empire's Statement of Facts"), and the Memorandum of Law in Support of Empire Dismantlement Corp.'s

---

[3] Unless otherwise indicated, bracketed material has been added.
[4] The court notes motions pursuant to Rule 12(c) are for judgment on the pleadings.

Motion for Summary Judgment (Dkt. 30-28) ("Empire's Memorandum"). City
Defendants filed a motion for summary judgment or judgment on the pleadings on all of
Plaintiffs' claims as well as Empire's cross-claims (Dkt. 31) ("City Defendants' Motion"),
attaching the Declaration of Assistant Corporation County Robert E. Quinn (Dkt. 31-1)
("Quinn Declaration"), with exhibits A through V (Dkts. 31-2 through 31-23) ("City
Defendants' Exh(s). __"), the Statement of Undisputed Facts (Dkt. 31-24) ("City
Defendants' Statement of Facts"), and the Memorandum of Law in Support of the City
Defendants' Motion (Dkt. 31-25) ("City Defendants' Memorandum").

On November 25, 2022, Plaintiffs filed their Memorandum of Law in Opposition to
Defendant Empire Dismantlement's Motion for Summary Judgment (Dkt. 35) ("Plaintiffs
Response to Empire"), and the Local Rule 56(a)2 Statement of Facts in Opposition to
Empire Dismantlement's Motion for Summary Judgment (Dkt. 35-1) ("Plaintiffs'
Response to Empire's Statement of Facts").

Multiple papers were filed on November 30, 2022, including Plaintiffs' cross-
motion seeking to strike City Defendants' Material Facts (Dkt. 36) ("Plaintiffs' Motion to
Strike City Defendants' Statement of Facts"), the Memorandum of Law in Opposition to
the City Defendants' Motion for Summary Judgment and Judgment on the Pleadings
(Dkt. 36-1) ("Plaintiffs' Response to City Defendants"),[5] and the Local Rule 56(a)2
Statement of Facts in Opposition to the City of Buffalo Defendants Summary Judgment
Motion (Dkt. 36-2) ("Plaintiffs' Response to City Defendants Statement of Facts"). Also
filed on November 30, 2022, was Empire's Memorandum of Law in Opposition to
Plaintiffs', Maxim Levin and Vodka Properties, LLC, Motion for Summary Judgment

---

[5] Plaintiffs' Response to City Defendants also contains Plaintiffs' argument in support of Plaintiffs' Motion
to Strike City Defendants' Statement of Facts.

(Dkt. 37) ("Empire's Response to Plaintiffs"), the Attorney Declaration [of Stephen J. Stachowski, Esq.] in Opposition to Plaintiffs Summary Judgment (Dkt. 37-1) ("Stachowski Response Declaration") with exhibits A through D (Dkts. 37-2 through 37-5) ("Empire Response Exh(s). __"), and the Local Rule 56(a)(2) Statement of Facts in Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. 37-6) ("Empire's Response to Plaintiffs' Statement of Facts").  City Defendants filed on November 30, 2022 the Declaration of Assistant Corporation Counsel Robert E. Quinn (Dkt. 38) ("Quinn Response Declaration"), with exhibits A through D (Dkts. 38-1 through 38-4) ("City Defendants' Response Exh(s). __"), the Local Rule 56(a)2 Response to Plaintiffs' Statement of Facts (Dkt. 38-5) ("City Defendants' Response to Plaintiffs' Statement of Facts"), the Responding Memorandum of Law to Plaintiffs' Motion for Summary Judgment (Dkt. 38-6) ("City Defendants' Response to Plaintiffs"), the Local Rule 56(a)2 Statement of Facts in Opposition to Empire Dismantlement's Motion for Summary Judgment (Dkt. 39) ("City Defendants' Response to Empire's Statement of Facts"), and the Responding Memorandum of Law to Co-Defendants' Motion for Summary Judgment (Dkt. 39-1) ("Empire's Response to City Defendants").

On December 15, 2022, Plaintiffs filed a motion to strike several items of evidence submitted by City Defendants in response to Plaintiffs' Summary Judgment Motion (Dkt. 42) ("Plaintiffs' Motion to Strike Evidence"), and the Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment as to Defendants Comerford, Krug, and Coyne (Dkt. 42-1) ("Plaintiffs' Reply to City Defendants").[6]  Also filed by Empire on December 15, 2022, were the Memorandum of Law in Reply to

---

[6] Plaintiffs' Reply to City Defendants also contains Plaintiffs' argument in support of Plaintiffs' Motion to Strike Evidence.

Plaintiffs' Filed Opposition, and in Further Support of Empire's Motion for Summary Judgment (Dkt. 43) ("Empire's Reply to Plaintiffs"), the Memorandum of Law in Reply to the City of Buffalo's Filed Opposition, and in Further Support of Empire's Motion for Summary Judgment (Dkt. 44) ("Empire's Reply to City Defendants"), the Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Summary Judgment as to Defendant Empire Dismantlement Co. (Dkt. 45) ("Plaintiffs' Reply to Empire"), the City Defendants' Reply Memorandum of Law (Dkt. 46) ("City Defendants' Reply"), and the City Defendants' Responding Memorandum of Law to Plaintiffs' Motion to Strike and Exclude (Dkt. 47) ("City Defendants' Response to Motion to Strike Statement of Facts"). On December 16, 2022, Plaintiffs filed the Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion to Strike (Dkt. 48) ("Plaintiffs' Reply to Motion to Strike City Defendants' Statement of Facts").  On December 29, 2022, City Defendants filed the Responding Memorandum of Law to Plaintiffs' Second Motion to Strike (Dkt. 49) ("City Defendants' Response to Motion to Strike Evidence").  On January 2, 2023, Plaintiffs filed the Reply Memorandum of Law in Further Support of Plaintiffs' Cross-Motion to Strike (Dkt. 50) ("Plaintiffs' Reply to Motion to Strike Evidence").  Oral argument was deemed unnecessary.

Based on the following, Plaintiffs' Summary Judgment Motion should be DENIED; Empire's Motion should be GRANTED; City Defendants' Motion should be GRANTED in part and DENIED in part; Plaintiffs' Motion to Strike Facts is DENIED; and Plaintiffs' Motion to Strike Evidence is DENIED.

**FACTS**[7]

Plaintiff Maxim Levin ("Levin"), through Levin's real estate holding company Vodka Properties LLC ("Vodka Properties") (together, "Plaintiffs"), purchases deteriorating properties within Defendant City of Buffalo ("the City" or "Buffalo"), and renovates the properties to make them inhabitable.  Levin, through Vodka Properties, is the sole owner of the real property located at 393 Hampshire Street, Buffalo, New York (the "Property").  On August 17, 2018, Levin purchased the Property, financing the purchase with a $ 40,000 mortgage.  At the time of the purchase, the Property was improved with a 2,442 square foot, two-family dwelling with a total of six bedrooms (the "Building"), which was in need of repairs to be inhabitable.

Prior to Plaintiffs' purchase of the Property, the previous owner, LLC Bella Development ("Bella Development") obtained from the City's Department of Permit and Inspection Services ("DPIS") two building permits for repairs to the building including on June 15, 2017 for a complete roof tear-off and re-roof, and August 22, 2017 for front porch repairs.  Building Permits[8] at 2-3.  An asbestos survey performed by Advance Contracting Services on August 18, 2018, detected no asbestos at the Property. Asbestos Survey Report.[9]  After closing on the purchase of the Property, Levin set about making necessary repairs to the Building and Property.  On August 27, 2018, Plaintiffs obtained from the City's DPIS a building permit to tear out the Building's entire interior and replace walls with drywall, install new replacement vinyl windows and new

---

[7] Taken from the pleadings and motion papers filed in this action.
[8] Plaintiffs' Exh. S (Dkt. 28-20); Empire's Exh. L (Dkt. 30-13).
[9] Plaintiffs' Exh. H (Dkt. 28-9).

doors throughout, hang new vinyl exterior siding with new trim, replace the roof and install gutters. *Id*. at 4.

According to Levin, Plaintiffs' progress in renovating the Property slowed during the spring and early summer of 2019 while Levin dealt with an unrelated personal matter. Complaint ¶ 32. On June 28, 2019, Defendant Kevin Coyne ("Coyne"), an Inspector with the City's DPIS, issued a Notice of Violation ("Violation Notice"),[10] attaching a copy of a June 28, 2019 inspection report ("Inspection Report") indicating the Property, which was vacant, revealed several violations of the City's Property Maintenance Code ("PM Code"), Residential Code ("R Code"), and City Ordinances ("CO"). The specific violations included missing downspouts necessary for proper drainage, deteriorated, missing, or damaged siding, chipped and peeling paint on exterior walls and trim on all sides of the Building, numerous broken, missing, or boarded windows and doors, missing guard rails from the front porch creating a tripping hazard, trash and debris in the side yards, overgrown grass and weeds, a vacant building that is a constant source of complaints of criminal activity, and unpaid City rental registry fee totaling $ 350. At some unspecified date in August 2019, Defendant Tracy Krug ("Krug"), and Inspector with the City's DPIS, received a Buffalo Police complaint about a drug overdose death at the Property.

On September 23, 2019, George Berbary, Esq. ("Berbary"), who represented Plaintiffs in Buffalo City Housing Court ("Housing Court"), discussed the Violation Notice with Krug. Levin was not present for the conversation between Berbary and Krug, during which Krug claimed the Building was structurally unsound, a deficiency that was

---

[10] Plaintiffs' Exh. I (Dkt. 28-10).

not included in the Violation Notice. In response, Berbary showed Krug photographs of the Building and Property that did not reveal any structural damage to the Building and requested Plaintiff be permitted an opportunity to remedy the violations, but Krug ignored the request. Instead Krug, allegedly for improper purposes including personal animus toward Levin, requested from Defendant James Comerford ("Comerford"), Commissioner of Buffalo DPIS, an emergency demolition permit for the demolition of the Building so as to avoid judicial review of the Violation Notice. Comerford and Defendant Lou Petrucci ("Petrucci"), Deputy Commissioner of Buffalo DPIS, determined the Building was structurally unsound and in imminent danger of collapse in violation of Code and Ordinance of the City of Buffalo ("Buffalo Code"), Chapter 113 – Unsafe Buildings ("Ch. 113"), and on September 23, 2019, Comerford and Petrucci signed a Notice of Condemnation ("Condemnation Notice")[11] for the Building's demolition on an emergency basis, *i.e.*, without notice and an opportunity for a hearing to permit Plaintiffs to challenge the condemnation and proposed demolition of the Building. The Condemnation Notice specifically notes the Building is "vacant and abandoned," portions of the Building are "in a state of structural compromise" with holes in the roof, floors and walls and foundation issues, the Building's "condition is such that the likelihood of a fire exists," and "it poses a health and safety issue for the community." Condemnation Notice. The Condemnation Notice further provides that "[a]s this building is in partial structural failure and entering upon these premises poses imminent danger . . .," the Building was declared "condemned" and its demolition was ordered "as soon as possible," and waiver of the ten-day notification to the Building's owner was

---

[11] Plainitff's Motion Exh. J (Dkt. 28-11).

requested.  *Id*.  According to Plaintiffs, although the Condemnation Notice refers to the Building as being structurally unsound, City Defendants' file pertaining to the Property contains only eight photographs of the Building's exterior and nothing within the file indicates City Defendants ever inspected the Building's interior or structure in connection with obtaining the Condemnation Notice.  Complaint ¶¶ 56-58.

Plaintiffs maintain they were never notified of the Condemnation Notice and that an appearance before Housing Court on the Violation Notice was scheduled for October 21, 2019, but on September 25, 2019, the City contracted with Defendant Empire Dismantlement Co. ("Empire"), to demolish the Building and Empire demolished the Building that same day.  The demolition contract price was $ 42,900, an amount that was based on an allegedly incorrect assumption that the Building contained asbestos. Complaint ¶¶ 61-63.  According to Plaintiffs, in authorizing the demolition, Defendants failed to consider the availability of alternative measures for the Building such as shoring or bracing the foundation, as well as addressing the matter in Housing Court at the scheduled hearing on the Violation Notice so as to allow Plaintiffs to rectify any violations.  *Id*. ¶¶ 73-74.  Plaintiffs further maintain that since the demolition, Defendants have attempted to enforce a lien on the Property for the demolition costs.

On October 15, 2019, *i.e.*, after the Building had been demolished, the City of Buffalo Common Council ("Common Council") met and authorized Comerford to contract with Empire for the Building's demolition, but did not specifically authorize the Building to be demolished.  On October 21, 2019, the scheduled hearing on the Violation Notice was held in Housing Court before Buffalo City Court Judge Patrick M. Carney ("Judge Carney"), who commented that the Building had already been

demolished, that Levin was then incarcerated in a federal penitentiary,[12] and adjourned

Levin's housing court matters until March 12, 2020.  October 21, 2019 Tr.[13] at 2-4.[14]  At

the March 12, 2020 Housing Court hearing, Berbary informed Judge Carney that Levin

was no longer incarcerated and "could be around now with an ankle monitor," March 12,

2020 Tr.[15] at 2, an unidentified male advised a "retainer agreement for the demo" was

being sought, *id*. at 3, and Berbary reminded Judge Carney that the Building's

demolition had not been pursuant to a Housing Court order but was a "commissioner

demo."  *Id*. at 3.  Judge Carney responded his "only concern would be whether the

violations existed . . . ," *id*., and whether the demolition was "proper" or "above and

beyond the City's judgment."  *Id*. at 4.  Judge Carney continued that Plaintiffs' only issue

was whether the City negated Plaintiffs' ability to repair the violations in a timely fashion

which was not an issue concerning sentencing on the violations.  *Id*.  Berbary replied by

admitting the violations reported in the Violation Notice existed as of June 28, 2019,

when the Violation Notice was issued, entered on Levin's behalf a plea of guilty to such

violations, and agreed the matter would be scheduled for a sentencing hearing.  *Id*.  At

the conclusion of the March 12, 2020 Housing Court hearing, Judge Carney reiterated

"the nature and purpose of the [Building's] demolition will be an issue at sentencing,"

and advised information regarding the matter was expected prior to the sentencing.  *Id*.

at 5; Complaint ¶ 89.  Because of the COVID-19 pandemic, the next Housing Court

hearing had not taken place when the instant Complaint was filed on October 19, 2020,

---

[12] The nature of Levin's incarceration is not definitively revealed in the record.
[13] References to "October 21, 2019 Tr." are to pages of the transcript of the October 21, 2019 Housing Court hearing, filed as Plaintiffs' Exh. O (Dkt. 28-16) at 2-6.
[14] Matters pertaining to three properties owned by Vodka Properties were discussed during the October 21, 2019 hearing.
[15] References to "March 12, 2020 Tr." are to pages of the transcript of the March 12, 2020 Housing Court hearing, filed as Plaintiffs' Motion Exh. O (Dkt. 28-16) at 7-13.

but Defendants continued to assert Plaintiffs are responsible for the demolition costs, and that Plaintiffs' failure to reimburse the City for the demolition costs would result in a tax lien on the Property.  *Id*. ¶¶ 90-92.

