UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MAXIM LEVIN and
VODKA PROPERTIES LLC,

                Plaintiffs,

     v.

CITY OF BUFFALO,
BYRON W. BROWN, Individually and
in his capacity as the Mayor of the City
of Buffalo,
JAMES COMERFORD, JR.,
Individually and in his capacity as the
Commissioner of the Department
of Permit & Inspection Services,
LOU PETRUCCI, Individually and in
his capacity as the Deputy
Commissioner of the Department of
Permit & Inspection Services,
TRACY KRUG, Individually and in his
capacity as an inspector for the City of
Buffalo,
KEVIN COYNE, Individually and in his
capacity as an inspector for the City of
Buffalo, and
EMPIRE DISMANTLEMENT CO.,

                Defendants.

20-CV-1511 (JLS) (LGF)

EMPIRE DISMANTLEMENT CO.,

                Cross Claimant,

     v.

BYRON W. BROWN, Individually and
in his capacity as the Mayor of the City
of Buffalo,
CITY OF BUFFALO,

JAMES COMERFORD, JR.,
Individually and in his capacity as the
Commissioner of the Department of
Permit & Inspection Services,
KEVIN COYNE, Individually and in his
capacity as an inspector for the City of
Buffalo,
TRACY KRUG, Individually and in his
capacity as an inspector for the City of
Buffalo, and
LOU PETRUCCI, Individually and in
his capacity as the Deputy
Commissioner of the Department of
Permit & Inspection Services,

        Cross Defendants.

---

## DECISION AND ORDER

Before the Court are objections to the [53] Decision and Order/Report and Recommendation ("R&R"), which addresses the parties' motions for summary judgment (Dkt. 28, 30, 31) as well as Plaintiffs' motions to strike (Dkt. 36, 42). For the reasons that follow, the Court sustains certain objections filed by Defendants the City of Buffalo, Byron W. Brown, James Comerford, Jr., Lou Petrucci, Tracy Krug and Kevin Coyne (collectively, the "City Defendants"). As a result, the action will proceed against the City of Buffalo on Plaintiffs' third claim. The Court reserves decision on Plaintiffs' seventh claim (against the City of Buffalo) as discussed below. Plaintiffs' remaining claims are dismissed.

## BACKGROUND[1]

Plaintiffs Maxim Levin and Vodka Properties LLC commenced this action pursuant to 42 U.S.C. § 1983 and New York law. Dkt. 1. They assert 14 claims against various defendants—including the City Defendants as well as Empire Dismantlement Co. ("Empire")—relating to the demolition of a two-family residential building located at 393 Hampshire Street in Buffalo, New York. *See id.* Plaintiffs assert nine claims under Section 1983 against all Defendants (claims 1-9), one additional Section 1983 claim against the City of Buffalo (claim 10), and four New York common law claims against Empire (claims 11-14). *See id.* The case has been referred to United States Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C). Dkt. 8.

Three motions for summary judgment have been filed: one by Plaintiffs (Dkt. 28); one by Empire (Dkt. 30); and one by the City Defendants (Dkt. 31). Plaintiffs seek summary judgment on their first, second, seventh, and twelfth claims against Defendants Comerford, Coyne, Krug, and Empire. *See* Dkt. 28, 29. Empire seeks summary judgment on all of Plaintiffs' claims or, in the alternative, on its cross claims against the City Defendants.[2] *See* Dkt. 30-28. Lastly, the City Defendants seek summary judgment on all of Plaintiffs' claims and Empire's cross claims. *See* Dkt. 31-25. Plaintiffs also moved to strike the City Defendants' statement of

---

[1] A summary of the relevant factual background is set forth in the R&R. *See* Dkt. 53 at 9-15.

[2] Empire asserts four cross claims against the City Defendants. *See* Dkt. 7.

material facts, *see* Dkt. 36, and certain evidence.  *See* Dkt. 42.  Briefing on the

motions for summary judgment and to strike proceeded before Judge Foschio.  *See*

Dkt. 35-39, 42-50.