Plaintiffs allege the demolition of the Building on the Property was in furtherance of the so-called "5 in 5" plan instituted by Defendant Buffalo Mayor Byron Brown ("Mayor Brown"), in August 2007 to demolish within the City and within five years, 5,000 homes deemed to be abandoned and unsafe.  Complaint ¶¶ 93-95.  According to Plaintiffs, Mayor Brown has maintained this "aggressive demolition plan well beyond five years," *id*. ¶ 95, asserting the plan remains in place with numerous properties demolished by Defendants in violation of each property owner's due process rights and in furtherance of Defendants' own personal agenda.  *Id*. ¶¶ 96-106.  Plaintiffs further allege the relevant provisions of the Buffalo Code and the Charter of the City of Buffalo ("City Charter"), are unconstitutional because they do not provide for owners of property within the City to have an opportunity for a hearing prior to a demolition, *id*. ¶¶ 107-08, and Defendants have consistently and repeatedly refused to comply with court orders and due process requirements regarding the demolition.  *Id*. ¶¶ 109-11.  According to Plaintiffs, Defendants' use of an emergency procedures for the demolition was abusive and arbitrary, Defendants acted with malice and reckless disregard for the Building's structural integrity, and no adequate post-deprivation remedy for the emergency demolition in the City exists.  *Id*. ¶¶ 112-15.  Plaintiffs allege the unlawful demolition caused the loss of the benefit of the repairs Plaintiffs made to the Property on which Plaintiffs remain obligated to make a mortgage payment, and that when fully renovated, the Building would have been worth in excess of $ 250,000.  *Id*. ¶¶ 116-17.

## DISCUSSION

### 1.    Summary Judgment

Plaintiff moves for partial summary judgment on its First, Second, Seventh, and Twelfth claims asserted against Defendants Comerford, Coyne, Krug, and Empire.  City Defendants move for summary judgment on all § 1983 claims, specifically, First through Tenth Claims, as well as on Empire's cross-claims.  Empire moves for summary judgment against all claims with the exception of the Tenth Claim that is asserted only against the City, as well as on Empire's cross-claims.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). "A fact is material if it 'might affect the outcome of the suit under governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)). A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof. *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cross Commerce Media, Inc. v.*

*Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

### A.  Judgment on the Pleadings

Preliminarily, the court addresses City Defendants' Motion insofar as City Defendants alternatively move pursuant to Fed.R.Civ.P. 12(c) ("Rule 12 __") for judgment on the pleadings.  "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).[16]  "'To survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (bracketed material in original)).  To survive a motion for judgment on the pleadings and, thus, judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption

---

[16] City Defendants do not move to dismiss pursuant to Rule 12(b)(6).

that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

Nevertheless, "'judgment on the pleadings is not appropriate if there are issues of fact

which if proved would defeat recovery, even if the trial court is convinced that the party

opposing the motion is unlikely to prevail at trial.'" *Lively*, 6 F.4th at 301 (quoting *Dist.*

*No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d

751, 761 (D.C. Cir. 2019) (internal quotation marks omitted)).

      "In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider

the complaint as well as 'any written instrument attached to [the complaint] as an exhibit

or any statements or documents incorporated in it by reference.'" *Kalyanaram v.*

*American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742

F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127,

130 (2d Cir. 2001)) (bracketed material in original).  On a motion for judgment on the

pleadings, "'a court may consider ... matters of which judicial notice may be taken, [and]

documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied

on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d

Cir. 2002) (internal quotation marks omitted; bracketed material and ellipses in

original)).  The court, however, "may not resolve the motion by weighing the plausibility

of competing allegations or by considering evidence extrinsic to the non-movant's

pleading without converting the motion to one for summary judgment." *Lively*, 6 F.4th at

306.

      In the instant case, City Defendants' Motion is premised on the argument that the

demolition of the Property was undertaken on an emergency basis pursuant to which no

pre-deprivation hearing was required.  City Defendants' Memorandum, *passim*.[17]  In

support of this argument, City Defendants rely on numerous exhibits which are neither

attached to the Complaint nor incorporated by reference into the Complaint, and of

which judicial notice may not be taken including, *e.g.*, photographs of the Property taken

in 2017, Plaintiffs' Exh. D D(kt. 31-5) and in 2019, Plaintiffs' Exh. G (Dkt. 31-8), a copy

of a list of complaints made to the City of Buffalo Police ("Buffalo Police") pertaining to

the Property, Plaintiffs' Exh. H (Dkt. 31-9), copies of transcripts of the deposition of

several parties to this action such as Comerford, Plaintiffs' Exh. O (Dkt. 31-16), and

Levin, Plaintiffs' Exh. Q (Dkt. 31-18), and transcripts of Housing Court proceedings,

Plaintiffs' Exh. R (Dkt. 31-19).  City Defendants' reliance on these exhibits to establish

their argument that the condition of the Building and Property supported the emergency

demolition of the same without a pre-deprivation hearing requires converting City

Defendants' motion for judgment on the pleadings to one for summary judgment.

*Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) ("[A] district court acts properly

in converting a motion for judgment on the pleadings into a motion for summary

judgment when the motion presents matters outside the pleadings . . . .") (citation

omitted).  Furthermore, because City Defendants argue in support of summary

judgment as an alternative to judgment on the pleadings, Plaintiffs need not be given

notice of the conversion.  *See Hernandez*, 582 F.3d at 307 ("Ordinarily, formal notice is

not required where a party 'should reasonably have recognized the possibility that the

motion might be converted into one for summary judgment [and] was [neither] taken by

---

[17] The court notes City Defendants, with respect to Plaintiffs' 14 separately enumerated claims, do not
present a separate argument for judgment on the pleadings; rather, City Defendants' argument is an
intermingling of considerations pertaining to both judgment on the pleadings and summary judgment.

surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" (quoting *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir. 1986) (alterations in *Villante*))).  Accordingly, City Defendants' Motion should be DENIED as to the alternative request for judgment on the pleadings pursuant to Rule 12(c) with two exceptions.

Specifically, although City Defendants argue the Complaint fails to allege the individual City Defendants' participation in the alleged constitutional deprivations as required for § 1983 liability, City Defendants' Memorandum at 11-12 (citing *Wright v. Smith*, 21 F.3d 496 (2d Cir. 1994), and *Spavone v. NYS Dep't of Correctional Services*, 719 F.3d 127 (2d Cir. 2013), a plain reading of the Complaint establishes Plaintiffs allege personal involvement in the conduct leading to the demolition of the Building including, *inter alia*, that Defendant Krug, as a City Building Inspector, targeted the Property for demolition out of personal animus despite having transferred to a different municipal department when the Building was demolished and thus was without any authority to recommend the Building be demolished, Complaint ¶¶ 40-51, and Defendants DPIS Commissioner Comerford and DPIS Deputy Commissioner Petrucci prepared, signed and issued the Demolition Notice despite being aware of numerous improprieties in the condemnation process employed for the emergency demolition, *id*. ¶¶ 51-58, and on June 28, 2019, Defendant Building Inspector Coyne cited the Plaintiffs for various building code violations, but not for structural violations.  *Id*. ¶¶ 33-35. Plaintiffs also allege Defendant Mayor Brown was involved in the events giving rise to this action by maintaining and pursuing the aggressive 5 in 5 plan to demolish structures deemed unsafe by the City, including the Building, often without affording the

owners of demolished building pre-deprivation due process.  *Id*. ¶¶ 93-106.

Accordingly, City Defendants' Motion to dismiss for failure to allege the requisite

personal involvement of the § 1983 claims should be DENIED.

City Defendants' argument that all official capacity claims against City

Defendants must be dismissed as duplicative of the same claims asserted against the

City, City Defendants' Memorandum at 12, is neither addressed nor disputed by

Plaintiffs.  Significantly, "official-capacity suits generally represent only another way of

pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502

U.S. 21, 25 (1991) (internal quotation marks and citations omitted)).  Accordingly, City

Defendants' Motion for judgment on the pleadings should be GRANTED with regard to

all official capacity claims asserted against City Defendants that are duplicative of

claims asserted against the City.

    **B.**    **Motions to Strike**

Plaintiffs filed two motions to strike, the first seeking to strike City Defendants'

Statement of Facts, and the second seeking to strike City Defendants' evidence.

    **1.**    **Motion to Strike City Defendants' Statement of Facts**

In support of their Motion to Strike City Defendants' Statement of Facts, Plaintiffs

argue City Defendants' Statement of Facts filed in support of City Defendants' Motion

does not comply with Local Rules of Civil Procedure for the W.D.N.Y. 56(a)(1) ("Local

Rule 56__") which requires a statement of material facts filed in support of a motion for

summary judgment be a "short, and concise statement."  According to Plaintiffs, City

Defendants' Statement of Facts is neither short nor concise, but "is an 18-page, 87-

paragraph statement of material facts that is riddled with misleading, irrelevant, and

factually unsupported statements of 'fact' – including legal questions and statements

that the City Defendants masquerade as being a factual statement."  Plaintiffs'

Response to City Defendants at 32.  Plaintiffs further argue that upon the court's striking

City Defendants' Statement of Facts for failure to comply with Local Rule 56(a)(1), the

court should also deny City Defendants' Motion seeking summary judgment based on

City Defendants' failure to submit a statement of material facts in compliance with Local

Rule 56(a)(1).  *Id*. at 33.  In opposition to Plaintiffs' Motion to Strike City Defendants'

Statement of Facts, City Defendants argue that even if the court determines City

Defendants' Statement of Facts fails to comply with Local Rule 56(a)(1), there is no

legal basis supporting the drastic relief of striking City Defendants' Statement of Facts;

rather, City Defendants argue Plaintiffs' can oppose the asserted deficiencies in City

Defendants' Statement of Facts in the statement of material facts Plaintiffs' are required

to file pursuant to Local Rule 56(a)(2) in opposition to City Defendants.  City

Defendants' Response to Motion to Strike Statement of Facts at 1.  City Defendants

further argue that despite protesting the number of paragraphs in City Defendants'

Statement of Facts, Plaintiffs specifically identify only two paragraphs with which

Plaintiffs take issue, including paragraphs 6 and 33.  *Id*. at 2.  City Defendants further

maintain that other courts within the Second Circuit have imposed far less drastic relief

when a party fails to file any statement of material facts, which is consistent with the

Second Circuit's instruction that a local rule requirement of form should not be enforced

so as to cause any party to lose any right based on a nonwillful failure to comply.  *Id*. at

3 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)).  In further support

of their motion to strike City Defendants' Statement of Facts, Plaintiffs argue that in

opposing the motion, City Defendants acknowledge their non-compliance with Local Rule 56(a)(1)'s requirement that statements of material facts submitted in support of summary judgment be "short and concise," asserting that although the Western District of New York does not specifically limit the number of pages or paragraphs for such statement, other district courts within the Second Circuit impose such limits, all of which are surpassed by City Defendants' Statement of Facts, and urge this courts to strike City Defendants' Statement of Facts based on noncompliance with such other district court's limits. Plaintiffs' Reply to Motion to Strike City Defendants' Statement of Facts at 1-2. According to Plaintiffs, City Defendants' Statement of Facts serves only to complicate the briefing pertaining to the pending summary judgment motions and distracts the court with facts which have no bearing on such motions. *Id*. at 2-3.

Whether City Defendants' Statement of Facts complies with Local Rule 56(a)(1)'s requirement that such statement of facts be "short and concise" is to be determined relative to the pleadings and issues in the case. *See*, *e.g.*, *Olin Corp. v. Lamorak Insurance Co*., 322 F.Supp.3d 818, 839 (S.D.N.Y. 2018) ("'[t]he appropriate length of the 'short and concise' statement contemplated by Local Civil Rule 56.1 varies by case complexity,' and there is no hard and fast page limit." (quoting *In re Namenda Direct Purchaser Antitrust Litig*., 2017 WL 6606629, at *1 (S.D.N.Y. Dec. 20, 2017)). In the instant case, the court's review of City Defendants' Statement of Facts reveals they address the Complaint's 118 factual allegations and fourteen separate claims for relief, ten of which are asserted against City Defendants. Even if the statement is not in strict compliance with Local Rule 56(a)(1), the Second Circuit has held that the purpose of local rules requiring a party moving for summary judgment file a short and concise

statement of material facts for which the movant contends there is no genuine dispute is "to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz*, 258 F.3d at 74. Although before the Second Circuit in *Holtz*, were local rules regarding statements of undisputed material facts for the Southern and Eastern Districts of New York, *id*. at 73, given the similarity of such local rules to the Western District of New York's Local Rule 56, and in the absence of any Second Circuit opinion considering Local Rule 56, the court finds *Holtz* instructive with regard to the instant dispute. Significantly, in *Holtz*, the Second Circuit holds that such a statement is not intended to be "a vehicle for making factual assertions that are otherwise unsupported in the record," *id*. at 74, and where the assertions are not supported by the record, "those assertions should be disregarded and the record reviewed independently." *Id*. Simply put, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id*. at 73. This is consistent with Fed.R.Civ.P. 83(a) and the Second Circuit's admonishment that "[a] local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." *See Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005) (recognizing "a district court has inherent authority to waive its local rules . . . ."). Moreover, the court is more than capable of discerning statements in City Defendants' Statement of Facts which are not truly undisputed factual statements but, rather, are disputed facts, legal arguments, or legal conclusions, and to overlook or disregard any such noncompliant statements. *Holtz*, 258 F.3d at 74.

Plaintiffs' Motion to Strike City Defendants' Statement of Facts is, therefore, DENIED.

### 2.    Motion to Strike Evidence

Plaintiffs move to strike evidence City Defendants' filed in opposition to Plaintiffs' Motion for partial summary judgment including the Affidavit of City Building Inspector John Stephens ("Stephens") ("Stephens Affidavit"),[18] and several photographs of the Property purportedly taken by Google Maps[19] in 2017 ("2017 photo"),[20] and two different Google Maps photographs of the Property taken in 2018 (respectively, "first 2018 photo," and "second 2018 photo").[21]  In support of the motion to strike, Plaintiffs argue these submissions are irrelevant to the determinations of Plaintiffs' claims, and are "riddled" with hearsay, speculation, surmise, and conjecture.  Plaintiffs' Reply to City Defendants at 1.  Plaintiffs' take particular issue with Stephens's averments that he was inside the Building "in 2017 or 2018," and "observed that the building was wide open, there were still serious [ ] structural issues that had not been repaired, and I had repeated issues with garbage and other debris being left on the property the whole time it was owned by [Levin]," *id*. at 1-3 (quoting Stephens Affidavit ¶ 13), as well as with the fact that the photos were taken in 2017 and 2018, more than one year before the Building's demolition and, as such, do not accurately portray the condition of the Property when the Demolition Notice was issued.  *Id*. at 3.  In opposition, City

---

[18] City Defendants' Response Exh. A (Dkt. 38-1).

[19] "Google Maps is a web service that provides detailed information about geographical regions and sites worldwide.  In addition to conventional road maps, Google Maps offers aerial and satellite views of many locations.  In some cities, Google Maps offers street views comprising photographs taken from vehicles." What is Google Maps and how do you use it? – Tech Target, available at https://www.techtarget.com/whatis/definition/Google-Maps (last visited July 13, 2023).

[20] City Defendants' Response Exh. B (Dkt. 38-2).

[21] Respectively, City Defendants' Response Exhs. C and D (Dkts. 38-3 and 38-4).  Both the first and second 2018 photos were taken in September 2018, but depict the Property from different angles.

Defendants argue the evidence Plaintiffs seek to strike is relevant to the nature and amount of renovations Plaintiffs claim to have conducted at the Property prior to the Building's demolition, a fact that is in dispute in this action. City Defendants' Response to Motion to Strike Evidence at 1-4. City Defendants further argue Plaintiffs fail to specify what statements in the Stephens Affidavit City Defendants maintain are hearsay, *id*. at 4, any evidence challenged by Plaintiffs may be reducible to admissible form at trial, *id*. at 5, and even if not admissible, may be used to impeach Plaintiffs' claims. *Id*. at 5-6. City Defendants also argue that rather than the "wholesale disregarding swaths of evidence" by striking the evidence as Plaintiffs request, the court may simply disregard any portions of the evidence that are irrelevant. *Id*. at 6. In further support of the motion, Plaintiffs argue it is "necessary to fairly resolve the inadmissibility of the City Defendants' proffered material" on summary judgment, Plaintiffs' Reply to Motion to Strike Evidence at 1-3, and repeat their assertion that the challenged evidence is inadmissible. *Id*. at 3-4.