On July 13, 2023, Judge Foschio issued the R&R addressing the outstanding

motions (Dkt. 28, 30, 31, 36, 42).  Dkt. 53.  As to the motions for summary

judgment, he recommends that this Court:

- deny Plaintiffs' [28] motion;

- grant Empire's [30] motion; and

- grant in part and deny in part the City Defendants' [31] motion.

*See* Dkt. 53.  *As recommended*, the action would proceed only as against the City

Defendants and only on Plaintiffs' first, third, and seventh claims.  *Id.*  Judge

Foschio also denied Plaintiffs' [36] and [42] motions to strike.  *Id.*

Plaintiffs objected to the R&R.  Dkt. 55.  They object to "six conclusions" in

the R&R relating to their motions to strike, their summary judgment motion, and

Defendants' summary judgment motions.  *Id.*  The City Defendants responded in

opposition, Dkt. 59, and Plaintiffs replied.  Dkt. 60.

The City Defendants also objected, arguing that Judge Foschio "improperly

denied the City Defendants' Motion as to the Plaintiffs' First Claim asserting a

violation of Fourteenth Amendment procedural due process, Third Claim for

Unlawful Taking; Fourth and Fifth Claims 'insofar as the City Defendants maintain

Plaintiffs' received notice', and Seventh Claim for unreasonable Seizure, and more

broadly in failing to apply the City Defendant's immunity defenses, and in failing to

dismiss and/or grant summary judgment to the individually named Defendants for lack of personal involvement." Dkt. 56.  Plaintiffs responded in opposition, Dkt. 58, and the City Defendants replied.  Dkt. 61.

## DISCUSSION

### I.   LEGAL STANDARD

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The "standard of review for a dispositive order of a magistrate judge that has been properly objected to is *de novo*." *Ki v. Kim*, No. 20CV4343ARRJRC, 2022 WL 4551378, at *1 (E.D.N.Y. Sept. 29, 2022) (citing *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022); Fed. R. Civ. P. 72(b)(3)).  But "any part of a dispositive order that is not objected to" is "reviewed for clear error." *Id.* (internal citation omitted).  And as to "[n]ondispositive orders," this Court also reviews for "clear error." *Id.* (citing Fed. R. Civ. P. 72(a)).  A "motion for summary judgment is a dispositive motion." *Hypnotic Hats, Ltd. v. Wintermantel Enterprises, LLC*, No. 15-CV-06478 (ALC), 2018 WL 11597533, at *2 (S.D.N.Y. Apr. 20, 2018).  "[M]otions to strike" are "non-dispositive." *Gwynn v. Clubine*, 302 F. Supp. 2d 151, 155 n.1 (W.D.N.Y. 2004).

This Court has carefully reviewed the R&R, the objections briefing, and the relevant record.  Based on that review, the Court accepts the R&R in part.  Specifically, the Court accepts Judge Foschio's recommendations: (1) to deny Plaintiffs' [28] motion for summary judgment; and (2) to grant Empire's [30] motion for summary judgment.  The Court further accepts the R&R's recommendations as

to the City Defendants' [31] motion for summary judgment, *except* as discussed below as to Plaintiffs' first claim, seventh claim, and as to the individual Defendants.  Lastly, the order as to Plaintiffs' [36] and [42] motions to strike is affirmed.

## II.   THE CITY DEFENDANTS' OBJECTIONS

The City Defendants' objections are sustained to the extent they assert that (1) Plaintiffs' procedural due process claim (claim 1) fails because there is no genuine dispute as to notice; and (2) Defendants Brown, Comerford, Petrucci, Krug and Coyne are entitled to qualified immunity with respect to Plaintiffs' Section 1983 claims against them in their individual capacities.  The objections are otherwise overruled, except as to Claim 7 as asserted against the City of Buffalo, which remains unresolved as discussed below.