"Because the purpose of summary judgment is to weed out cases in which 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law,' Fed.R.Civ.P. 56(c), it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). The district court resolves questions regarding admissibility on summary judgment, *id*. (citing *Spring,* 99 U.S. at 658 (jury decides the weight of the evidence once the court has admitted the evidence),

but "disputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve. . . ."  *Id.* (citing *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir.1995).

"[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997). *See* Fed. R. Civ. P. 56(c)(1)(B) (requiring that facts be supported by admissible evidence); Fed. R. Civ. P. 56(c)(2) (permitting objections to inadmissible facts asserted at summary judgment stage).  As such, evidence and statements that would be inadmissible at trial, such as inadmissible hearsay, cannot be used to support or oppose summary judgment.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial"); *see also Raskin*, 125 F.3d at 66 ("Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact ... it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment.") (internal quotations and citations omitted).  "In deciding an evidentiary question, a court may 'strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.'"  *Seife v. Food & Drug Admin.*, 2019 WL 1382724, at *1 (S.D.N.Y. Mar. 27, 2019) (quoting *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds by Schnabel v. Abramson*, 232 F.3d 83 (2d Cir. 2000)).  In the alternative, rather than granting a motion to strike, the court may "simply 'decline[ ]

to consider evidence' from the inadmissible declarations." *Id.* (quoting *Fabrication*

*Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 59 n.5 (2d Cir. 1995)).

      In the instant case, although Plaintiffs characterize the Stephens Affidavit as

inadmissible hearsay, as City Defendants observe, City Defendants' Response – Motion

to Strike Evidence at 4, Plaintiffs fail to identify any such hearsay statements or to argue

why any particular statement is hearsay, an argument to which Plaintiffs assert no

opposition in reply.  The court's thorough review of the Stephens Affidavit fails to reveal

any averments qualify as hearsay, *i.e.*, a statement that is not based on personal

knowledge and offered for the truth of the matter asserted.  Fed.R.Evid. 801(c).  Rather,

in his affidavit, Stephens describes his personal observations and recollections of the

work that was performed at the Property since Stephens commenced working as a

building inspector on March 13, 2017, Stephens Affidavit ¶ 1, at which time Stephens

was assigned to inspect the Property in connection with three building permits issued in

2017 and 2018 for repairs to the Property.  *Id*. ¶ 3.  Stephens describes his familiarity

with the Property commenced while the Property was owned by Bella Development, the

entity that pulled the first two of the three construction permits for the Property, *id*. ¶¶ 4-

6, with Stephens issuing a Notice of Violation for the Property on March 23, 2018, prior

to Plaintiffs' purchase of the Property.  *Id*. ¶¶ 7-8.  After Plaintiffs purchased the

Property on August 17, 2018, Plaintiffs pulled the third construction permit for which

Stephens's subsequent inspections revealed little of the work on any of the three

permits was ever completed "and there were repeated issues at the property, *id*. ¶ 9,

and Stephens warned Levin that the previous work on the roof, which work was done

while the Property was owned by Bella Development, was improper and needed to be

redone.  *Id*. ¶ 10.  Although Levin agreed the roof repairs were deficient and agreed to rectify the problem, Levin failed to make the additional repairs, nor did Levin ever comply with Stephens's request that Levin contact Stephens prior to commencing any work on the Property which Stephens avers is standard for all building permits to ensure building code compliance and safety, such that the work either was not done or was not properly done, and the Property remained in a deteriorated and unsafe condition before it was demolished.  *Id*. ¶¶ 11-12.  Stephens further avers that he was inside the Building at least once in 2017 or 2018 at which time Stephens personally observed the condition of the Building including "serious [ ] structural issues that has not been repaired," and that after Plaintiffs purchased the Property, Stephens "had repeated issues with garbage and other debris being left on the property the whole time it was owned by Max [Levin]."  *Id*. ¶ 13.  Stephens concludes there were "repeated and serious issues with the building not being secured, most frequently a side door, that allowed for frequent illegal activity and unsafe conditions at the property," adding that Stephens "had to tell Max [Levin] to address this numerous times."  *Id*. ¶ 14.  Significantly, none of these statements qualify as hearsay because Stephens is reporting statements Levin purportedly made to him.  Fed.R.Evid. 804(b)(3) (admissions of a party are not hearsay).  Furthermore, insofar as Plaintiffs maintain the averments within the Stephens Affidavit are irrelevant because they fail to establish Stephens was inside the Building after it was purchased by Plaintiffs on August 17, 2018, Plaintiffs' Reply to City Defendants' Response at 2-3, the averments are relevant to the condition of the Property when it was purchased by Plaintiffs on August 17, 2018, which City Defendants maintain was never improved by Plaintiffs prior to the Building's demolition

on September 25, 2019.  Accordingly, the Stephens Affidavit should not be stricken as irrelevant.

Similarly, Plaintiffs seek to strike as irrelevant City Defendants' photographs of the Property in 2017 and 2018, asserting the photographs do not depict the condition of the Property which it was demolished on September 25, 2019.  As with regard to the Stephens Affidavit, although the photographs depict the condition of the Property at least one year before it was demolished, if Plaintiffs had not conducted any repairs between their purchase on August 17, 2018 and the Building's demolition on September 25, 2019, a fact that is in dispute, a jury viewing the photographs could conclude the photographs accurately depict the Property at the time of the demolition.  Accordingly, the photographs should not be stricken.

Plaintiffs' Motion to Strike Evidence is DENIED.

### C.    Merits of Summary Judgment Motions

As stated, the § 1983 claims are asserted against all Defendants except for the Tenth Claim which is asserted only against the City, whereas the common law claims are asserted only against Defendant Empire.  Plaintiffs move for partial summary judgment on the First, Second, Seventh, and Twelfth Claims only as asserted against Defendants Comerford, Coyne, Krug, and Empire.  The First Claim asserts a Fourteenth Amendment violation of procedural due process; the Second Claim asserts a Fourteenth Amendment violation of substantive due process; the Seventh Claim alleges an unreasonable search and seizure in violation of the Fourth Amendment; and the Twelfth Claim alleges trespass and trespass to chattel in violation of New York common law.  Defendant Empire argues in support of summary judgment on all the § 1983

claims except for the Tenth Claim that is not asserted against Empire, as well as on all

the common law claims, and also seeks summary judgment on Empire's cross-claims

against City Defendants.  City Defendants argue in support of summary judgment on all

the § 1983 claims and on Empire's cross-claims.

### 1.  § 1983 Claims

Insofar as Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), §

1983 permits imposing civil liability upon persons who, acting under color of state law,

deprive an individual of rights, privileges, or immunities secured by the Constitution and

laws of the United States.  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225

(2d Cir. 2004) (quoting 42 U.S.C. § 1983).  Section 1983, however, "'is not itself a

source of substantive rights.'"  *Id*. (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3

(1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights

elsewhere conferred' . . . ."  *Id*.  To succeed on a § 1983 claim, a plaintiff must establish

the challenged conduct "(1) was attributable to a person acting under color of state law,

and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution

or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir.

1997).  *See Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (describing the elements of a

§ 1983 claim as (1) the deprivation of a federal constitutional or statutory right, and (2)

by a person acting under color of state law (citing *Gomez v. Toledo*, 446 U.S. 635, 640

(1980))).  Thus, "[t]he first step in any such claim is to identify the specific constitutional

right allegedly infringed."  *Whalen*, 126 F.3d at 405 (citing *Graham v. Connor*, 490 U.S.

386, 394 (1989); and *Baker*, 443 U.S. at 140).  In the instant case, Plaintiffs' § 1983

claims are based on asserted violations of the Fourth, Fifth, and Fourteenth Amendments.

### a.    § 1983 Claims Against Empire

Preliminarily, insofar as Plaintiffs' § 1983 claims, except for the Tenth Claim, are asserted against all Defendants, Defendant Empire argues in support of summary judgment that because Empire is a private entity it does not satisfy the requirements pursuant to which a private actor may be found to have acted under color of state law as required for § 1983 liability, Empire's Memorandum at 10-13, including that Empire is not a state actor under the compulsion test, *id*. at 13-14, the record does not support that Empire is liable on the § 1983 claims based on the joint action or close nexus test, *id*. at 14-16, nor does the record establish § 1983 liability under the public function test. *Id*. at 16-17. In opposition, Plaintiffs argue the record shows at least a question of fact as to whether Empire is liable on the § 1983 claims based on the joint action or close nexus test. Plaintiffs' Response – Empire at 2-5. In further support of summary judgment on the § 1983 claims, Empire points out that each of the three judicial opinions on which Plaintiffs rely was rendered by a federal court outside the Second Circuit and, in any event, is factually distinguishable from the instant case. Empire's Reply to Plaintiffs at 6-8. A careful review of the papers establishes summary judgment should be GRANTED on the § 1983 claims as asserted against Empire.

As stated, a § 1983 claim requires the plaintiff establish the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen*, 126 F.3d at 405. "To act under color of state law or authority

for purposes of Section 1983, the defendant must 'have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).  This occurs where a defendant's conduct "satisfies the state-action requirement of the Fourteenth Amendment," *i.e.* "the defendant's alleged infringement of the plaintiff's federal rights is 'fairly attributable to the State.'"  *West*, 487 U.S. at 49 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  Accordingly, "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *West*, 487 U.S. at 50.  Where, however, as here, the challenged conduct is not by a public employee but by a private entity, to succeed on a Fourteenth Amendment due process claim, a plaintiff must establish the challenged conduct leading to the alleged "constitutional deprivation is 'fairly attributable' to the state."  *Barrows v. Becerra*, 24 F.4ᵗʰ 116, 135 (2d Cir. 2022) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001)).

A private entity's actions "'are attributable to the State if there is a sufficiently close nexus between the State and the challenged action of the entity so that the action of the latter may be fairly treated as that of the State itself.'"  *Barrows*, 24 F.4th at 135 (quoting *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks and alteration omitted)).  To assist with discerning whether the sufficiently close nexus exists between the State and the private entity's challenged action, the Second Circuit "has identified three 'main tests'" including "'(1) when the entity acts pursuant to the coercive power of the state or is controlled by the state ('the

compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); [and] (3) when the entity has been delegated a public function by the state ('the public function test')." *Id*. (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (alteration and internal citation omitted)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant*, 691 F.3d at 207 (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). Here, Plaintiffs argue the second doctrine, *i.e.*, "joint action" or "close nexus" test applies. Plaintiffs' Response to Empire at 3-5.

"A nexus of 'state action' exists between a private entity and the state when 'the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *Cranley v. Nat'l Life Ins. Co.,* 318 F.3d 105, 112 (2d Cir. 2003) (internal quotations and alterations omitted)). "'[T]he mere existence of a contract between a governmental agency and a private party'" is not "sufficient to create state action." *Rambaldi v. City of Mounty Vernon*, 2003 WL 23744272, at * 4 (S.D.N.Y. Mar. 31, 2003) (quoting *Siescu v. Emmet County Dept. of Social Servs.*, 942 F.2d 372, 375 (6th Cir. 1991), *aff'd*, 96 Fed.Appx. 775 (2d Cir. 2004). Rather, "[a] private actor can only be 'a willful participant in joint activity with the

State or its agents' if the two share some common goal to violate the plaintiff's rights."

*Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (quoting *Cunningham v. Southlake*

*Center for Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir.1991) ("A charge of joint

action amounts to alleging some agreement between private and public actors to violate

plaintiff's constitutional rights.  A requirement of the joint action charge therefore is that

both public and private actors share a common, unconstitutional goal." (internal citations

omitted)); and citing *Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272

(2d Cir.1999)).  Each test is applicable to a municipality and its contractors such as

Defendants City and Empire.  *See Chan v. City of New York,* 1 F.3d 96, 107 (2d Cir.

1993) (acknowledging the three tests and concluding contractor's failure to pay

minimum wage was state action because it was "effectively required" by municipal

contracting rules).

In opposition to Empire's Motion, Plaintiffs rely, for the proposition that Empire's

action in demolishing the Building may be treated as action by the City, on *Stypmann v.*

*City and County of San Francisco*, 557 F.2d 1338 (9th Cir. 1977), *Tompkins v. Village of*

*Tinley Park*, 566 F.Supp. 70 (N.D.Ill. 1983) ("*Tompkins*"), and *Verdi v. City of*

*Philadelphia*, 553 F.Supp. 334 (E.D.Pa. 1982) ("*Verdi*").  Plaintiffs' Response to Empire

at 3-5.  In *Stypmann*, the court found a private towing company who contracted with the

city to tow motor vehicles was acting under color of state law because the statutory

scheme pursuant to which vehicles were towed by the defendant towing company,

including detaining the towed vehicle and asserting the lien for towing and storage

charges, was solely intended to accomplish the defendant city's traffic laws such that

the private towing company was a "willful participant in a joint activity with the State or

its agents," and the towing company's actions "may be fairly treated as that of the State itself." *Stypmann*, 557 F.2d at 1341-42.  In *Tompkins*, the court found on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), that private parties who entered private property to install pipes connecting the defendants' residential sewers to the plaintiff's building's sewer service at the direction of the municipality were state actors for purposes of § 1983 liability because the private parties relied on the municipality's consent and police supervision to enter the plaintiff's property to make the sewer connections.  *Tompkins*, 566 F.Supp. at 74-75.  In *Verdi*, the court denied the defendant demolition company's motion to dismiss a § 1983 claim asserted by the plaintiff in connection with the defendant's demolition of the plaintiff's property pursuant to a contract with the defendant city and the city's building code without providing the plaintiff with a pre-deprivation notice.  *Verdi*, 553 F.Supp. at 336.  *Verdi*, however, has subsequently been criticized as incorrectly relying on *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982) ("*Lugar*"), where the Court "emphasized that its holding must be understood in the context of a particular legal mechanism . . . that at least when the state creates a system permitting private parties to substitute their judgment for that of a state official or body, a private actor's mere invocation of state power renders that party's conduct actionable under § 1983."  *Cruz v. Donnelly*, 727 F.2d 79, 81-82 (3rd Cir. 1984).  As relevant, *Lugar* involved a creditor which, in seeking prejudgment attachment of a debtor's property, filed an *ex parte* petition pursuant to which the property was attached.  The three cases are thus factually distinguishable from the instant case, Further, these three cases are from federal courts within other than the Second Circuit and, as such, not binding on this court, *see United States v. Garcia*, 938 F.2d 12, 15 (2d

Cir. 1991) (circuit court not bound to apply holding of sister circuit); *Scharr v. Selective Insurance Company of New York*, 2017 WL 4778779, at *7 (W.D.N.Y. Oct. 23, 2017) (determining that even if case from a sister circuit on which the plaintiff relied were on point, this court was not bound by it), and more recent cases from within the Second Circuit are to the contrary.

In *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982), the Supreme Court specifically held that acts "by private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government . . . do not become acts of the government by reason of their significant or even total engagement in performing public contracts."   In *Chompupong v. City of Schenectady*, 2019 WL 3321874 (N.D.N.Y. July 24, 2019) ("*Chompupong*"), the court, relying on *Rendell-Baker*, dismissed § 1983 claims asserted by the plaintiff building owners against a private demolition company and the successful bidder for the demolition.  In *Chompupong*, as in the instant action, the plaintiffs asserted § 1983 claims under the Fourth, Fifth, and Fourteenth Amendment against the defendant demolition company arguing the demolition resulted from the joint action of the demolition company with the defendant municipality that ordered the emergency demolition.  *Chompupong*, 2019 WL 3321874, at * 4.  In dismissing the § 1983 claims against the defendant demolition company, the court also rejected the plaintiffs' reliance on *Verdi* for disregarding *Lugar*'s "critical limitation," *i.e.*, the narrow application of joint action where the facts established the defendant creditor sought prejudgment attachment pursuant to a particular mechanism authorizing "state officials [to] attach property on the *ex parte* application of one party to a private dispute," thereby permitting the substitution of the private party's

judgment for that of a state official. *Chompupong*, 2019 WL 3321874, at * 5 (observing in *Lugar*, the Court found the challenged action qualified as state action because of "the particular context of prejudgment attachment" through one party's *ex parte* application). Similar to the instant case, in *Chompupong*, the factual allegations established the defendant municipality made the decision to demolish the subject building without any input from the demolition company which "was merely the contractor who submitted the lowest bid," and the case was dismissed as against the demolition company. *Id*. at * 6.