### A. Procedural Due Process (Claim 1)

The City Defendants challenge Judge Foschio's recommendation that Plaintiffs' procedural due process claim survive summary judgment.  Specifically, they argue that Judge Foschio "improperly determined that there were questions of fact as to 'notice' and the condition of the building." Dkt. 56 at 6.[3]  This Court agrees.  Plaintiffs' procedural due process claim is dismissed on summary judgment.

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1;

---

[3] Unless otherwise noted, page numbers refer to the CM/ECF generated numbering in the header of each page.

*Nnehe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). A "procedural due process violation under the Fourteenth Amendment occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and opportunity to be heard." *Seedan Real Est. Holding, LLC v. Leary*, No. 316CV00595NAMDEP, 2018 WL 6830707, at *9 (N.D.N.Y. Dec. 28, 2018) (citing *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009)). As to the notice requirement, due process "requires only that a state take steps reasonably calculated to provide actual notice, not that the notice actually reach the recipient." *Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 429 (2d Cir. 2011). It "does not require that a property owner receive actual notice before the government may take his property." *Id.*

Here, Judge Foschio was "unable to conclude as a matter of law" that Plaintiff "was aware of the Condemnation Notice and City Defendants' intention to demolish the Building" and, "without such pre-deprivation notice, City Defendants could demolish the Building only if the circumstances supported its emergency demolition." Dkt. 53 at 47. In their objections, the City Defendants argue that "Plaintiffs were in fact notified of this demolition and they had more than enough opportunity, both formal and informal, to save the property from demolition." Dkt. 56 at 8. They explain that had Plaintiffs "fixed the condition, had they contacted Commissioner Comerford, had they commenced and [*sic*] Article 78, they would have been given an opportunity to address the concerns raised." *Id.* But "Plaintiffs

failed to do any of this, and thus waived any claim of a due process violation." Dkt. 56 at 8.

Indeed, Plaintiffs were afforded constitutionally adequate notice of the impending demolition. Krug testified that he and Coyne—who are both building inspectors—"posted the building for demolition." Dkt. 31-13 at 12.[4]  Krug explained that "posting" means that "you nail a posting on the building that says . . . this building is condemned; you have five days to get your stuff out; and please call this number regarding this property." *Id.* He further explained that "then you certify mail and you regular mail." *Id.* Krug also testified that Plaintiff Levin's attorney "approached" Krug and "informe[ed]" him that Levin's "wife received a letter regarding the posting for the demolition." *Id.* at 12.[5]

When such "posting" is "coupled with mailing to the owner's last known residence . . . it is reasonably calculated to give adequate notice to the property owner of proceedings affecting his interests." *Sheiner v. City of New York*, 611 F. Supp. 172, 177 (E.D.N.Y. 1985). And when "there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received." *Leon v. Murphy*, 988 F.2d 303, 309 (2d Cir. 1993) (internal

---

[4] Plaintiffs "do not dispute" that "[a]fter Commissioner Comerford informed Mr. Krug to that whey [*sic*] were going to move forward with the demolition, Mr. Krug and Kevin Coyne 'posted the building for demolition.'" Dkt. 36-2 ¶ 24.

[5] Plaintiffs also "do not dispute" that Plaintiff Levin' attorney "approached" Krug and "informed him that [Levin's] wife had received the notice." Dkt. 36-2 ¶ 28.

citation omitted). The "mere denial of receipt does not rebut that presumption." *Id.*
There "must be—in addition to denial of receipt—some proof that the regular office
practice was not followed or was carelessly executed so the presumption that notice
was mailed becomes unreasonable." *Id.*