Here, Empire's involvement was limited to the physical demolition of the Building on the Property on September 25, 2019, pursuant to a contract with the City that was awarded based Empire's submission of the winning, *i.e.*, lowest, bid for the demolition. There is also no evidence that Empire had any role in the decision that the Building should be demolished or in the procedures for obtaining the demolition permit on an emergency basis. Accordingly, there is no basis in the record on which to find Empire's demolition of the Building on the Property constituted joint action with the City Defendants, such as collaboration between Empire and the City in effectuating the demolition, and summary judgment should be GRANTED in favor of Empire on the § 1983 claims based on a lack of state action by Empire.

### b.   § 1983 Claims Against City Defendants

Plaintiffs move for partial summary judgment against City Defendants Comerford, Krug, and Coyne on the First (Fourteenth Amendment procedural due process) and Second (Fourteenth Amendment substantive due process) Claims, and against City Defendants and Empire on the Seventh (Fourth Amendment unreasonable search and

seizure) Claim.  Plaintiffs' Memorandum at 2.[22]  City Defendants move for summary

judgment on all ten § 1983 claims.[23]  City Defendants' Memorandum at 18-45.

### 1.    First and Second Claims – Procedural and Substantive Due Process

Plaintiffs' First Claim alleges Defendants, in condemning the Building as

structurally unsound and ordering its emergency demolition without providing Plaintiffs

with any notice and an opportunity to be heard regarding the planned demolition

deprived Plaintiffs of procedural due process in violation of the Fourteenth Amendment.

Complaint, First Claim.  On summary judgment, Plaintiffs address both the First Claim

and the Second Claim (together, "Due Process Claims") in a single argument, and only

with regard to Defendants Comerford, Coyne, and Krug.  Plaintiffs specifically argue

that although Defendants' invocation of emergency procedures to condemn the Building

and by-pass ordinary procedures to demolish the Building permitted the demolition

without providing Plaintiffs with a hearing and opportunity to be heard prior to the

demolition, the condition of the Building did not support its demolition on an emergency

basis, Plaintiffs' Memorandum at 4-17, and the post-deprivation remedies available to

Plaintiffs are insufficient to satisfy procedural due process, *id*. at 17-19, nor would the

City have been unduly burdened by waiting until the Housing Court hearing on October

21, 2019 regarding the Violation Notice was held before demolishing the Building.  *Id*. at

19-20.  In opposition, City Defendants challenge Plaintiffs' arguments as based on

---

[22] Plaintiffs' argument in support of their motion for partial summary judgment on their Twelfth Claim asserting against only Defendant Empire trespass and trespass to chattels in violation of New York common law, Plaintiffs' Memorandum at 2, is addressed below.  *See* Discussion, *infra,* at 80-82.

[23] As discussed, Discussion, *supra*, at 38, the undersigned is recommending granting summary judgment in favor of Empire based on Empire's argument that, as a private entity, Empire cannot be held liable on the § 1983 claims for lack of the required degree of state action required for § 1983 liability.  Accordingly, the § 1983 claims are not further addressed with regard to Defendant Empire.

portions of the individual City Defendants' depositions that are taken out of context and mischaracterized, City Defendants' Response to Plaintiffs at 3-5, and that, in any event, the availability of a proceeding pursuant to N.Y. Civ. Prac. L. & R. Art. 78 ("Article 78 proceeding") proceeding to address Plaintiffs' claims is an adequate post-deprivation remedy satisfying procedural due process. *Id*. at 6-7. In further support of summary judgment, Plaintiffs argue the evidence on which they rely establishes City Defendants' decision to invoke the emergency or exigent circumstances procedures to condemn and demolish the Building without affording Plaintiffs a pre-deprivation hearing was arbitrary and an abuse of discretion in violation of Fourteenth Amendment due process, Plaintiffs' Reply to City Defendants at 4-6, and the availability of an Article 78 proceeding is not an adequate post-deprivation remedy where, as here, such proceeding would neither cure the constitutional infirmity of the demolition nor erase the risk of erroneous deprivation inherent in the process that was afforded Plaintiffs because the damages Plaintiffs seek in the instant action are not available through an Article 78 proceeding. *Id*. at 6-9.

In Support of City Defendants' Motion, City Defendants argue with regard to the First Claim alleging a deprivation of procedural due process that the Building's deteriorated condition relieved City Defendants of the usual obligation of providing Plaintiffs with a pre-deprivation hearing prior to demolishing the Building, and an adequate post-deprivation remedy, *i.e.*, an Article 78 proceeding, exists in New York. City Defendants' Memorandum at 18-22. With regard to the Second Claim alleging a violation of substantive due process, City Defendants argue Plaintiffs cannot demonstrate the challenged government action was "'arbitrary, conscience-shocking, or oppressive in a constitutional sense' and not merely 'incorrect or ill-advised,'" *id*. at 22

(quoting *Kaluczky v. City of White Plains*, 57 F.3d 2020 (2d Cir. 1995)), and with regard to Plaintiffs' substantive due process claim, that Plaintiffs' constitutional deprivation claim, if any, arises based on the Fourth Amendment's prohibition against unreasonable seizures and the Fifth Amendment Takings Clause thus barring any substantive due process claim. *Id*. at 23-26. In opposition to City Defendants' Motion, Plaintiffs argue the "competent evidence" required to support the invocation of emergency procedures to condemn and demolish the Building was lacking such that City Defendants' use of such procedures was either arbitrary or an abuse of discretion, Plaintiffs' Response to City Defendants at 4-10, the arbitrary nature of the emergency demolition cannot be cured through resort to an Article 78 proceeding, *id*. at 10-12, and City Defendants' emergency demolition of the Building amounted to "fundamental procedural irregularity" supporting Plaintiffs' substantive due process claim. *Id*. at 12-14. In further support of summary judgment, City Defendants argue the deposition testimony of City Defendants establish the emergency demolition procedures were properly invoked in seeking the demolition of the Building, City Defendants' Reply at 2-3, Plaintiffs' due process claims could be addressed in an Article 78 proceeding, *id*. at 4, and the emergency demolition of the Building did not occur under circumstances that were "arbitrary" or "outrageous" as required for a substantive due process violation. *Id*. at 5.

The Due Process Clause of the Fourteenth Amendment contains both a procedural component and a substantive component. *Zinerman v. Burch*, 494 U.S. 113, 125 (1990). The procedural component requires that constitutionally adequate procedures must be provided before a person may be deprived of life, liberty, or property, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985), whereas the

substantive component "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995). Although generally a pre-deprivation hearing is required to satisfy due process, "in emergency situations a state may satisfy the requirements of procedural due process merely by making available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking.'" *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009) (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)). "[T]he due process guarantee is offended only when an emergency procedure is invoked in an abusive and arbitrary manner; therefore, there is no constitutional violation unless the decision to invoke the emergency procedure amounts to an abuse of the constitutionally afforded discretion." *Catanzaro v. Weiden*, 188 F.3d 56, 62 (2d Cir. 1998). Further, "[w]hether the official abused his discretion or acted arbitrarily in concluding that a genuine emergency exists is a factual issue, subject to the usual considerations for a district court addressing a summary judgment motion." *WWBITV, Inc.*, 589 F.3d at 51.

In the instant case, insofar as Plaintiffs assert a Fourteenth Amendment procedural due process violation, such violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and opportunity to be heard. *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009) (citing *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997)). In evaluating a procedural due process claim, a district court must decide: "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what

process he was due before he could be deprived of that interest." *Sealed v. Sealed*, 332 F.3d 51, 55 (2d Cir. 2003) (citing *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002)).  In the instant case, the only argument advanced by City Defendants regarding whether Plaintiffs possessed the requisite property interest in the Property and Building is a conclusory statement that the Complaint fails to show City Defendants deprived Plaintiffs of a protected property interest, citing in support two cases involving government-issued licenses, neither of which supports finding Plaintiffs did not have a protected property interest in the Property for purposes of the Fourteenth Amendment Due Process claims.  City Defendants' Memorandum at 21 (citing *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (holding plaintiff, owner of a gun shop, had a protected property interest in gun dealer's license); and *Ace Partners, LLC v. Town of East Hartford*, 883 F3d 190, 195 (2d Cir. 2018) (finding no constitutionally protected property interest in a government-issued license or permit unless the issuing authority is required to issue the license upon ascertaining certain objective criteria are met).  In contrast, the instant action concerns not a license or permit, but real property which City Defendants do not dispute is owned by Plaintiffs.  Accordingly, for the sake of this discussion, City Defendants have not sufficiently disputed that Plaintiffs had a protected property interest in the Building and the Property, the court need consider only whether Plaintiffs were provided with all due process in connection with the Building's demolition.

The demolition of a structure within the City is governed by Buffalo Code Ch. 113 pertaining to unsafe buildings,[24] and City Charter Ch. C, Art. 17 which establishes the

---

[24] A copy of Buffalo Code Ch. 113 is filed as City Defendants' Exh. U (Dkt. 31-22).

City's DPIS.[25]  The Commissioner of DPIS ("the Commissioner") "is responsible for all property code enforcement programs, including housing code violations and matters relating to multiple dwellings . . . ," City Charter § 17-2(b), "[h]a[s] charge of all demolition work," *id*. § 17-2(e), and shall "[d]irect or cause to be torn down, blown up or otherwise destroyed on an emergency basis, any building or buildings which he or she deems to be an immediate threat to the health, welfare and safety to the public." *Id*. § 17-2(j).  When a City building inspector, upon inspecting a building, reports to the Commissioner the building is unsafe and dangerous, the Commissioner is required to provide notice to the building's owner of the unsafe condition and the owner is then required to take immediate action to make the building safe and secure or to demolish the building.  Buffalo Code § 113-1.  Either the owner is then required to immediately make the building safe and secure or taken down, or the Commissioner may enter the building to make the building safe and secure or taken down and, in the latter case, the Commissioner's decision to raze the building must be in writing.  *Id*. § 113-3.A and B. Where the Commissioner determines a building is "abandoned, dilapidated, deteriorated, decayed or unattractive from any cause so as to endanger the health, safety or welfare of the public," the Commissioner shall serve notice of such noncompliance upon the owner who shall then "repair, demolish or remove the same." *Id*. §§ 113-5 to 113-7.  The notice is to be served on the building's owner either in person or by registered mail with posting of the condemnation notice required in the latter case, *id*. § 113-9, with a hearing held at which the owner may present evidence challenging the reported condition of the property.  *Id*. § 113-10.  Where, however, the

---

[25] A copy of the City Charter Art. 17 is filed as City Defendants' Exh. V (Dkt. 31-23).

condition of a structure is so poor as to present a hazard to the public, these standard procedures may be dispensed with in favor of emergency or exigent procedures which do not provide for the usual pre-deprivation hearing provided a meaningful post-deprivation remedy is available.[26]  *See Cantanzano*, 188 F.3d at 61-62 (citing *Parratt*, 451 U.S. at 539 (holding a procedural due process violation requires more than mere negligence).

Preliminarily, the court addresses City Defendants' assertion, City Defendants' Memorandum at 9-10, that the record establishes Plaintiff was notified the Building was scheduled for demolition both by a signatory card bearing the signature of Max's wife indicating the Demolition Notice was received at Max's residence and posting the Demolition Notice on the Building's front door as required by Buffalo Code 113-9.A(2) and B, as well as that Plaintiffs' attorney, Berbary, discussed the emergency demolition at Housing Court proceedings.  *Id*.  The only evidence supporting these assertions, however, are insufficient to establish Plaintiffs received pre-deprivation notice of the demolition.  In particular, although Krug testified that the Demolition Notice was posted on the Building, Krug Dep. Tr.[27] at 45, 81, and then mailed a copy of the Demolition Notice by certified and regular mail, *id*. at 45, there is no proof the Building was actually posted.  Rather, photographs that City Defendants maintain depict the Building as posted, City Defendants' Exh. N (Dkt. 31-10), include a photograph of a "Final Notice" dated August 27, 2019, directed to Vodka Properties instructing that personal property

---

[26] The court notes that other than providing that the Commissioner of DPIS to "[d]irect or cause to be torn down, blown up or otherwise destroyed on an emergency basis, any building or buildings [deemed] to be an immediate threat to the health, welfare and safety to the public," City Charter § 17-2, the provisions of the Buffalo Code and City Charter referenced by the parties do not contain procedures for the condemnation and demolition of a building on an emergency basis.

[27] Referenced to "Krug Dep. Tr." are to pages of the transcript of Krug's March 1, 2022 deposition filed as City Defendants' Exh. L (Dkt. 31-13).

should be removed by September 3, 2019 "due to imminent demolition of said building."

City Defendants' Exh. N at 1.  Following the Final Notice are three additional

photographs of the Final Notice, *id*. at 2-4, perhaps intended to depict the Final Notice

posted on the Building at the Property, but the quality of the photographs is so poor that

the court can only speculate as much.  The final page of the exhibit is merely a copy of

the Condemnation Notice.  City Defendants' Exh. N at 5.  Nor is there any indication

that the Condemnation Notice was mailed to Levin via registered mail as required.

Buffalo Code § 113.9.A(2).  Krug's further deposition testimony that he spoke with

Berbary in Housing Court about the impending demolition and that Berbary informed

Krug that Levin's wife received the Final Notice, Krug Dep. Tr. at 46-47, is inadmissible

hearsay which cannot support summary judgment.  *See Porter v. Quarantillo*, 722 F.3d

94, 97 (2d Cir. 2013) (explaining that only "admissible evidence need be considered by

the trial court in ruling on a motion for summary judgment," and hearsay evidence is

generally inadmissible).  Furthermore, despite Petrucci's deposition testimony that after

the Building was demolished, Levin spoke with Petrucci at Petrucci's office and Petrucci

reviewed the relevant file with Levin, which file included a "signatory card" purportedly

establishing that Levin's wife received the Final Notice, Petrucci Dep. Tr.[28] at 33-34, no

copy of the signatory card is in the record nor does the context of the deposition even

establish the signatory card was presented at the deposition.  Plaintiffs' dispute of these

assertions, for which it is City Defendants' burden to establish in connection with their

opposition to Plaintiffs' Motion, as well as in support of City Defendants' Motion,

demonstrates the existence of genuine issues of material fact precluding summary

---

[28] References to "Petrucci Dep. Tr." are to the pages of the transcript of the March 29, 2022 deposition of Defendant Petrucci filed as City Defendants' Exh. P (Dkt. 31-17).

judgment on the issue of notice of Defendants' demolition.  The court accordingly is unable to conclude as a matter of law that Plaintiff Levin was aware of the Condemnation Notice and City Defendants' intention to demolish the Building prior to its demolition on September 25, 2019, and without such pre-deprivation notice, City Defendants could demolish the Building only if the circumstances supported its emergency demolition.