Moreover, Plaintiffs acknowledge that "Commissioner Comerford testified
that he told Inspectors Krug and Coyne to get in contact with Mr. Levin's housing
court attorney, George Berbary, Esq. . . . and that he was willing to give Plaintiffs
an opportunity to secure the Property before ordering its demolition if Mr. Berbary
assured him that attempts would be made to prevent the drug-related activities at
the property." Dkt. 36-1 (Plaintiffs' memorandum in opposition to summary
judgment) at 10. They further acknowledge that "Krug and Coyne both testified
that Krug spoke with Mr. Berbary before the Property was demolished . . . and
Commissioner Comerford testified that he would have waited for the hearing to
take place if he knew there was a court date in City of Buffalo Housing Court
regarding the Property." *Id.*

Given this record, Plaintiffs were provided with constitutionally adequate
notice and an opportunity to be heard as a matter of law. Defendants are entitled to
summary judgment on Plaintiffs' procedural due process claim (first claim) which is,
therefore, dismissed. *See Kshel Realty Corp. v. City of New York*, No. 01 CIV. 9039
(LMM), 2006 WL 2506389, at *8 (S.D.N.Y. Aug. 30, 2006), *aff'd*, 293 F. App'x 13 (2d
Cir. 2008) (dismissing procedural due process claim where "Plaintiffs were on actual
notice that the Building had been designated an Immediate Emergency and was

going to be demolished"). *See also Tartaro v. City of Syracuse*, No. 5:13-CV-360 GLS/TWD, 2015 WL 4094665, at *4 (N.D.N.Y. July 6, 2015) ("because the court finds that plaintiffs were not in fact deprived of notice and an opportunity to be heard prior to the deprivation of their property, their procedural due process claim fails").

### B. Qualified Immunity

The City Defendants also argue that they "are entitled to summary judgment on the grounds of qualified immunity." Dkt. 56 at 8.  This Court agrees, but only with respect to Defendants Brown, Comerford, Petrucci, Krug, and Coyne (collectively, the "individual City Defendants") in their individual capacities.[6]

Qualified immunity "protects public officials from legal actions brought under 42 U.S.C. § 1983 if their behavior does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sapienza v. City of Buffalo*, No. 20CV634JLSJJM, 2023 WL 5163885, at *8 (W.D.N.Y. Aug. 11, 2023) (quoting *Mudge v. Zugalla*, 939 F.3d 72, 79 (2d Cir. 2019)).  And if "any reasonable trier of fact could find that the defendants' actions were objectively

---

[6] A "defense of qualified immunity may properly be raised only with respect to claims asserted against a defendant in his individual capacity." *Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993).  It is "not a defense to a claim against a municipal official in his official capacity." *Id.*  And as to the City of Buffalo, "there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983." *Goldberg v. Town of Rocky Hill*, 973 F.2d 70, 74 (2d Cir. 1992).

unreasonable, then the defendants are not entitled to summary judgment" on grounds of qualified immunity. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Here, Judge Foschio concluded that the "City Defendants are not entitled to qualified immunity" on Plaintiffs' first claim (procedural due process), third claim (taking), and seventh claim (search and seizure) because Plaintiffs' rights under the relevant Constitutional provisions "were established prior to the September 25, 2019 demolition of the Building." Dkt. 53 at 74. But he did not address the reasonableness of Defendants' actions. Upon review of the relevant record, this Court concludes that, because no "reasonable trier of fact" could find that the individual City Defendants' actions "were objectively unreasonable" in light of clearly established law, the individual City Defendants are entitled to qualified immunity. *See Lennon*, 66 F.3d at 420.

In the Second Circuit, an "officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Id.* Thus, "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances, summary judgment for the officers is appropriate." *Id.*

*Smith v. City of Albany*, No. 1:03-CV-1157, 2006 WL 839525, at *3 (N.D.N.Y. Mar. 27, 2006), *aff'd*, 250 F. App'x 417 (2d Cir. 2007), is instructive. There, the court concluded, at summary judgment, that various city officials—including a police officer, fire chief, and demolition contractors—were entitled to qualified

immunity with respect to claims arising "from demolition of a multiple-family residential dwelling." 2006 WL 839525, at *1. Upon "personally inspect[ing] the building," the police officer observed vermin, structural deficiencies, and unsanitary conditions. *Id.* The police officer alerted the fire chief, who inspected the building and concluded that, "the second floor was in 'imminent danger' of collapsing." *Id.* at *3. The fire chief then decided, in consultation with the Public Safety Commissioner, to "demolish the building" pursuant to a provision of the City Code authorizing "any action" deemed "reasonably necessary to abate or remove" conditions that are "unsanitary, dilapidated, decaying or overcrowded." *Id.* at *2-3.