Toward that end, City Defendants' argument in support of the emergency condemnation and demolition of the Building assumes the condition of the Building and Property, including the physical deterioration, fire risk, and complaints of criminal activity, justified City Defendants' use of emergency procedures to demolish the Building on September 25, 2019, without providing Plaintiff with a pre-deprivation hearing even though a Housing Court hearing was scheduled on the Violation Notice on October 21, 2019.  City Defendants' Memorandum at 19-21; City Defendants' Response at 3-5; City Defendants' Reply at 1-2.  Plaintiffs, however, submit numerous exhibits demonstrating genuine issues of material fact precluding summary judgment on whether City Defendants' invocation of emergency procedures to demolish the Building was proper or was arbitrary.  Plaintiffs' Memorandum at 9-17.  In particular, Plaintiffs reference the Condemnation Notice on which City Defendants indicated the Building was condemned on an emergency basis because the Building was "vacant and abandoned," "structurally unsound and in imminent danger of collapse, holes in roof, floors and walls and foundation issues," in such a condition that "the likelihood of a fire exists," and "it poses a health and safety issue for the community."  Plaintiffs' Memorandum at 9 (quoting Condemnation Notice).  City Defendants' response to

Plaintiffs' Interrogatory No. 11 inquiring about City Defendants' belief that there was an "emergency" at the Property, is largely consistent with the Condemnation Notice that the Building was vacant, abandoned, and "in a state of structural compromise," with holes in the roof, floors, and walls, and foundation issues that rendered the building structurally unsound and in imminent danger of collapse, as well as that the situation posed a "public health and safety risk of illegal activity and drug use in the vacant building . . . ." *Id*. at 10 (citing and quoting Plaintiffs' Exh. Z (Dkt. 28-27).  According to Plaintiffs, because each City Defendant, in response to deposition questioning, agreed there were no additional reasons supporting the determination that the Building's condition supported the emergency condemnation, City Defendants are constrained to those reasons listed in the Condemnation Notice and the response to Interrogatory No. 11 in arguing against Plaintiffs.  *Id*. at 10.  In contrast, the June 28, 2019 Inspection Report which is the basis for the Violation Notice, although noting the Building was missing downspouts necessary for proper drainage, has deteriorating or missing siding, exterior walls and trim had chipped and peeling paint, windows and doors were missing or broken, porch guardrails were missing, and that the Property was not being regularly maintained but was overgrown by grass and weeds and with trash and debris in need of removal, was nevertheless bereft of any indication that the Building had holes in the roof, floors or walls, or structural or foundation issues such that the Building was in imminent danger of collapse, that there was a likelihood of fire at the Building or that the Building was a health and safety issue in the community.  Inspection Report (Violation Notice at 2-3).  Photographs accompanying the Inspection Report likewise fail to show holes in the roof and floors or foundation issues rendering the Building structurally

unsound and in imminent danger of collapse.  Plaintiffs' Exh. P (Dkt. 28-17).  During his

deposition, Comerford admitted that the determination the Building was structurally

unsound and in imminent danger of collapse was based on photographs taken in 2015

or 2017, Comerford Dep. Tr.[29] at 24, and that although the photographs of the Building

showed the exteriors of the Building was not a pretty picture," *id*. at 45, the Building did

not look "demo worthy," *id*., yet no work had been done on the Building despite permits

being issued for repairs.  *Id*.  According to Comerford, because "the interior didn't look

good," and "drug activity was rampant," Comerford made the decision the Building had

to be demolished.  *Id*.  Comerford, however, did not enter the Building and thus did not

view the interior, but relied on the photographs taken in either 2015 or 2017 as depicting

the interior's condition in 2019.  *Id*. at 45-46.  Not only do none of the photographs

depict holes in the roof or floors, or any structural issues, but none of the three building

permits issued for extensive repairs to the Building to either the previous owner or

Plaintiffs indicate any foundation repairs were to be made.  *See* Building Permits at 2-4.

There thus are issues of fact as to whether the Building's physical condition supported

its emergency demolition on September 21, 2019.

Nor is there any merit to City Defendants' reliance on reports of drug activity at

the Building as posing a serious threat to the community's health and safety supporting

the emergency demolition.  City Defendants' Memorandum at 1.  Significantly, where,

as here, the relevant portions of the Buffalo Code "do not encompass criminal activity or

violations otherwise reserved to the Penal Law," such violations will not support an

emergency demolition.  *Royal Housing, LLC v. City of Jamestown, New York*, 2021 WL

---

[29] References to "Comerford Dep. Tr." are to the pages of the transcript of the March 29, 2022 deposition
of Defendant Comerford, a copy of which is filed as Plaintiffs' Exh. F (Dkt. 28-7).

4504459, at * 7 (W.D.N.Y. Oct. 1, 2021). As Plaintiffs argue, Plaintiffs' Memorandum at 13-14, City Defendants could have pursued other legal avenues of redress for any suspected drug-related activity involving the Property such as New York's "Bawdy House" law permitting City Defendants to maintain a summary proceeding to recover real property that is used for, *inter alia*, "any illegal trade, business or manufacture . . . ." N.Y. Real Prop. Acts Law § 715[1]. Moreover, as Plaintiffs further allege, Plaintiffs' Memorandum at 14-15, there is no evidence in the record that after the overdose of a single drug user at the Property, there remained any public health risk based on drug use at the Property, nor do City Defendants have any idea how many individuals were involved with drug use at the Property, and "'the mere suspicion of sporadic criminal activity is certainly not an emergency that would justify dispensing with plaintiff's constitutional rights.'" *Royal Housing*, LLC, 2021 WL 4504459, at * 8 (quoting *Kassim v. City of Schenectady*, 255 F.Supp.2d 32, 39 (N.D.N.Y. 2003), *aff'd in part, vacated in part, remanded*, 415 F.3d 246 (2d Cir. 2005)). Nor do City Defendants present any evidence establishing they were unable to hold a pre-deprivation hearing, especially given the Housing Court hearing on the Violation Notice was scheduled for October 21, 2019. *See Royal Housing, LLC*, 2021 WL 4504459, at * 8 (concluding plaintiff's removal of suspected drug dealers from premises prior to condemnation order negated defendants' asserted concerns that drug seekers on the premises, a multifamily dwelling, would somehow threaten the law-abiding tenants).

These disputed issues of fact thus sufficiently raise a genuine question as to whether City Defendants were objectively reasonable in their belief that the Property and Building posed an imminent danger to the public supporting the emergency

demolition, or abused their discretion or acted arbitrarily in determining the Building's condition posed a genuine emergency warranting its demolition on an emergency basis. *WWBITV*, 589 F.3d at 51.  *Cf.*, *Smith v. City of Albany*, 250 Fed.Appx. 417, 418 (2d Cir. 2007) (affirming summary judgment where the plaintiff "failed to create an issue of fact as to the objective reasonableness of the municipal defendants' belief that [p]laintiff's building posed an imminent danger to the public, thus meriting emergency demolition.").

City Defendants further maintain the availability of a post-deprivation remedy, specifically, an Article 78 proceeding, was adequate to safeguard Plaintiffs' constitutional rights to procedural due process, City Defendants' Memorandum at 21-22; City Defendants' Response at 6-7.  In opposition, Plaintiffs argue an Article 78 proceeding was not adequate to remedy what Plaintiffs characterize as a violation of an established state procedure, rather than a "'random and unauthorized act,'" and would not afford Plaintiffs an opportunity to obtain all available damages.  Plaintiffs' Memorandum at 17-19 (quoting *Parrat*, 451 U.S. at 541); Plaintiffs' Response at 10-12; Plaintiffs' Reply at 6-9.  In *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir.1996), the Second Circuit Court of Appeals recognized the Supreme Court's distinction between "(a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees," *id.,* emphasizing that because the state cannot provide adequate pre-deprivation process in the latter case, post-deprivation review is adequate.  *Id.*  In so holding, however, the Second Circuit also indicated that where established state procedures are involved, pre-deprivation hearings will normally be required.  *Id.*  Further, because the "'state acts through its high-level officials,' the decisions of such officials more closely

resemble established state procedures than the haphazard acts of individual state actors that the *Hellenic American* exception was designed to cover." *Velez v. Levy*, 401 F.3d 75, 92 (2d Cir. 2005) (quoting *DiBlasio v. Novello*, 344 .3d 292, 303 (2d Cir. 2003)).  Because, in the instant case, Comerford, as DPIS Commissioner, was charged with making the ultimate decision whether to invoke emergency demolition procedures, Comerford's action in making such decision more closely resembles established state procedure such that if the requisite emergency justifying the emergency demolition did not exist, a genuine issue of material fact in the instant case, then the availability of a post-deprivation remedy will not suffice to satisfy procedural due process.  Accordingly, if the genuine issues of material fact regarding the condition of the Property and Building fail to establish City Defendants properly invoked emergency condemnation procedures, then an Article 78 proceeding would not afford Plaintiffs all the relief, particularly money damages, to which they are entitled for the due process violation. *See Hellenic Am. Neighborhood Action Comm.,* 101 F.3d at 880 (noting that post-deprivation procedures will not necessarily satisfy due process "[w]hen the deprivation occurs in the more structured environment of established State procedures, rather than random acts").  *See also Davidson v. Capuano*, 792 F.2d 275, 279 (2d Cir. 1986) (Article 78 proceedings do not lie for the recovery of money damages in a § 1983 action).

Summary judgment should therefore be DENIED as to Plaintiffs and City Defendants with regard to the First Claim asserting a violation of Fourteenth Amendment procedural due process, and the court turns to Plaintiffs' substantive due process claim.

To succeed on Plaintiffs' Second Claim asserting a violation of substantive due process, Plaintiffs must show that the challenged government action was "'arbitrary, conscience-shocking, or oppressive in a constitutional sense,' and not merely 'incorrect or ill-advised.'" *Catanzaro,* 188 F.3d at 64 (quoting *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir.1995)).  The Supreme Court, however, instructs that "'[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Bryant v. City of New York*, 404 .3d 128, 135-36 (2d Cir. 2005) (quoting *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor,* 490 U.S. 386, 395 (1989))).   In the instant case, Plaintiffs' claims for unreasonable seizure asserts a violation of the Fourth Amendment.  *See Soldal v. Cook County, Illinois*, 506 U.S. 56, 61 (1992) (holding a seizure, for purposes of the Fourth Amendment, "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984))), and *DeBari v. Town of Middleton*, 9 F.Supp.2d 156, 161 (N.D.N.Y. 1998) ("Where, as here, the government demolishes a building, a 'seizure' results within the meaning of the Fourth Amendment")).  Further, the demolition of a private citizen's property on a emergency basis implicates unlawful taking considerations under the Fifth Amendment.  *Chompupong v. City Schnectady*, 511 F.Supp.3d 228, 236 (N.D.N.Y. 2010) (citing *Smith v. City of Albany*, 2006 WL 839525, at * 10 (N.D.N.Y. Mar. 27, 2006))."   Accordingly, both the Fourth and Fifth Amendments provide explicit sources of constitutional protection against the behavior of Defendants on which this action is

premised.  Summary judgment thus should be DENIED as to Plaintiffs and GRANTED in favor of City Defendants on the Second Claim asserting a violation of substantive due process under the Fourteenth Amendment.

2.    **Third Claim – Unlawful Taking**

Plaintiffs' Third Claim alleges unlawful taking in violation of the Fifth Amendment based on the lack of any emergency justifying the demolition of the Building on the property without affording Plaintiffs a pre-deprivation hearing.  Complaint, Third Claim. In support of summary judgment on this claim, City Defendants argue that because a government's emergency demolition of an imminently dangerous building to protect the public is an appropriate exercise of the police power, it does not constitute a "taking" for purposes of the Fifth Amendment, City Defendants' Memorandum at 26-31, and Plaintiffs are unable to present any competent evidence regarding the Property's value when it was demolished and thus cannot raise a triable issue of fact as to the damages Plaintiffs seek.  *Id*. at 31.  In response, Plaintiffs argue there was no requisite emergency justifying the Building's demolition without a pre-deprivation hearing. Plaintiffs' Response to City Defendants at 14-18.  In further support of summary judgment on this claim, City Defendants maintain this claim is "barred by the warranted and lawful exercise of the City Defendants' statutory and policy [*sic*] authority to order the emergency demolition of [the Building]."  City Defendants' Reply at 5.

"The Takings Clause of the Fifth Amendment provides that no 'private property shall be taken for public use, without just compensation.'"  *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 373 (2d Cir. 2006) (quoting U.S. Const. amend. V).  "The clause applies to the states through the Fourteenth Amendment," *id*. at 373-74 (citing *Kelo v.*

*New London,* 545 U.S. 469, 472 n. 1 (2005), and "emergency demolition of a private citizen's property implicates procedural due process considerations under the Fifth and Fourteenth Amendments."  *Smith v. City of Albany*, 2006 WL 839525, *10 (N.D.N.Y. Mar. 27, 2006).  Where, as here, the defendant raises issues of emergency circumstances requiring demolition of a property, "the legality of defendants' conduct ... turns on its reasonableness and the existence of an alleged emergency."  *Id.* (citing *Soldal*, 506 U.S. at 61-61 (further citation omitted)).  Whether emergency circumstances existed is often a question for the jury. *See Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983) (denying municipal defendants summary judgment on plaintiff's Fifth Amendment claim where substantial fact issues existed regarding whether the plaintiff property owner was entitled to a pre-deprivation hearing before the city demolished the plaintiff's building or whether an emergency situation existed excusing the city's failure to provide the pre-deprivation hearing).  If, however, a plaintiff fails to present evidence sufficient to rebut the defendant's evidence of emergency circumstances, summary judgment is appropriate.  *See Smith*, 2006 WL 839525, at *15 (granting summary judgment in favor of defendant city on Fifth Amendment Takings Clause claim where plaintiff failed to raise any material issue of fact contradicting "overwhelming evidence in the record" demonstrating defendants observed hazardous and unsanitary conditions inside the subject property).

In the instant case, the same questions of material fact precluding summary judgment on Plaintiffs' First Claim alleging a denial of procedural due process in violation of the Fourteenth Amendment, to wit, whether the condition of the Building and Property justified City Defendants' emergency demolition of the Building without

affording Plaintiffs' notice and an opportunity for a hearing to challenge the Building's

condemnation and demolition, see Discussion, *supra*, at 45-51, also preclude summary

judgment on Plaintiffs' Third Claim alleging an unconstitutional taking in violation of the

Fifth Amendment.

Accordingly, City Defendants' Motion should be DENIED with regard to summary

judgment on the Third Claim.

### 3.    Fourth and Fifth Claims – Facial Invalidity of the Buffalo Code and City Charter

Plaintiffs' Fourth and Fifth Claims allege, respectively, the relevant provisions of

the Buffalo Code and the City Charter are facially invalid in violation of § 1983.

Complaint, Fourth Claim and Fifth Claim.  Plaintiffs particularly take issue with Buffalo

Code's provision that

> The Commissioner shall determine the danger established by the existence of the building to the surrounding Neighborhood and residences, including the likelihood of fire; the proximity of the building to occupied structures; the opportunity for criminal activity; the general character of the neighborhood, including the number of children living nearby; and the relative location of public facilities such as schools, churches, playgrounds, swimming pools and community centers; and such other factors as shall be reasonable under the circumstances.  The Commissioner's decision to raze a building shall be made in writing.

Buffalo Code Chapter 113-3.

Plaintiffs also reference the City Charter provision that the duties and powers of the

Commissioner of DPIS may

> Direct or cause to be torn down, blown up or otherwise destroyed on an emergency basis, any building or buildings which he or she deems to be an immediate threat to the health, welfare and safety to the public.

City Charter § 17-2.