On the issue of qualified immunity, the court concluded that:

> it was objectively reasonable for [the police officer and fire chief] to view the situation in this case as an acute potential health and safety hazard for the residents of plaintiff's building and the public at large. Thus, it was objectively reasonable for [them] to believe that their actions were appropriate under the emergency demolition authorization set forth in the City of Albany building code and were thus not violative of plaintiff's constitutional rights.

*Id.* at *17. As to the contractors, the court concluded that, because the contractors "took no part in the decision to demolish plaintiffs building," it was "objectively reasonable" for them "to believe that, in carrying out the order to demolish plaintiff's building, they were not violating plaintiff's constitutional rights." *Id.*

On appeal, the Second Circuit affirmed, explaining—on the issue of qualified immunity—that "the obviously deficient maintenance and repair could lead a public official to conclude reasonably that the building was in danger of collapse." *Smith,*

250 F. App'x at 418.

Here,[7] Krug—a building inspector with at least 33 years of experience—
"walked through the property at 393 Hampshire in 2017 were [sic] he visually
observed the rot, deterioration, and other issues like extensive water damage and
mold, which he concluded were structural integrity issues." Dkt. 36-2 ¶¶ 13-14.
Krug also "received a police complaint that someone overdosed at the property," *id.*
¶ 16, and "was aware of complaints being made by the neighbor that people were
going between the buildings and urinating and shooting up between the buildings."
*Id.* ¶ 17. In addition, Krug and Coyne—a building inspector with at least 20 years
of experience—received a call from a police officer regarding "illegal activity, [and]
various violations with the . . . exterior." *Id.* ¶¶ 34, 37. Krug and Coyne then made
a "recommendation" to Comerford—Commissioner of the City's Department of
Permits and Inspection Services—that the building be demolished because building
was not "structurally sound," and was "a fire hazard," and that there was "illegal
activity going on" and "safety concerns regarding the neighboring and adjacent
properties." *See id.* ¶¶ 23, 26, 37.

As Commissioner, Comerford was authorized under the City of Buffalo
Charter and Code to "direct a building which is deem[ed] to be an immediate threat
to the health, welfare, and safety of the public to be torn down, demolished, or
otherwise destroyed, on an emergency basis." *Id.* ¶ 65. He concluded, out of

---

[7] The facts conveyed in the following three paragraphs are undisputed. *See* Dkt. 36-
2 (Plaintiffs' response to the City Defendants' statement of facts).

concern for "public health and safety"—and specifically based on the building being "very close" to adjacent buildings, the "interior," the "drug activity," the "complaints" and the "pictures [he] reviewed"—that the building should be demolished. *Id.* ¶ 59.  He also specifically "took into consideration" that "part of the building" looked "like it was imminent danger [of] collapse." *Id.* ¶60.[8]  As such, Comerford informed Krug that they "were going to move forward with the demolition." *Id.* ¶ 24.  Krug and Coyne then "posted the building for demolition." *Id.*  Indeed, as in *Smith,* "the obviously deficient maintenance and repair" of the building could have led these officials "to conclude reasonably" that the building posed a danger to the community.  250 F. App'x at 418.  Moreover, Krug and Coyne "took no part in the decision" to demolish the building.  *See Smith,* 2006 WL 839525 at *17.