According to Plaintiffs, the "statutory scheme for emergency demolitions" created by these legal provisions permit "the destruction of property with little to no investigation or procedures or the preservation of evidence before taking action that deprived the Plaintiffs of valuable property rights without an opportunity to be heard," Complaint ¶ 166, and in violation of New York General City Law § 20[35] ("§ 20[35]"),[30] allowing for a

---

[30] Section 20[35] provides that
Subject to the constitution and general laws of this state, every city is empowered:

35. To adopt a local law or ordinance compelling the repair or removal of any building or structure that, from any cause, endangers the health, safety or welfare of the public, providing as follows:
a. For an inspection and report by the director of buildings of the city.
b. For the service of a notice upon the owner, and all other persons having an interest in such property or structure, either personally or by registered mail, addressed to his last known address as shown by the records of the officer or agency of the city charged with the assessment of real property therein or collection of real property taxes thereon and/or in the office of the county clerk or county register, containing a description of the premises, a statement of the particulars in which the building or structure is unsafe or dangerous and an order of the director of buildings requiring same to be repaired or removed; and if such service be made by registered mail, for the posting of a copy of such notice on the premises.
c. For the time within which the owner so served shall commence the repair or removal of such building or structure.
d. For the filing of a copy of such notice in the office of the county clerk of the county within which such building or structure is located, which notice shall be filed by such clerk in the same manner as a notice of pendency pursuant to article sixty-five of the civil practice law and rules, and shall have the same effect as a notice of pendency as therein provided, except as otherwise hereinafter provided in this paragraph. A notice so filed shall be effective for a period of one year from the date of filing, provided, however, that it may be vacated upon the order of a judge or justice of a court of record or upon the consent of the corporation counsel. The clerk of the county where such notice is filed shall mark such notice and any record or docket thereof as cancelled of record upon the presentation and filing of such consent or of a certified copy of such order.
e. For a hearing before the director of buildings, notice of which and the time and place thereof to be specified in the notice to repair or demolish, served upon the owner and such persons having an interest in the property or structure as is herein prescribed.
f. For the removal of such building or structure by the city in the event such owner fails or refuses to repair or remove the same within the time provided.
g. For the assessment of all costs and expenses incurred by the city in connection with the proceedings to repair or remove such building or structure, including the cost of actually removing the same, against the land on which such building or structure is located.
h. The powers conferred by this subdivision thirty-five shall be in addition to all other powers conferred upon cities in relation to the same subject matter. Nothing contained in this subdivision shall be construed to amend, repeal, modify or affect any existing local law or ordinance or provision of any charter or administrative code pertaining to the subject matter to which this subdivision relates, or to limit or restrict the power of any city to amend or modify any such existing local law, ordinance or provision of any charter or administrative code, or to restrict or limit any power otherwise conferred on any city by law with respect to the subject matter to which this subdivision relates.

N.Y. Gen. City Law § 20[35] (McKinney 2018)

municipality to promulgate statutes, laws, and ordinances pertaining to the destruction and demolition of buildings only if such legal provisions require an inspection and report by the Commissioner of the Department of Permit and Inspection Services, the service on the building owner of a notice of demolition, time within which the owner may make repairs to the building, and a hearing prior to the demolition.  *Id*. ¶ 167.  According to Plaintiffs, neither the Buffalo Code nor the City Charter requires notice to the property owner, an opportunity to make repairs, or a hearing prior to authorizing an emergency demolition an inspection by the Commissioner of the DPIS.  *Id*. ¶ 177.

In support of summary judgment on these claims, City Defendants argue that the emergency demolition of the Building was pursuant to the City's police powers, the use of which has been recognized as constitutional by both the New York Court of Appeals and the Supreme Court, City Defendants' Memorandum at 32-33 (citing *Lawton v. Steele*, 23 N.E. 878 (N.Y. 1890), *aff'd*, 152 U.S. 133 (1894)), which establishes that § 20[35] as well as the relevant provisions of the Buffalo Code and City Charter are constitutional.  City Defendants' Memorandum at 33-36.  In opposition, Plaintiffs argue that because the relevant provisions of the Buffalo Code and City Charter do not require an investigation nor provide for the preservation of evidence or an opportunity to be heard as required by § 20[35] before demolishing a building, such provisions are unconstitutional, Plaintiffs' Reply to City Defendants at 18-21, and were unconstitutionally applied to support the Building's demolition without an inspection of the Building's interior or a report by the Commissioner of DPIS.  *Id*. at 21-22.  In further support of summary judgment on the Fourth and Fifth Claims, City Defendants argue the Building's condemnation and demolition on an emergency basis was a proper

exercise of the City's inherent and delegated powers to abate public nuisances and thus

was constitutional, City Defendants' Reply at 6, as well as that the demolition complied

with minimum due process guarantees of § 20[35]. *Id*. at 6-7.

Initially, insofar as City Defendants argue in support of summary judgment on the

Fourth and Fifth Claims that any inconsistency between the Buffalo Code and City

Charter and § 20[35] is irrelevant because the record establishes Plaintiffs received the

Condemnation Notice prior to the Building's demolition on September 25, 2019, City

Defendants' Memorandum at 31, as discussed, Discussion, *supra*, at 45-47, there are

genuine issues of material fact precluding the court from concluding such notice was

properly provided.  There thus is no merit to this portion of City Defendants' argument.

As for City Defendants' argument that the September 25, 2019 emergency

demolition of the Building was a proper exercise of the City's police powers, "'[i]n the

exercise of its police powers [a] municipality may demolish a building without providing

notice and an opportunity to be heard if there are exigent circumstances which require

immediate demolition of the building to protect the public from imminent danger.'"

*Iavarone v. City of New York*, 11 N.Y.S.3d 221, 221 (2d Dept. 2015) (quoting *One*

*Monroe, LLC v. City of New York*, 932 N.Y.S.2d 153, 155 (2d Dept. 2011)) (alterations

in original).  "[W]here there is competent evidence allowing the official to reasonably

believe that an emergency does in fact exist, or that affording predeprivation process

would be otherwise impractical, the discretionary invocation of an emergency procedure

results in a constitutional violation only where such invocation is arbitrary or amounts to

an abuse of discretion."  *Catanzaro*, 188 F.3d at 63 (2d Cir. 1999).  Nevertheless, an

emergency exists and "[a] town may exercise its emergency police power only where

there is a 'dire necessity' to act and where 'its action is reasonably calculated to alleviate or prevent the crisis condition.'" *Scott v. Town of Duanesburg*, 574 N.Y.S.2d 833, 835 (3d Dept. 1991) (quoting *Belle Harbor Realty Corp. v. Kerr*, 323 N.E.2d 697, 699 (N.Y. 1974)).

Here, the court need not consider the constitutionality of either the Buffalo Code or the City Charter because the Building's demolition on September 25, 2019 was purportedly undertaken on an emergency basis, such that no notice and opportunity for Plaintiffs to be heard and challenge the deprivation in accordance with the Buffalo Code and City Charter was required. *Iavarone*, 11 N.Y.S.3d at 221. In fact, a plain reading of the challenged provisions of the Buffalo Code and City Charter establish they describe procedures not for demolitions undertaken on an emergency basis but, rather, for demolitions in which the circumstances are not so exigent as to excuse a need for a pre-deprivation hearing. Furthermore, Plaintiffs' argument, Plaintiffs' Response to City Defendants at 21-22, that the regulatory scheme as applied to the Building's demolition is unconstitutional because it does not require the City to compile a sufficient record including an inspection of both the interior and exterior of a building targeted for demolition, with a report of the inspection and photographs depicting the asserted state of disrepair and building code violations, is unsupported by any statute, rule, regulation, or caselaw, and the court's research has found none. Although such a record would be helpful in subsequent litigation challenging the emergency demolition of a building or structure on an emergency basis, such as in the instant case, City Defendants act at their own peril in failing to compile such record. In short, even assuming, *arguendo*, the provisions of the Buffalo Code and City Charter challenged by Plaintiffs are

unconstitutional, the harm Plaintiffs allege in the instant case is not attributable to such unconstitutionality, but to the City Defendants' alleged failure to ensure the condemnation and demolition of the Building on an emergency basis was in accordance with the applicable Constitutional requirements.

Accordingly, with regard to the Fourth and Fifth Claims, City Defendants' Motion should be DENIED insofar as City Defendants maintain Plaintiffs received notice prior to the demolition, but should be GRANTED as to the merits of such claims.

### 4.     Sixth Claim – Equal Protection

Plaintiffs' Sixth Claim asserts a violation of the Fourteenth Amendment Equal Protection Clause based on City Defendants' demolition of the Building but not of the property of other City property owners who likewise had been assessed with similar building code violations. Complaint, Sixth Claim. In support of summary judgment on this claim, City Defendants argue Plaintiffs have failed to allege and cannot establish the demolition of the Building constituted selective treatment of Plaintiffs compared to similarly situated property owners as required for an equal protection claim. City Defendants' Memorandum at 36-39. In opposition, Plaintiffs argue the record demonstrates City Defendants, by demolishing the Building on an emergency basis, conferred a benefit to the owner of a nearby business, *i.e.*, La Nova Pizza, the owners of which Plaintiffs' maintains complained the Property's condition discouraged the pizzeria's customers from patronizing their business, and thereby engaged in conduct with no rational basis. Plaintiffs' Response to City Defendants at 22-24. In further support of summary judgment on the Sixth Claim, City Defendants repeat that Plaintiff have not referenced any similarly situated individuals or situations serving as a

comparator for purposes of establishing a valid equal protection claim, City Defendants'
Reply at 7, and point out that Plaintiffs' references to the owners of a local pizzeria
complaining about the Property are not pleaded in the Complaint.  *Id*. at 7.

It is undisputed that the Complaint does not allege that City Defendants
discriminated against Plaintiffs because of some category protected by the Fourteenth
Amendment, such as race or national origin which is the usual basis for such a claim;
rather, Plaintiffs assert an equal protection claim based on "selective enforcement," *i.e.*,
"defendants intentionally treated them differently from other similarly situated" persons
"because of a malicious intent to injure them," *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d
Cir. 2005), as well as on a "class-of-one" theory in which Plaintiffs were "intentionally
treated differently from others similarly situated and that there is no rational basis for the
difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
Under the *Olech* class-of-one theory, the similarly situated comparator must be "*prima
facie* identical" to the plaintiff — that is, "(i) no rational person could regard the
circumstances of the plaintiff to differ from those of a comparator to a degree that would
justify the differential treatment on the basis of a legitimate government policy; and (ii)
the similarity in circumstances and difference in treatment are sufficient to exclude the
possibility that the defendant acted on the basis of a mistake."  *Hu v. City of New York*,
927 F.3d 81, 92 (2d Cir. 2019) (citation omitted).  Under either alternative theory, a
plaintiff must make a showing of different or unequal treatment," *33 Seminary LLC v.
City of Binghamton*, 670 Fed. Appx. 727, 730 (2d Cir. 2016), and a party who cannot
point to a "substantially comparable instance" of the relevant laws or regulations "with
respect to the very issue that is the focus of its equal protection claim" cannot support

that claim.  *Id*.  Significantly, "[t]he purpose of requiring similarity is to make sure that no legitimate factor could explain the disparate treatment."  *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012). In such cases, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high."  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008).  Accordingly, to prevail on their equal protection claim, Plaintiffs "must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of the comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of mistake."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

In the instant case, Plaintiffs utterly fail to point to any circumstances similar to those in which Plaintiffs were situated when the Building was condemned and demolished as required for the Sixth Claim asserting a violation of equal protection. Further, in their Complaint, Plaintiffs reference several other properties that have been demolished in violation of the due process rights of other property owners within the City, allegedly in furtherance of Mayor Brown's aggressive demolition plain.  *See* Complaint ¶¶ 98-106 (describing three other properties that were demolished without pre-deprivation hearings).  Because the treatment City Defendants purportedly gave these properties is similar to that afforded Plaintiffs, not only do these properties not satisfy the required comparator for an Eighth Amendment equal protection claim, but their existence as pleaded by Plaintiffs further undermines such claims.

Summary Judgment should be GRANTED in favor of City Defendants on the Sixth Claim.

### 5.    Seventh Claim – Unreasonable Seizure

Both Plaintiffs and City Defendants move for summary judgment on Plaintiffs' Seventh Claim asserting City Defendants' demolition of the Building without a pre-deprivation hearing to contest the condition of the Property constituted an unreasonable seizure in violation of Plaintiffs' Fourth Amendment rights.  In support of summary judgment on this claim, Plaintiffs argue City Defendants impliedly admit the Building was not demolished because it was structurally unsound, but because of suspected drug-related activity at the Property which City Defendants maintain posed a public health emergency, but which Plaintiffs maintain was not sufficiently egregious to warrant the emergency demolition.  Plaintiffs' Memorandum at 21-22.  In opposition, City Defendants argue that at least there exist material issues of fact regarding whether the emergency condemnation and demolition of the Building was supported by the Building's condition for which no repairs were made.  City Defendants' Response to Plaintiffs at 8-9.  In further support of summary judgment, Plaintiffs argue City Defendants' reliance on non-contemporaneous photographs and inspections are insufficient to avoid summary judgment on Plaintiffs' Fourth Amendment unreasonable seizure claim.  Plaintiffs' Reply to City Defendants at 1-3.

City Defendants argue in support of their motion for summary judgment on the Seventh Claim that the condemnation and demolition of the Building without affording Plaintiffs a pre-deprivation hearing was not unreasonable given the emergency circumstances existing at the Property.  City Defendants' Memorandum at 39-40.  In

opposition, Plaintiffs argue there exist triable issues of fact regarding whether the circumstances supported the City Defendants' emergency declaration and subsequent demolition of the Building.  Plaintiffs' Response to City Defendants at 24-25.  In reply, City Defendants argue the allegations of the Complaint demonstrate City Defendants' exercise of its duty and authority under the Buffalo Code and City Charter to demolish the Building was reasonable and lawful.  City Defendants' Reply to Plaintiffs at 8.

"The Fourth Amendment, made applicable to the States by the Fourteenth ... provides in pertinent part that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  *Soldal*, 506 U.S. at 61 (internal citation and quotation marks omitted). "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  "Where, as here, the government demolishes a building, a 'seizure' results within the meaning of the Fourth Amendment."  *DeBari*, 9 F. Supp. 2d at 161. The Fourth Amendment's protection against unreasonable searches and seizures fully applies in the civil context and the seizure need not result from a search by law enforcement.  *Soldal*, 506 U.S. at 67.  Further, the actions of defendants in invoking emergency demolition procedures to condemn and authorize the demolition of a building is not reasonable where the conditions and circumstances of the subject building are not sufficiently serious to support demolition on an emergency basis. *Heidorf v. Town of Northumberland*, 985 F.Supp. 250, 257 (N.D.N.Y. 1997) (material questions of fact as to whether condition of plaintiff's building supported its demolition on an emergency basis and without notice and pre-deprivation hearing precluded

summary judgment as to whether the demolition amounted to an unreasonable seizure under the Fourth Amendment).

Here, similar to Plaintiffs' Third Claim alleging a violation of the Fifth Amendment's Taking Clause, the same questions of material fact precluding summary judgment on Plaintiffs' First Claim alleging a denial of procedural due process in violation of the Fourteenth Amendment, specifically, whether City Defendants' invocation of the Commissioner's emergency condemnation and demolition authority to demolish the Building were warranted based on the condition of the Building and Property, also preclude summary judgment on Plaintiffs' Seventh Claim alleging an unreasonable seizure in violation of the Fourth Amendment.  Accordingly, both Plaintiffs' Motion and City Defendants' Motion should be DENIED with regard to the Seventh Claim.

### 6.    Eighth Claim – Abuse of Process

Plaintiffs' Eight Claim alleges abuse of process under the Fourth, Fifth, and Fourteenth Amendments by employing a legal process in an improper manner and with ulterior motives in attempting to utilize emergency demolition process and then requiring Plaintiffs to pay for the costs of the demolition.  Complaint, Eighth Claim.  In support of summary judgment on this claim, City Defendants argue Plaintiffs assert no independent theory underlying the abuse of process claim separate and apart from Plaintiffs' other claims, City Defendants' Memorandum at 40, and the claim otherwise lacks merit because Plaintiffs have not demonstrated the applicable legal process requirements that were allegedly abused by City Defendants, or that City Defendants were unjustified in their conduct which City Defendants maintain was consistent with

City Defendants' inherent police power. *Id*. at 40-42. In opposition, Plaintiffs argue there is at least a triable issue of fact as to whether City Defendants condemned and demolished the Building "on an expedited basis simply to confer an improper private benefit to the owner of La Nova Pizza," Plaintiffs' Response to City Defendants at 25, which collateral objective was constitutionally impermissible. *Id*. In further support of summary judgment, City Defendants argue Plaintiffs' assertion that the emergency demolition of the Building conferred an improper private benefit on the owners of La Nova Pizza is not otherwise previously pleaded nor raised and, thus, should be disregarded. City Defendants Reply at 8.

"The distinction between civil and criminal abuse of process is critical for section 1983 purposes." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). Significantly, a claim for malicious abuse of *civil* process is not cognizable under 42 U.S.C. § 1983. *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir. 2009) (citing *Spear v. West Hartford,* 954 F.2d 63, 68 (2d Cir.1992), *cert. denied*, 506 U.S. 819 (1992)). The Second Circuit only recognizes claims for malicious abuse of *criminal* process under 42 U.S.C. § 1983. *Cook,* 41 F.3d at 80 (noting that "[t]he distinction between civil and criminal abuse of process is critical for section 1983 purposes"). In the instant case, Plaintiffs were never subjected to any criminal proceedings in connection with the Building's demolition and, as such, assert a claim for abuse of civil, not criminal, process. As "'section 1983 liability . . . may not be predicated on a claim of malicious abuse of' . . . *civil* process," *Green*, 585 F.3d at 104 (quoting *Cook*, 41 F.3d 79-80) (alterations and italics in *Green*), City Defendants' Motion should be GRANTED on this claim.

### 7.    Ninth Claim – Conspiracy

Plaintiffs' Ninth Claim alleges City Defendants conspired with Defendant Empire to deprive Plaintiffs of their constitutional rights with respect to the demolition of the Building.  Complaint, Ninth Claim.  In support of summary judgment of the Ninth Claim, City Defendants argue Plaintiffs cannot establish the required elements of a civil rights conspiracy claim, City Defendants' Memorandum at 42-43, there is no evidence City Defendants acted in concert with any other Defendants, *id*. at 43, and the intra-corporate conspiracy doctrine providing employees of a single, corporate or municipal entity are legally incapable of conspiring with each other bars this claim.  *Id*.[31]  In opposition, Plaintiffs rely on the deposition testimony of Defendants Coyne and Krug as indicative of an agreement with the owner of La Nova Pizza to condemn and demolish the Building without affording Plaintiffs the requisite due process.  Plaintiffs' Response to City Defendants at 26.  In further support of summary judgment, City Defendants argue nothing in the record supports a conspiracy claim and nothing refutes City Defendants' position that La Nova Pizza's owner's complaints about the Property, a belated assertion by Plaintiffs, were motivated by anything other than the Property's deteriorated and dangerous conditions.  City Defendants' Reply at 8.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in

---

[31] There is no merit to City Defendants' argument, City Defendants' Memorandum at 42, that Plaintiffs' § 1983 conspiracy claim is barred by the complete absence of any evidence of animus attributed to race, nationality, or some other protected characteristic because that is an element of a civil rights conspiracy claims pursuant to 42 U.S.C. § 1985.  *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000) (§ 1985 "conspiracy must be motivated by racial animus").

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "[T]he [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995). The plaintiff must show that the defendants acted in a willful manner, culminating in an agreement, understanding, or meeting of the minds to violate the plaintiff's constitutional or statutory rights. *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 507–08 (S.D.N.Y.2008). Further, for a civil conspiracy claim to survive summary judgment, the plaintiff's evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Gustafson v. Vill. of Fairport*, 106 F. Supp. 3d 340, 352 (W.D.N.Y. 2015). Absent any evidence of an agreement, summary judgment is warranted. *See Ivery v. Baldauf*, 284 F. Supp. 3d 426, 440 (W.D.N.Y. 2018) (quoting *Ostensen v. Suffolk Cty*., 236 Fed.Appx. 651, 653 (2d Cir. 2007)). "The mere fact that the individual defendants were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim." *Id*. Moreover, pursuant to the intracorporate conspiracy doctrine, "'if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own officers[ ] and employees, each acting within the scope of his employment[,] there can be no actionable conspiracy.'" *O'Diah v. Neth,* 2013 WL 6440610, at *4 (W.D.N.Y. Dec. 9, 2013) (quoting *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978) (alteration in *O'Diah*)). In the instant case, Plaintiffs do not dispute Defendants

Comerford, Petrucci, Krug and Coyne acted within the scope of their respective

employment in regard to the demolition of the Building.

Here, as City Defendants argue, City Defendants' Memorandum at 43, that City

Defendants, as municipal employees, are legally incapable of conspiring with each

other when the offending conduct occurs within the scope of their employment, *see*

*Colon v. City of Rochester*, 419 F.Supp.3d 586, 595 (W.D.N.Y. 2019) (dismissing

pursuant to the intracorporate conspiracy doctrine § 1983 conspiracy claim asserted

against employees of same municipality where there was no allegation the defendants

acted out of purely personal motives), leaves only Defendant Empire or La Nova Pizza's

owner as the possible other party to the alleged conspiracy.[32]  There is, however,

insufficient evidence from which a reasonable factfinder could conclude that City

Defendants and Empire agreed to violate Plaintiffs' constitutional rights.  Further,

although a conspiracy may be proven by circumstantial evidence, *see Rounseville v.*

*Zahl*, 13 F.3d 625, 632 (2d Cir. 1994) (noting that a civil conspiracy claim may be

proved by circumstantial evidence), Plaintiffs fail to identify any such circumstantial

evidence of any agreement between City Defendants and Empire or the La Nova Pizza

owner other than that Empire performed the demolition and the La Nova Pizza's owner

may have complained about the Property, which amounts to nothing more than mere

speculation and is insufficient to support this claim.  *See Gustafson*, 106 F. Supp. 3d at

352 (noting that mere presence at the time of an alleged constitutional violation is

insufficient to support a conspiracy claim); *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650

---

[32] Because a § 1983 conspiracy can be based on an agreement between a state actor and a private
entity, *Pangburn*, 200 F.3d at 72, that the undersigned is recommending all § 1983 claims be dismissed
as against Empire for lack of state action does not preclude § 1983 liability as against City Defendants
based on a conspiracy between City Defendants and Empire.

(W.D.N.Y. 2017) (rejecting proximity evidence as evidence of an agreement and concluding that findings based on such evidence would be "pure speculation"). Relevantly, nor is a citizen's complaint evidence of conspiracy with a public law enforcement official. *See McNaughton v. DeBlasio*, 2020 WL 5983100, at * 4-5 (S.D.N.Y. Oct. 8, 2020) (dismissing as frivolous, *inter alia*, plaintiff's claims that private citizens conspired with police to entrap the plaintiff by calling the police to complain about the plaintiff's conduct), *aff'd*, 857 Fed.Appx. 690 (2d Cir. 2021), *cert. denied*, __ U.S. __; 142 S.Ct. 1230 (2022).  Nor do Plaintiffs argue any such conspiracy was in furtherance of some "purely personal motives" as required. *Colon*, 419 F.Supp.3d at 595.

City Defendants' Motion should be GRANTED on the Ninth Claim.

### 8.    Tenth Claim – Municipal Liability

Plaintiffs' Tenth Claim is asserted against only Defendant City which Plaintiffs allege "developed and maintained policies, customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in Buffalo, including Plaintiffs, which caused the violation of Plaintiffs' rights," including inadequately supervising and training employees, demolishing property with reckless disregard of due process considerations, failing to properly screen, train and supervise inspectors, and acquiescing in the unlawful conduct of the City's employees.  Complaint, Tenth Claim.  In support of summary judgment on this claim, City Defendants argue Plaintiffs cannot meet the criteria for municipal liability under the seminal case of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) ("*Monell*"), and its progeny.  City Defendants' Memorandum at 44-46.  In opposition, Plaintiffs argue the status of City

Defendants as policymakers establishes their decisions constitute the official policy, custom, or practice required for *Monell* liability.  Plaintiffs' Response to City Defendants at 27-29.  In further support of summary judgment, City Defendants argue that despite any City Defendant's status as a policy maker, Plaintiff has failed to identify an actual policy at issue to support *Monell* liability.  City Defendants' Reply at 9.

"To establish liability against the City for the acts of its employees, a plaintiff must show that the violation of his constitutional rights was caused by an official custom, policy, or practice.  *Nguedi v. Caulfield*, 813 Fed.Appx. 1, 3 (2d Cir. 2020) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).  Further, "a single case is insufficient to establish the existence of such a practice."  *Id*. (citing *Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016); *Sarus v. Rotundo*, 831 F.2d 397, 402 (2d Cir. 1987) (finding that there was no *Monell* claim where "the only relevant evidence presented by appellees was the manner in which they themselves were arrested")).  Although Plaintiffs allege other property owners within the City had their properties demolished without the requisite pre-deprivation notice and opportunity for a hearing to contest the planned demolitions, *see* Complaint ¶¶ 98-105, Plaintiffs have adduced no evidence regarding the asserted demolitions amounting to an official policy or custom, so as to avoid summary judgment on this claim.  *Nguedi*, 823 Fed.Appx. at 3.

City Defendants' Motion should be GRANTED as to Plaintiffs' Tenth Claim.

### 9.    Immunity Defenses

City Defendants alternatively argue that they are qualifiedly immune from liability on all § 1983 claims, City Defendants' Memorandum at 46-48, that Plaintiffs' claims are barred by the doctrine of absolute legislative immunity insofar as the claims pertain to

legislative matters, *id*. at 48-49, and by governmental function immunity insofar as the common law claims relate to government officials exercise of judgment and discretion in their official functions. *Id*. at 50.

### a.    Qualified Immunity

City Defendants alternatively argue that they are qualifiedly immune from liability on all § 1983 claims because assuming, arguendo, the rights Plaintiffs' allege were violated were clearly established when violated, Defendants' actions were clearly reasonable because they acted to protect the public. City Defendants' Memorandum at 46-48. In opposition, Plaintiffs argue City Defendants' actions challenged here violated Plaintiffs' constitutional rights that were clearly established at that time. Plaintiffs' Response to City Defendants at 29-30. In further support of summary judgment on the ground of qualified immunity on the § 1983 claims, City Defendants argue because their actions in condemning and demolishing the Building were undertaken in good faith to protect the public from a dangerous condition, City Defendants are qualifiedly immune from § 1983 liability on such actions. City Defendants' Reply at 10.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990).

When analyzing a claim of qualified immunity, the court first inquires whether the facts, taken in the light most favorable to the party asserting the injury, can demonstrated a violation of a constitutional right occurred. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, *see Frank v. Reilin*, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).

In the instant case, Plaintiffs have established genuine issues of material fact precludes summary judgment on the First, Third, and Seventh Claims alleging civil rights violations based on City Defendants' condemnation and demolition of the Building on an emergency basis. Because Plaintiffs rights to due process under the Fourteenth Amendment (First Claim), against an unlawful taking under the Fifth Amendment (Third Claim), and against unreasonable seizure under the Fourth Amendment (Seventh Claim), were established prior to the September 25, 2019 demolition of the Building, City Defendants are not entitled to qualified immunity on such claims. *See Royal Housing*, 2021 WL 4504459 at * 8 (citing *Cinema Art Theater, Inc. v. City of Troy*, 810 F. Supp. 2d 489, 500 (N.D.N.Y. 2011) ("In this case, the court has already determined that the failure to afford the Theater a predeprivation hearing may have

amounted to a procedural due process violation. Thus, because questions of fact exist in that respect, and given [the municipal defendants'] involvement in the inspection and decision to remove the marquee, the court is not currently persuaded that [they] are necessarily entitled to qualified immunity."); *Vision for Children, Inc. v. City of Kingston, New York*, No. 115CV016, 2017 WL 9249665, at *19 (N.D.N.Y. June 7, 2017) ("assuming that Defendants arbitrarily and unnecessarily declared an emergency for the purpose of demolishing Plaintiff's property without regard for Plaintiff's due process rights, the Court cannot conclude that Defendants' actions were objectively reasonable.").  City Defendants' Motion should thus be DENIED with regard the assertion of qualified immunity.

### b.    Legislative Immunity

With regard to Plaintiffs' Fourth and Fifth Claims challenging City Defendants' reliance on Buffalo Code Ch. 113 and City Charter § 17, City Defendants argue they are entitled to absolute legislative immunity on such claims.  City Defendants' Memorandum at 48-49.  In opposition, Plaintiffs argue a determination that such legal provisions are unconstitutional, as Plaintiffs' claim, Complaint, Fourth and Fifth Claims, is not barred by absolute legislative immunity.  Plaintiffs' Response to City Defendants at 31.  City Defendants do not argue in further support of summary judgment on the issue of absolute legislative immunity.

Assuming the District Judge agrees with the primary recommendation that City Defendants' conduct in condemning and demolishing the Building on an expedited emergency basis did not occur pursuant to such provisions, *see* Discussion, *supra*, at

45-51, City Defendants' claim of absolute legislative immunity is therefore DENIED as to this argument.

### c.    Governmental Immunity

City Defendants further argue Plaintiffs' common law claims are barred by governmental function immunity insofar as the claims related to government officials exercise of judgment and discretion in their official functions.  City Defendants' Memorandum at 50.  In opposition, Plaintiffs clarify their New York common law claims are asserted only against Empire, and not City Defendants.  Plaintiffs' Response to City Defendants at 31.  City Defendants do not argue in further support of the application of governmental function immunity.

As Plaintiffs point out, because the Plaintiffs' New York common law claims are asserted only against Empire, and not City Defendants, there is no merit to City Defendants' argument in support of government function immunity, and City Defendants' Motion is DENIED on this argument.

### 2.  Common Law Claims

Plaintiffs assert against Empire several New York common law claims including the Eleventh Claim for negligence, the Twelfth Claim for trespass and trespass to chattels, the Thirteenth Claim for conversion, and the Fourteenth Claim for the *prima facie* tort of intentional infliction of economic damage.  Empire seeks summary judgment on all four common law claims, while Plaintiffs seek summary judgment of the Twelfth Claim.

### a.    Eleventh Claim - Negligence

Plaintiffs' Eleventh Claim alleges negligence based on Empire's breach of a duty to Plaintiff by demolishing the Building despite actual or constructive knowledge that City Defendants lacked proper authority to authorize the emergency demolition or to entered into a contract for such demolition resulting in harm to Plaintiffs.  Complaint, Eleventh Claim.  In support of summary judgment on the Eleventh Claim, Empire argues Plaintiffs cannot establish that Empire breached any duty owed to Plaintiffs as required for a negligence claim, Empire's Memorandum at 17-18, that insofar as the Complaint can be construed as alleging Empire had a duty to know whether the City had proper authority to enter into the contract with Empire for the Building's demolition, no law, statutory or state caselaw, required Empire to investigate the City's authority to demolish the Building before presenting a bid on the demolition, *id*. at 18-19, and even if the demolition was unlawful, the proximate cause of Plaintiffs' injury was the City's determination to condemn and demolish the Building on an expedited emergency basis. *Id*. at 19.  In opposition to summary judgment on the Eleventh Claim, Plaintiffs argue that Empire, by contracting with the City to demolish the Building, voluntarily assumed a duty and Empire can now be held liable for the negligent performance of such duty. Plaintiffs' Response to Empire at 9-10.  Plaintiffs further argue that a determination that the City is responsible for the Building's demolition does not absolve Empire from liability on the negligence claim because there may be more than one proximate cause of Plaintiffs' injury.  Plaintiffs' Response to Empire at 10-11.  In further support of summary judgment, Empire argues that Empire did not obtain the permit for the Building's demolition but merely entered into a contract with the City for the demolition

project such that if proper procedures were not followed in obtaining the permit, the failure to follow proper procedures and the resulting damages are attributable only to City Defendants.  Empire's Reply at 11-14.

It is basic that the elements of a cause of action for negligence under New York common law include a duty owed by the defendant, a breach of that duty, and a showing that the breach was a proximate cause of the plaintiff's injury.  *Pasternack v. Laboratory Corporation of America Holdings*, 59 N.E.3d 485, 490 (N.Y. 2016) (citing cases).  "In the absence of a duty, as a matter of law, there can be no liability."  *Id.*  Further, "[t]he definition and scope of an alleged tortfeasor's duty owed to a plaintiff is a question of law."  *Id.*

Here, it is undisputed that Empire is an independent contractor that demolished the Building pursuant to a contract with the City which Empire was awarded as the successful bidder with the lowest price for the contract.  Accordingly, Plaintiffs' Eleventh Claim asserting negligence against Empire seeks to hold Empire liable as a party to the demolition contract.  "[P]arties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted contractual duties."  *Palka v. Servicemaster Management Services Corp.*, 634 N.E.2d 189, 193 (N.Y. 1994).  "To limit an open-ended range of tort duty arising out of contractual breaches, injured noncontracting parties must show that the 'performance of contractual obligation [between others] has induced detrimental reliance [by them] on continued performance and inaction would result not merely in withholding a benefit, but positively or actively in working an injury.'"  *Id*. at 193-94 (quoting *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,* 556 N.E.2d 1093, 1096 (N.Y. 1990) (brackets in *Palka*) (citing *Moch Co. v.*

*Rensselaer Water Co.,* 159 N.E. 896, 897 (N.Y. 1927))). "The nexus for a tort relationship between the defendant's contractual obligation and the injured noncontracting plaintiff's reliance and injury must be direct and demonstrable, not incidental or merely collateral." *Id*. (citing cases).

In the instant case, Empire, as an independent contractor, merely acted pursuant to the demolition contract for which Empire had successfully bid. Plaintiffs, as injured nonparties to the contract, may pursue a negligence claim against Empire only if Empire was negligent in the performance of its duties pursuant to the demolition contract with the City. *See Palka*, 634 N.E.2d at 193-94 (defendant maintenance contractor's duty to inspect and repair fans within hospital pursuant to contract between maintenance contractor and hospital extended to plaintiff noncontracting nurse who was injured by a falling fan after defendant negligently performed its contractual duties in a manner that placed the plaintiff in a setting riskier than if the defendant had never ventured into the hospital). In contrast, in the instant case, Plaintiffs do not claim that Empire negligently performed as obligated by the demolition contract; rather, Plaintiffs allege that Empire was negligent in failing to inspect and verify that the permit for the Building's demolition was properly obtained by City Defendants. Plaintiffs fail to establish such verification procedures were required by the terms of the demolition contract. *Eaves Brooks Costume Co*., 556 N.E.2d at 1096-97 (declining to impose liability for negligence on defendants under contract with building owners to inspect sprinkler system and install fire alarm systems where defendants' negligence resulted in damages to plaintiff tenants when large amount of water was released as a result of a faulty sprinkler system, but defendants' duty was only to building owner). Moreover, Plaintiff fail to

point to any New York caselaw supporting Plaintiffs' duty theory, *i.e.*, that Empire assumed a duty to know that City Defendants' decision to issue a demolition permit was improper, and the court's research reveals none.

Accordingly, there is no evidence establishing Empire owed any duty to Plaintiffs and thus no disputed issues of fact precluding summary judgment which should be GRANTED in favor of Empire on this claim.

      **b.**      **Twelfth Claim – Trespass and Trespass to Chattels**

Plaintiffs' Twelfth Claim alleges Empire committed trespass and trespass to chattels when, in the course of demolishing the Building on the Property, Empire's employees and agents intentionally and illegally entered the property, and Empire is now liable to Plaintiffs for the damage to the property including its diminution in value, the costs to repair and restore the property, and the loss of the contents of the Building as well as the costs of the repair work and improvements made before the alleged wrongful demolition.  Complaint, Twelfth Claim.  In support of summary judgment on the Twelfth Claim, Plaintiffs argue that because City Defendants had no authority to invoke the emergency demolition procedure to carry out the demolition, Empire's entry onto the Property and demolition of the Building renders Empire liable for trespass, Plaintiffs' Memorandum at 24, and Empire argues that as a contracted party to the demolition, Empire cannot be held responsible for a trespass resulting from the contract or undertaken at the direction of the hiring party.  Empire's Memorandum at 22-23.  In opposition to Empire's Motion, Plaintiffs argue that because Empire did not obtain Plaintiffs' authorization to enter the Property, Empire may be held liable for trespass, Plaintiffs' Response to Empire at 6-7, and that genuine issues of material fact regarding

whether City Defendants properly ordered an emergency condemnation of the Property without affording Plaintiffs sufficient due process precludes summary judgment on this claim in favor of Empire.  *Id*. at 7.  Empire argues in opposition to Plaintiffs on this claim that Defendant City was "cloaked with apparent authority" when seeking bids for the Property's demolition, Empire's Response to Plaintiffs at 14-15, and Plaintiffs' assertion of the fact that no case on point supports allowing a private party to defend its decision to trespass by relying on the direction of a government entity does not mean such reliance is untenable.  *Id*. at 15-16.  In further support of their respective summary judgment motions, Plaintiffs attempt to distinguish the present action from the cases on which Empire relies as demonstrating only that a contracting party may avoid liability for trespass when another party directs the contracted party to trespass onto the land of another.  Plaintiffs' Reply to Empire at 5-6.  Empire, in reply, argues that the City, at a minimum, was cloaked with apparent authority to direct Empire to enter the Property and demolish the Building.  Empire's Reply to Plaintiffs at 9-10.

Initially, the court observes that although the Twelfth Claim is denominated as for trespass and trespass to chattels, the arguments submitted by the parties on the various summary judgment motions pertain only to trespass to real property and not to trespass to chattels.  Accordingly, the court only addresses trespass to real property and considers the claim abandoned insofar as Plaintiffs allege trespass to chattels.

New York common law provides that "[a] trespasser is one who enters upon or remains on property without privilege or the consent of the possessor."  *Barker v. Parnossa, Inc.*, 352 N.E.2d 880, 881 (N.Y. 1976) (citing *Vaughan v. Transit Development Co.*, 118 N.E. 219, 219 (N.Y. 1917), and Restatement, Torts 2d, § 329).

Under New York common law, "[t]respass is an intentional harm at least to this extent: while the trespasser, to be liable, need not intend or expect the damaging consequence of his intrusion, he must intend the act which amounts to or produces the unlawful invasion, and the intrusion must at least be the immediate or inevitable consequence of what he willfully does, or which he does so negligently as to amount to willfulness." *Phillips v. Sun Oil Co.*, 121 N.E.2d 249, 250–51 (N.Y. 1954) (citing cases).

It is basic that government officials "are privileged to enter private property without committing trespass when they do so for a public purpose." *Hicks v. City of Buffalo*, 124 Fed.Appx. 20, 25 (2d Cir. 2004) (citing *People v. Czerminski*, 464 N.Y.S.2d 83, 83-84 (4th Dept. 1983)). Further, Empire, through its contract with the City, had the right to enter the Property as necessary to demolish the Building. *See People v. Graves*, 555 N.E.2d 268, 269 (N.Y. 1990) ("In general, a person is' licensed or privileged' to enter private premises when he has obtained the consent of the owner or another whose relationship to the premises gives him authority to issue such consent."). *See*, *cf.*, *Wantanabe Realty Corp. v. City of New York*, 315 F.Supp.2d 375, 382 n. 24 (S.D.N.Y. 2003) (noting, without discussing, claim for common law trespass was dismissed against defendant demolition company which, acting pursuant to a contract awarded by successful bid by a municipality that allegedly failed to follow the relevant procedure for an emergency demolition).

Accordingly, summary judgment on this claim should be DENIED as to Plaintiffs and GRANTED in favor of Empire.

c.        Thirteenth Claim – Conversion

Plaintiffs' Thirteenth Claim alleges Defendant Empire, by allowing its agents and employees to trespass on the Property and demolish the Building, exercised dominion and control over the Property in derogation of Plaintiffs' rights as owners of the Property resulting in damages to Plaintiffs.  Complaint, Thirteenth Claim.  In support of summary judgment on this conversion claim, Empire argues an action for conversion generally may be maintained only with regard to personal, rather than real, property.  Empire's Memorandum at 20.  In opposition, Plaintiffs argue there is a question of fact precluding summary judgment as to whether Empire "unlawfully disposed of Plaintiffs' personal property stored within the Property, including tools, materials, supplies, and other personal property."  Plaintiffs' Response to Empire at 8.  In further support of summary judgment on the conversion claim, Empire argues that Plaintiffs never pleaded a loss or personal property nor even alleged Plaintiff had personal property stored on the Property.  Empire's Reply to Plaintiffs at 10-11.

Pursuant to New York common law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006) (citing *State of New York v. Seventh Regiment Fund*, 774 N.E.2d 702, 710 (N.Y. 2002)).  The tort of conversion has two "key elements" including "(1) plaintiff's possessory right or interest in the property, . . . and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id*. (citing cases and Restatement [Second] of Torts §§ 8A, 223, 243, and Prosser and Keeton, Torts § 15 at 92, 102 (5th ed.)).  Thus,

"whether the property claimed to have been converted is real property, . . . or an interest or expectancy in a business opportunity, . . . conversion will not lie." *Roemer & Featherstonhaugh P.C. v. Featherstonhaugh*, 699 N.Y.S.2d 603, 604 (3d Dept.1999) (citing 23 N.Y. Jur 2d, Conversion and Action for Recovery of Chattel, §§ 4, 5, 11), *leave to appeal denied*, 734 N.E.2d 1213 (N.Y. 2000). "Conversion 'is concerned with possession, not with title.'" *Seventh Regiment Fund*, 774 N.E.2d at 710." "Moreover, a defendant who, though having custody of goods, does not 'exclude the owner from the exercise of his rights' is not liable for conversion.'" *Id*. (quoting *Bradley v. Roe*, 27 N.E.2d 35, 38 (N.Y. 1940)).

In the instant case, as Empire argues, Empire's Reply to Plaintiffs, at 10-11, the Complaint is bereft of any allegation that Plaintiffs stored personal property at the Property or that any such personal property was lost as a result of Empire's demolition of the Building. *See* Complaint, *passim*. Nor have Plaintiffs submitted any evidence establishing or even suggesting that personal property was stored on the Property and damaged during the demolition and the checks and invoices Plaintiff filed as exhibits in support of summary judgment, specifically, Plaintiffs' Motion Exhs. W and X, fail to establish as much, but are merely a number of cashed checks drawn from Plaintiff Vodka Properties' checking account with no indication for what the checks paid, Plaintiffs' Exh.W,[33] and invoices for various building supplies with no indication

---

[33] A copy of one of the checks contains a notation in the memo line "393 Hampshire," *i.e.*, the Property's address, but there is no attempt to establish what the check was intended as payment for other than the payee of such check is "CEM." Plaintiffs' Motion Exh. W (Dkt. 28-24), at 9. Nor do the handwritten notations on the checks included in the exhibit establish any personal property was present and destroyed during the demolition, but only imply that some of the checks were for payment of electrical services, a permit pulled for construction work, and replacing some broken windows and doors, roof repairs, and architectural drawings. *Id*. at 2. Even if such payments were for things qualifying as personal property, there is no indication such work was performed at the Property.

regarding for what building the material were intended.  Plaintiffs' Exh. X.  Significantly, houses and other buildings are not considered personal property, but improvements to real property that become part of such real property.  *See Sun Gold Corp. v. Stillman*, 958 N.Y.S.2d 63, 2010 WL 2902369, at * 6 n. 6 (N.Y. Sup. Ct., N.Y.Cty. 2010) (table) (noting that insofar as conversion claim included "improvements or fixtures affixed to the Premises that cannot be removed without causing substantial damages to the Premises, such items may not be the subject of the conversion claim because they become a part of the leasehold or real property"), *aff'd*, 946 N.Y.S.2d 24 (1st Dept. 2012).  Insofar as Plaintiffs, in renovating the Building, purchased building supplies and materials that were used to make such renovations, the supplies and materials, upon their installation to the Building, became part of the Property's improvement and, thus, real property.  *Stillman*, 2010 WL 2902369, at * 6 n. 6).

Summary judgment should be GRANTED in favor of Empire on the Thirteenth Claim asserting conversion.

### d.    Fourteenth Claim – *Prima Facie* Tort/Intentional Infliction of Economic Damage

Plaintiffs' Fourteenth Claim alleges Defendant Empire intentionally inflicted economic harm on Plaintiffs by permitting Empire's employees and agents to enter the Property despite actual or constructive knowledge City Defendants lacked proper authority to perform an emergency demolition, subsequent to which City Defendants asserted a lien against the Property for the price of the demolition, rendering the Property worthless to Plaintiffs, resulting in loss to the Plaintiffs for the benefit of the repairs Plaintiffs performed, the rehabilitation costs, and the value of the Building and the rents Plaintiffs have not been able to collect from tenants.  In support of summary

judgment on the Fourteenth Claim, Empire references *Burns Jackson Miller Summit &*
*Spitzer v. Lindner*, 451 N.E.2d 459, 468 (N.Y. 1983) for the proposition that under New
York law, "there is no recovery in prima facie tort unless malevolence is the sole motive
for defendant's otherwise lawful act or . . . unless defendant acts from 'disinterested
malevolence.'"  Empire's Memorandum at 21.  In response to Empire's Motion, Plaintiffs
concede that Empire's arguments with regard to the Fourteenth Claim establish
dismissal of the Fourteenth Claim is appropriate, Plaintiffs' Response – Empire at 10 n.
1, and Empire does not argue in further support of its motion for summary judgment on
the Fourteenth Claim.

Based on Plaintiffs' concession that summary judgment on the Fourteenth Claim
is appropriate. Plaintiffs' Response – Empire at 10 n. 1, summary judgment should be
GRANTED in favor of Empire on the Fourteenth Claim.

### 3.  Empire's Cross-Claims for Indemnification and Contribution

Defendant Empire asserts against City Defendants cross-claims for
indemnification and contribution in the event that Empire is found liable on any of
Plaintiffs' claims.  Assuming, *arguendo*, the District Judge agrees with the
recommendation that Empire's Motion seeking summary judgment on all 13 claims
Plaintiff asserts against Empire, then Empire's cross-claims for indemnification and
contribution would be rendered moot, requiring Empire's Motion be DISMISSED as to
the cross-claims.  If, however, at least one of Plaintiffs' claims against Empire survives
Empire's Motion for summary judgment, then the same issues of fact that bar summary
judgment on Plaintiffs' claims would bar summary judgment on Empire's respective
cross-claims.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion for partial summary judgment (Dkt. 28) should be DENIED; Empire's Motion for summary judgment (Dkt. 30) should be GRANTED; City Defendants' Motion for summary judgment (Dkt. 31) should be GRANTED in part and DENIED in part; Plaintiffs' Motion to Strike City Defendants' Statement of Facts (Dkt. 36) is DENIED; and Plaintiffs' Motion to Strike Evidence (Dkt. 42) is DENIED.  The action should proceed only as against City Defendants and only on Plaintiffs' First, Third, and Seventh Claims.

SO ORDERED, as to Plaintiffs'
Motion to Strike City Defendants'
Statement of Facts and Plaintiffs'
Motion to Strike Evidence.


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Plaintiffs' Motion for
Partial Summary Judgment, Empire's Motion for
Summary Judgment, and City Defendants' Motion
for Summary Judgment,


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      July 13, 2023
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      July 13, 2023
            Buffalo, New York