As to Petrucci and Brown, there is no basis, on this record, to conclude that their actions were objectively unreasonable.  Petrucci, the Deputy Commissioner for the Department of Permit and Inspection Services, was the "alternative signatory for notices to proceed," Dkt. 36-2 ¶ 69.  But he "was not part of the group," that "could issue an emergency demolition." *Id.* ¶ 78.  And there are no facts indicating

---

[8] Plaintiffs object to this statement, but only "as misleading and on grounds of relevancy." *Id.*

that Brown had anything to do with the demolition, other allegedly instituting an "aggressive demolition plan." *See* Dkt. 1 ¶¶ 93-95.

In sum, "no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff[s]," could conclude that the individual City Defendants' actions "were objectively unreasonable in light of clearly established law." *Callahan v. Cnty. of Suffolk*, 602 F. Supp. 3d 399, 406 (E.D.N.Y. 2022) (quoting *Ford v. Moore*, 237 F.3d 156, 162 (2d Cir. 2001)). They are entitled to qualified immunity. *See Seedan*, 2018 WL 6830707, at *14 (qualified immunity applied where it was "objectively reasonable" for Defendants "to treat the partial collapse of the [building] as a serious public health and safety hazard" and "to believe that their actions contributing to the demolition of Plaintiff's building were lawful"); *Waldron v. Rotzler*, 862 F. Supp. 763, 772 (N.D.N.Y. 1994) (undisputed facts concerning defendant's observations and conduct compelled finding of objective reasonableness such that city officials were entitled to qualified immunity after demolition of plaintiff's building).

As noted above, qualified immunity only bars individual capacity claims. *See Frank*, 1 F.3d at 1327. But Plaintiffs' official capacity claims fare no better, given that these claims are also asserted against the City of Buffalo. *See* Dkt. 1 ¶¶ 119-226. In such circumstances, official capacity claims "are unnecessary" because the claims "duplicate the claims against the City." *Holden v. City*, No. 24-CV-0074 (AS), 2024 WL 218438, at *2 (S.D.N.Y. Jan. 19, 2024). *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005) ("[A] § 1983 suit against a municipal officer in

his official capacity is treated as an action against the municipality itself."); *Kanderskaya v. City of N.Y.*, 11 F. Supp. 3d 431, 435 (S.D.N.Y. 2014) (dismissing with prejudice claims against a police officer sued in an official capacity "because they are duplicative of [the plaintiff's] other claims against [the municipality]"), *aff'd*, 590 F. App'x 112 (2d Cir. 2015). As a result, all claims against the Individual City Defendants are dismissed.

## CONCLUSION

For the reasons set forth above, Plaintiffs' [28] motion for summary judgment is DENIED. Empire's [30] motion for summary judgment is GRANTED. The City Defendants' [31] motion for summary judgment is GRANTED in part and DENIED in part as discussed above. As a result, this action shall proceed against the City of Buffalo on Plaintiffs' third claim. The Court reserves decision on Plaintiffs' seventh claim (against the City of Buffalo). Plaintiffs' remaining claims are dismissed. The R&R is otherwise AFFIRMED.

By **March 20, 2024**, the parties shall submit briefing on the issue of whether Plaintiffs' seventh claim also ought to proceed against the City of Buffalo in light of the Court's conclusions above regarding qualified immunity. *See, e.g., Martinez v. Hasper*, No. 21-2975, 2023 WL 4417355, at *3n.3 (2d Cir. July 10, 2023) ("That [defendant's] conduct was not, for purposes of the New York qualified immunity analysis, objectively unreasonable does not resolve the Fourth Amendment reasonableness inquiry . . . .These analyses are discrete . . . .); *Conroy v. Caron*, 275 F. Supp. 3d 328, 340 (D. Conn. 2017) ("Notwithstanding the use of similar

terminology, the fact that an officer has been found to have acted 'unreasonably' in a manner that violates the Fourth Amendment does not compel a corresponding conclusion that the officer has acted 'objectively unreasonably' and therefore outside the scope of qualified immunity").

SO ORDERED.

Dated:      February 29, 2024
            Buffalo, New York

                                    _____
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE